No. 20-3447

# United States Court of Appeals
## For the Eighth Circuit

STEPHANIE GASCA, MILDRED CURREN, KENNETH HEMPHILL, JESSE NEELY, AMBER WYSE, TIMOTHY GALLAGHER, and SOLOMON WARREN,

*Plaintiffs-Appellees*,

v.

ANNE L. PRECYTHE, in her official capacity as Director of the Missouri Department of Corrections; KENNETH JONES, in his official capacity as Chairman of the Missouri Division of Probation and Parole; JENNIFER ZAMKUS, in her official capacity as Vice Chair of the Missouri Board of Probation and Parole; JIM WELLS, in his official capacity as Member of the Missouri Board of Probation and Parole; MARTIN RUCKER, in his official capacity as Member of the Missouri Board of Probation and Parole; ELLIS MCSWAIN, in his official capacity as Member of the Missouri Board of Probation and Parole; GARY DUSENBERG, in his official capacity as Member of the Missouri Board of Probation and Parole; and PAUL FITZWATER, in his official capacity as Member of the Missouri Board of Probation and Parole,

*Defendants-Appellants*.

Appeal from the United States District Court,
Western District of Missouri - Jefferson City
The Honorable Stephen R. Bough, United States District Judge

## BRIEF OF APPELLANTS

Office of the Attorney General
Supreme Court Building
P.O. Box 899
Jefferson City, MO 65102
Tel. (573) 751-1800
Fax (573) 751-0774
Jesus.Osete@ago.mo.gov

**ERIC S. SCHMITT**
MISSOURI ATTORNEY GENERAL
Jeremiah J. Morgan, #50387
  *Deputy Attorney General - Civil*
Jesus A. Osete, #69267
  *Deputy Solicitor General*
Counsel for Appellants

# SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

The Missouri Department of Corrections conceded that its processes for parole revocation proceedings fell short of due process requirements at the time the Amended Complaint was filed, and it readily took good-faith corrective measures that fell within its province to remedy any constitutional violation. In such cases, federal courts should issue only those remedies that are tailored to the alleged constitutional violation. This process ensures that alleged wrongdoers do not evade their constitutional obligations, challengers are made whole, and federal courts do not exceed their limited roles.

The district court overstepped its role and ordered remedial actions far beyond anything needed to correct any alleged constitutional problem, and ordered relief that can only be provided by a nonparty. In doing so, the district court exceeded its authority and improperly injected the control of the federal courts into the administration of a quintessential state program.

Because the district court's remedies exceeded its limited remedial powers, Appellants respectfully request fifteen (15) minutes of oral argument.

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT i

JURISDICTIONAL STATEMENT ........................................................... 1

STATEMENT OF THE ISSUES ................................................................ 2

STATEMENT OF THE CASE ................................................................... 3

STANDARD OF REVIEW ..................................................................... 22

SUMMARY OF ARGUMENT ................................................................ 23

ARGUMENT ........................................................................................ 25

I. The District Court's Remedy Exceeds the Minimum Due Process Requirements Established in *Morrissey v. Brewer*, 408 U.S. 471 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778 (1973). ...................................... 25

    A. The Supreme Court's decisions in *Morrissey* and *Gagnon* simply established minimal due process requirements at parole revocation proceedings that should not substantially burden a state's parole system. ......................... 27

    B. The district court exceeded its limited remedial powers by imposing remedies that went beyond the minimal due process requirements established in *Morrissey* and *Gagnon* and effectively writing a code of procedure for Missouri's parole revocation process. ............................................. 32

    C. The Department's revised policies satisfy the minimal due process requirements established in *Morrissey* and *Gagnon*. ......................................................................... 36

II. The District Court Erred in Not Joining the Missouri Public Defender Commission to this Action and, in its Absence, the Court's Remedy Cannot Be Enforced Because, under Missouri law, the Missouri Department of Corrections Has No Authority to Appoint Counsel When the Constitution Requires It. ................................................................. 44

    A. The Department has no authority to appoint counsel when the Constitution requires it. .................................... 46

Appellate Case: 20-3447     Page: 3     Date Filed: 02/16/2021 Entry ID: 5004702

B.    Because the Missouri Public Defender Commission has the exclusive authority to appoint counsel when the Constitution requires it, the Commission was a "necessary" party under Fed. R. Civ. P. 19(a)(1)(A). ......................................... 49

C.    The Missouri Public Defender Commission was an Indispensable Party under Fed. R. Civ. P. 19(b). .......................... 57

CONCLUSION ........................................................................ 65

CERTIFICATE OF COMPLIANCE .................................................. 66

CERTIFICATE OF SERVICE ......................................................... 67

Appellate Case: 20-3447    Page: 4    Date Filed: 02/16/2021 Entry ID: 5004702

# TABLE OF AUTHORITIES

**Cases**

*Askew v. Sheriff of Cook Cty., Ill.,*
  568 F.3d 632 (7th Cir. 2009) ............................................................. 52

*Black v. Romano,*
  471 U.S. 606 (1985) ................................................................. 43, 44

*California v. Arizona,*
  440 U.S. 59 (1979) ....................................................................... 58

*Capital Fire Ins. Co. of Cal. v. Langhorne,*
  146 F.2d 237 (8th Cir. 1945) ............................................................ 57

*Cedar Rapids Bank & Tr. Co. v. Mako One Corp.,*
  919 F.3d 529 (8th Cir. 2019) ....................................................... 22, 46

*City of Aurora v. Spectra Commc'ns Grp., LLC,*
  592 S.W.3d 764 (Mo. 2019) ............................................................. 56

*Creech v. U.S. Bd. of Parole,*
  538 F.2d 205 (8th Cir. 1976) ............................................................ 34

*Dayton Board of Education v. Brinkman,*
  433 U.S. 406 (1977) ................................................................... 2, 25

*Delta Financial Corp. v. Paul D. Comanduras & Associates,*
  973 F.2d 301 (4th Cir. 1992) ................................................... 2, 47, 54

*Douglas v. Buder,*
  412 U.S. 430 (1973) ..................................................................... 43

*Dredge Corp. v. Penny,*
  338 F.2d 456 (9th Cir. 1964) ............................................................ 63

*Fetzer v. Cities Serv. Oil Co.,*
  572 F.2d 1250 (8th Cir. 1978) .......................................................... 58

*Focus on the Family v. Pinellas Suncoast Transit Auth.,*
  344 F.3d 1263 (11th Cir. 2003) ........................................................ 51

iv

*Gagnon v. Scarpelli*,
411 U.S. 778 (1973)....ii, 2, 3, 4, 5, 20, 25, 28, 30, 31, 32, 33, 34, 35, 36, 41, 54, 60

*Gonzaga Univ. v. Doe*,
536 U.S. 273 (2002).................................................................34, 38, 39

*Lewis v. Casey*,
518 U.S. 343 (1996)......................................................................2, 25

*Milliken v. Meyer*,
311 U.S. 457 (1940)...........................................................................51

*Missouri v. Jenkins*,
515 U.S. 70 (1995)........................................................................2, 26

*Morrissey v. Brewer*,
408 U.S. 471 (1972)...........ii, 2, 15, 16, 17, 23, 25, 27, 28, 29, 31, 34, 39

*Pavek v. Donald J. Trump for President, Inc.*,
967 F.3d 905 (8th Cir. 2020)............................................................45

*Pen-Yan Inv., Inc. v. Boyd Kansas City, Inc.*,
952 S.W.2d 299 (Mo. Ct. App. 1997).............................................44

*Provident Tradesmens Bank & Tr. Co. v. Patterson*,
390 U.S. 102 (1968)............................................. 47, 49, 50, 58, 62, 64

*Ranger Transp., Inc. v. Wal-Mart Stores*,
903 F.2d 1185 (8th Cir. 1990)..........................................................58

*Republic of Philippines v. Pimentel*,
553 U.S. 851 (2008)....................................... 2, 61, 62, 63, 65

*Rutherford v. Kessel*,
560 F.3d 874 (8th Cir. 2009)............................................................64

*Sladek v. Bell Sys. Mgmt. Pension Plan*,
880 F.2d 972 (7th Cir. 1989).............................................................64

*State ex rel. MoGas Pipeline, LLC v. Missouri Pub. Serv. Comm'n*,
366 S.W.3d 493 (Mo. 2012) ..............................................................47

v

Appellate Case: 20-3447    Page: 6    Date Filed: 02/16/2021 Entry ID: 5004702

*Two Shields v. Wilkinson,*
  790 F.3d 791 (8th Cir. 2015) ..................................... 46, 57

*United States v. $579,475.00 in U.S. Currency,*
  917 F.3d 1047 (8th Cir. 2019) .......................................... 52

*United States v. John Doe, Inc. I,*
  481 U.S. 102 (1987) ........................................................ 52

*Verlinden B.V. v. Cent. Bank of Nigeria,*
  461 U.S. 480 (1983) ........................................................ 65

*VF Jeanswear LP v. Equal Employment Opportunity Comm'n,*
  140 S. Ct. 1202 (2020) ................................................... 47

*Walton v. Dawson,*
  752 F.3d 1109 (8th Cir. 2014) ....................................... 34

*Wright v. St. Vincent Health Sys.,*
  730 F.3d 732 (8th Cir. 2013) ......................................... 22

*Wymbs v. Republican State Exec. Comm. of Fla.,*
  719 F.2d 1072 (11th Cir. 1983) ...................................... 52

## Statutes

28 U.S.C. § 1291 ................................................................. 1

28 U.S.C. § 1331 ................................................................. 1

42 U.S.C. § 1983 ............................................................. 1, 3

Mo. Rev. Stat. § 217.035 .................................................. 48

Mo. Rev. Stat. § 217.720 ............................................. 55, 60

Mo. Rev. Stat. § 600.042 ............................................. 49, 50

Mo. Rev. Stat. § 600.042.1(10) ........................................ 51

Mo. Rev. Stat. § 600.042.4(5) ................... 2, 44, 49, 50, 54, 56

Mo. Rev. Stat. § 600.063.3(1) .......................................... 51

vi

## Rules

Fed. R. App. P. 32 .................................................................. 66

Fed. R. Civ. P. 19 .................................... 2, 10, 46, 53, 55, 58

Fed. R. Civ. P. 19(a) ......................................................... 52, 58

Fed. R. Civ. P. Rule 19(a)(1) ......................................... 46, 51

Fed. R. Civ. P. 19(a)(1)(A) ............................................ 46, 49

Fed. R. Civ. P. 19(a)(2) .............................. 9, 46, 52, 53, 61, 62

Fed. R. Civ. P. 19(b) ............................ ii, 11, 57, 58, 59, 63, 65

Fed. R. Civ. P. 19(b)(3) ......................................................... 61

## Other Authorities

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and
    Procedure § 1359 (3d ed., West 2020) .................................. 63

7 Charles Alan Wright & Arthur R. Miller, Federal Practice and
    Procedure § 1604 (3d ed., West 2020) .................... 46, 52, 64

House Bill 215 .................................................................. 8, 50

Appellate Case: 20-3447    Page: 8    Date Filed: 02/16/2021 Entry ID: 5004702

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the laws of the United States, 42 U.S.C. § 1983.  JA97.

The district court entered its remedial order on November 12, 2020, which ended the litigation on the merits and left nothing for the court to do but execute the judgment.  Add. 8-9.  The notice of appeal was timely filed on November 18, 2020.  JA1852.  Accordingly, this Court has appellate jurisdiction under 28 U.S.C. § 1291.

Appellate Case: 20-3447     Page: 9     Date Filed: 02/16/2021 Entry ID: 5004702

# STATEMENT OF THE ISSUES

I.     Whether the district court exceeded its limited task of determining whether the minimal due process requirements established in *Morrissey v. Brewer*, 408 U.S. 471 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), for parole revocation proceedings were met?

- *Dayton Board of Education v. Brinkman*, 433 U.S. 406 (1977)

- *Lewis v. Casey*, 518 U.S. 343 (1996)

- *Missouri v. Jenkins*, 515 U.S. 70 (1995)

II.     Whether the district court erred in not joining the Missouri Public Defender Commission, the exclusive entity under Missouri law that possesses the authority to appoint counsel when the Constitution requires it?

- *Gagnon v. Scarpelli*, 411 U.S. 778 (1973)

- *Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008)

- *Delta Financial Corp. v. Paul D. Comanduras & Associates*, 973 F.2d 301 (4th Cir. 1992)

- Fed. R. Civ. P. 19

- Mo. Rev. Stat. § 600.042.4(5)

- Mo. Rev. Stat. §§ 217.020, .035

## STATEMENT OF THE CASE

A putative class of indigent parolees ("Plaintiffs") alleged that the defendants, the Missouri Department of Corrections, the Director of Corrections, members of the Missouri Division of Probation and Parole, and members of the Missouri Board of Probation and Parole (collectively, "Department") denied their due process rights, in violation of 42 U.S.C. § 1983. JA62, 65-70, 97-98. In the sole count of their amended complaint, Plaintiffs alleged that the Department (1) "systematically fail[s] to screen parolees to determine whether they are eligible for counsel, at cost to the State," pursuant to the Supreme Court's decision in *Gagnon v. Scarpelli*, 411 U.S. 778 (1973); (2) "fail[s] to appoint counsel to those parolees who do qualify[;]" and (3) "fail[s] to ensure that parolees receive adequate notice of the rights to which they are entitled in the parole revocation process." JA97-98. Plaintiffs exclusively sought "injunctive and declaratory relief[.]" *Id.*

## I.  Overview of Missouri's parole revocation process.

The parole revocation process has three phases: an initial violation interview, a preliminary hearing, and a revocation hearing. Add. 11. Within ten days of arresting and detaining a parolee, the parole officer

3

discusses the alleged violations and the parolee's rights at the initial violation interview. *Id.* At that time, a parolee may request or waive (1) screening for eligibility for state-funded counsel and (2) a preliminary hearing. *Id.*

At the preliminary hearing (and even if waived), a neutral hearing officer determines if probable cause that the parolee committed the alleged violations exists. *Id.* If probable cause is found, a parole officer conducts another violation interview with the parolee to remind the parolee of his rights during the revocation process, and the parolee may request or waive a revocation hearing and chose to be screened for counsel. *Id.* At the revocation hearing (or meeting if waived), the Parole Board determines whether parole was violated and decides if violations warrant revocation. *Id.* The parolee receives notice of the decision and in some cases is given the option to appeal. *Id.*

## II. The Department voluntarily takes substantial corrective measures.

Plaintiffs moved for summary judgment, to which the Department responded by stating that it had "no objection" because "the policies that existed at the time Plaintiffs filed their Amended Class Action complaint did not satisfy the requirements of *Gagnon*[.]" JA1203. The Department

4

further stated that it had "independently undert[aken] substantial corrective measures to remedy these shortcomings." *Id.* This included:

> [N]ew policies allowing parolees counsel during all hearings related to the parole revocation process, and providing policies and procedures for the screening and appointment of counsel, as required by *Gagnon* and provided by Missouri law. … [N]ew policies simplifying and clarifying the notices given Parolees during the parole revocation process. … [L]imiting the considerations at revocation hearings to the four-corners of the notice, including notice of any aggravating factors to the Parolee. [And] policies broadening a parolee's ability to offer substantive and mitigating evidence at a revocation hearing to include, among other things, testimony by phone and written statements.

JA271-72.

Although the district court acknowledged that the Department had taken substantial corrective measures, the court granted summary judgment against the Department. JA1209-10.

## III. The Department moved to dismiss the Amended Complaint because of mootness and nonjoinder.

Following the district court's entry of summary judgment, the Department moved to dismiss the Amended Complaint on two grounds: mootness and failure to join a necessary and indispensable party.

### A. Mootness.

*First*, Plaintiffs' claims had been mooted by the Department's

5

voluntary action to address the alleged constitutional violations. JA1245-46, 1248, 1250-51. As shown by multiple exhibits, the Department's revised policies for parole revocation proceedings require that parolees be informed of their right to request the appointment of counsel and be provided a copy of a Notice of Rights. JA1249, 1253, 1276, 1280-81. The Notice informs parolees that, during the revocation process, they have the right to: (1) a probable cause hearing before a neutral third-party; (2) counsel; (3) waive a preliminary hearing; (4) remain silent regarding any potential criminal charges; (5) tell their side of the story; (6) present evidence and witnesses; and (7) cross-examine adverse witnesses. JA1280-81. Parole officers must explain the Notice to parolees and obtain their signature on the Notice. JA1280-81, 1308. Parole officers must read two forms to parolees, one waiving a preliminary hearing and one waiving a revocation hearing. JA1308, 1343, 1351.[1] The former informs parolees of their right to a preliminary hearing and their right to counsel, JA1286, and the latter requires that

---

[1] If a parolee does not waive a preliminary hearing, then the hearing must be held within ten business days of the initial interview. JA1413.

the parolee acknowledge receipt of the Notice of Rights.  JA1351.[2]

When counsel is requested, an eligibility screening instrument is used and parole officers may assist parolees in completing the application.  JA1276; 1283-84.[3]  This application is then faxed to the public defender's office.  JA1276, 1283-84.  The new policies specifically advise parolees of the alleged parole violations at their initial interviews and require the parole officer to state that the parolee acknowledged receipt of a violation report before the preliminary hearing.  JA1271, 1276, 1297-98, 1317, & 1325.

Finally, under the new policies and procedures, parolees are afforded the opportunity to present written evidence and testimony (including their own) at both the preliminary and final revocation hearings and to confront and cross-examine adverse witnesses at both stages, except in very limited circumstances.  JA1331, 1333, 1355, & 1357.

---

[2] Further, a parolee whose parole has been revoked is advised of the right to appeal that determination.  JA1404-05.

[3] The screening instrument "was developed based on a reading of *Gagnon*."  Oral Argument Tr. 9; JA45.

**B.    Nonjoinder**.

*Second*, the Department asserted that Plaintiffs had failed to join the Missouri Public Defender Commission ("Commission") as a party to the action.  JA1245-46, 1248, 1250, & 1257.  The Department explained that the Commission possesses the sole authority under Missouri law to appoint counsel when the Constitution requires it.  JA1248, 1250, & 1258-59.  Although the Department tendered parolee applications to the Commission, the Commission repeatedly refuses to appoint counsel. JA1359-66.

The Department stressed to the district court that it had no authority under Missouri law to appoint counsel and to do so would result in a conflict of interest within the Department because it would have to represent both the parolee and the hearing officer.  Oral Argument Tr. 14.  Although the Commission had no obligation to appoint counsel to all parole detainees, *see* H.B. 215, 97th Gen. Assemb., 1st Reg. Sess. (Mo. 2013) (repealing director and defenders' duty to provide legal services to all parole detainees), the Department explained that Missouri law provided that the Commission was obligated to appoint counsel to parole detainees when the Constitution requires it.  Oral Argument Tr. 14-15.

8

At the end of the oral argument for the motion to dismiss, the district court commented that it did not believe it had the authority to join the Commission. *Id.* at 41-42. After the Department alerted the district court to its authority under Federal Rule of Civil Procedure 19(a)(2), the district court commented that it was "always learning of all these magical Article III powers, just forcing people to be parties to lawsuits." *Id.* at 42. The Department made clear that failing to join the Commission would be error because the district court could not afford complete relief without it. *Id.* at 43.

## C.  The district court denies the Department's motion to dismiss.

Three days after oral argument, the district court denied the Department's motion to dismiss. Add. 1. In a five-page order, the district court again recognized that the Department had taken substantial corrective measures, but rejected that the case had been mooted by those efforts. *Id.* at 1, 3. In one paragraph, the court explained, in conclusory fashion, that the Department's corrective measures failed to "pass constitutional muster" under *Gagnon*. *Id.* at 3.

The district court also found that the corrective measures "do not address or remedy *all* constitutional deficiencies in the parole revocation

9

process." *Id.* (emphasis added). But the court did not specify whether *some* measures, if any, did remedy some of the alleged constitutional violations. *See id.* The district court further found that "a live controversy exists regarding the right to state-funded counsel when constitutionally required[.]" *Id.* The court also found a "controversy as to the adequacy of remedy[.]" *Id.* The court advised the parties that they may present evidence related to the Department's corrective measures at an evidentiary hearing. *Id.*

As for joinder, the district court concluded that the Commission was not a "necessary" party under Rule 19. *Id.* at 4-5. The court explained that, under *Gagnon*, because the Department was the state authority responsible for administering the probation and parole system, it was charged with determining the *need* for counsel on a case-by-case basis and, therefore, had the authority to appoint counsel for indigent parolees. *Id.* The court further found that the Department "cite[d] no authority demonstrating that appointment of state-funded counsel is within the exclusive purview" of the Commission. *Id.* The court envisioned "various legal alternatives" in the event the Department did not exercise its purported authority under *Gagnon*, such as "enjoining" the Department

10

"from proceeding with revocation hearings and reincarcerating" unrepresented parolees. Despite having concluded that the Commission was not a necessary party, the district court also concluded that the Commission was not indispensable without addressing the four factors under Rule 19(b). *Id.*

## IV. The evidentiary hearing confirmed compliance with the Constitution.

After denying the Department's motion to dismiss, the district court held a two-day evidentiary hearing on the appropriate remedy. JA55. The Department's exhibits attached to its motion to dismiss were offered and admitted at the hearing. JA1465, 1468.

### A. The Missouri Public Defender Commission must appoint counsel when the Constitution requires it.

At the hearing, Mary Fox, the Commission's director, testified regarding her agency's powers and responsibilities. Evidentiary Hr'g Tr. 162. She testified that her responsibilities are expressed in "Chapter 600 of the Missouri Revised Statutes." *Id.* at 162-63. Specifically, the director testified that § 600.042 contains the "categories of cases" that the Commission "is authorized to provide representation[.]" *Id.* at 164. She acknowledged that the section requires the Commission "to represent

11

eligible persons for whom the federal . . . constitution require[s] the appointment of counsel[.]" *Id.* at 165. Director Fox further testified that, while her office has received requests from the Department to provide counsel to parolees, her office has "denied the cases as not eligible under Chapter 600." *Id.* at 166. She also testified that, despite amendments to § 600.042 in 2013, "the legislature never removed the provision" that said that the Commission must provide counsel when the Constitution requires it. *Id.* at 176.

Further, Todd Schwent, the Assistant Division Director for the Division of Probation and Parole, testified at the hearing that the Commission makes the "final determination as to whether or not [parolees qualify for counsel under *Gagnon*.]" *Id.* at 278, 339. Indeed, he testified that the Commission has denied representation in all cases where a parolee requested representation. *Id.* at 314.

## B. The Department's evidence demonstrated compliance with the Constitution.

The Department's evidence at the hearing showed that it had voluntarily implemented new, comprehensive policies and procedures that went beyond what *Gagnon* and the Constitution require. *First*, if a parolee is in custody, then the officer must interview the parolee within

12

five business days of knowing about the arrest. *Id.* at 284-85. Mr. Braxton, one of Plaintiffs' witnesses, testified he met with a parole officer to conduct his preliminary interview within twenty-four hours of his arrest. *Id.* at 145.

*Second*, all parolees are given the Notice of Rights that details when and where the preliminary hearing will take place if requested along with a description of the parolee's rights. *Id.* at 302-03. Notably, all five of Plaintiffs' witnesses testified that they were given or read the Notice of Rights. *Id.* at 145 (Mr. Braxton), 202 (Mr. Glover), 214 & 221 (Mr. Binion), 235 (Ms. Campbell), 261 (Mr. Hunt). They also admitted to having notice of their alleged violations. *Id.* at 145 (Mr. Braxton), 188 (Mr. Glover), 214 (Mr. Binion), 228, 230 (Ms. Campbell), 248 (Mr. Hunt). All but one of the witnesses waived their rights to a preliminary hearing. *Id.* at 148 (Mr. Braxton), 189 (Mr. Glover), 229-230 (Ms. Campbell), 251 (Mr. Hunt). Mr. Binion was the only witness who requested a preliminary hearing. *Id.* at 217. He received a report that summarized the preliminary hearing. *Id.* at 218.

*Third*, the Department demonstrated that its policies and practices provide all parolees the opportunity to appear and present evidence in a

Appellate Case: 20-3447     Page: 21     Date Filed: 02/16/2021 Entry ID: 5004702

preliminary hearing before a neutral third party. *Id.* at 303. Mr. Schwent testified that he has observed parolees present their own defense, present evidence and witnesses, and cross-examine adverse witnesses. *Id.* at 303-04. Indeed, the practice is for the "hearing officer [to] first take the testimony and receive documents from the client as well as their attorney, if applicable and present." *Id.* at 304. Matthew Kimsey, a lead analyst for the Parole Board, testified that parolees are given advanced notice of adverse witnesses, such as police officers. *Id.* at 356, 374-75.

*Fourth*, parolees are provided with a written determination. *Id.* at 377-79. If their parole has been revoked, they will receive the decision, the aggravating circumstances in detail, and mitigating circumstances in detail of what was considered for the revocation. *Id.* Even a parolee who has waived the hearing will receive the order of revocation with the violations and a notice of the decision. *Id.*

## V. The erroneous Remedy Order.

After the two-day evidentiary hearing, the district court entered its Order on Remedy. Add. 8-9. The court acknowledged that "from the time Plaintiffs initiated this case in 2017 to present," the Department had

14

made "significant changes to [its] parole revocation policies and procedures." *Id.* at 10. The court, nevertheless, held that the Department's revised policies and procedures did not satisfy the parolees' rights to due process under *Morrissey v. Brewer*, 408 U.S. 471 (1972), and *Gagnon* and made several "suggested changes" and "mandated remedies" in its Order.[4] *Id.* at 8-9.

*First*, the court found that, although the Department's policies requiring parolees to be given notice of alleged violations and a preliminary hearing promptly after arrest satisfied due process, the Department had "fail[ed] to adhere to such policies." *Id.* at 15. Thus, the district court ordered the Department to "comply with [its] policies[.]" *Id.*

*Second*, the district court found that, although the Department's "policy governing the timely provision of the Notice of Rights form to parolees" satisfied due process, the policy was "not being applied in practice." *Id.* at 20. The court concluded that the "[f]ailure to provide the Notice of Rights form in a timely manner or at all pursuant to" the Department's "policy and as required by *Morrissey*" constituted a due

---

[4] This Brief will focus only on the latter. For a summary of the district court's mandated relief, *see* Add. 57-58.

process violation. *Id.* Thus, the district court ordered the Department to "comply with [its] policy[.]" *Id.*

*Third*, the district court found that the Notice of Rights and the forms governing the request or waiver of a preliminary and revocation hearing, collectively, satisfied due process. *Id.* at 21. "However," the court found that "certain portions of the forms violate minimum due process requirements or are inconsistent with" the Department's policies and, therefore, the court "mandate[d] amendments to the forms in those cases." *Id.* The district court ordered the Department to "amend the Revocation Hearing form to add a space for the alleged violations to be listed, just as the Preliminary Hearing form provides such space," because the Supreme Court in *Morrissey* required "written notice of the claimed violations of parole in connection with a revocation hearing." *Id.* at 22 (quotation marks omitted). Moreover, the court ordered the Department to "amend the Revocation Hearing form to include an option for parolees to provide their own counsel at revocation hearings, as required by" the Department's own policy. *Id.*

*Fourth*, the district court found that, although the Department's "policies requiring parole officers to explain the parole revocation process

Appellate Case: 20-3447     Page: 24     Date Filed: 02/16/2021 Entry ID: 5004702

and parolees' rights therein conform to due process requirements, failure to abide by such policies render them meaningless." *Id.* at 27. Thus, the court ordered the Department "comply with their policies" and further ordered to "orally offer to read the Notice of Rights form to parolees and to amend their policies to reflect this requirement." *Id.*

*Fifth*, the district court found that "parolees are pressured to waive their right to hearings" so such waivers are not knowingly and voluntarily made. *Id.* at 29-31. Thus, the court ordered the Department to "ensure parole officers stop encouraging and pressuring parolees to waive their hearings." *Id.* at 31.

*Sixth*, the district court found that the Department's procedures "do not require that evidence against the parolee be disclosed to parolees." *Id.* at 32. Thus, the court ordered the Department to "disclose to parolees all evidence against them no later than five days before the revocation hearing" and to "amend their policies to reflect this requirement." *Id.* at 33.

*Seventh*, although the district court found that the Department's policy requiring revocation hearings to be conducted within thirty days of a parolee's return to custody was "reasonable[,]" the court nonetheless

17

found that the Department did "not always comply with this policy." *Id.* at 34. Thus, the court ordered the Department to "demonstrate overall adherence to the policy requiring revocation hearings be conducted within 30 days of a parolee's return to … custody, maintain documentation of [its] compliance with this policy, and keep detailed records to account for circumstances in which the 30-day deadline is not met." *Id.* at 35.

*Eighth*, the district court found that, although parolees who have had their parole revoked after a revocation hearing receive the decision, aggravating circumstances, and mitigating circumstances, the court found that the Department had proffered "no policy that requires parolees to be given evidence relied on and reasons for revoking parole after a revocation hearing." *Id.* at 36 (quotation marks omitted). Thus, the court ordered the Department to "comply with the policy requiring parolees be given the Notification of Board Action within 10 business days of the date on the Notification" and to "maintain careful documentation of the delivery of the Notifications of Board Action to parolees." *Id.* at 37.[5] The court further ordered the Department to

---

[5] The district court also ordered the Department to "construct and

construct and implement a policy mandating that, when a decision to revoke parole is made—regardless of whether a hearing was conducted—the Notice of Board Action must provide to the parolee a written decision outlining the evidence relied on to determine whether the parolee violated a condition(s) of parole, the mitigating circumstances considered, and reasons for revoking.

*Id.* at 38.

*Ninth*, the district court concluded that the Department fails to "properly screen for state-funded counsel eligibility[.]" *Id.* at 39. The court found that the Department's screening instrument contained "no space for an explanation if the parolee denies violating a condition(s) of parole[,]" so the court ordered the Department to "amend" the form to provide such a space. *Id.* at 41-42, 44.[6] The court further ordered the Department to amend the form to provide a space for mitigating circumstances. *Id.* at 41-42. In addition to these amendments, the court ordered the Department to conduct training for parole officers. *Id.* at 47.

---

implement a policy requiring revocation decisions be made and Notifications of Board Action completed within a reasonable amount of time after a revocation hearing or waiver thereof." *Id.* at 38.

[6] The district court also ordered the Department to amend its policies to "ensure parolees are informed of the right to be screened for state-funded counsel and are subsequently screened upon request before parolees decide whether to request or waive preliminary or revocation hearings." *Id.* at 49.

19

And the court ordered the Department to "adhere to [its] policies and, as mandated by *Gagnon*, require parole officers and other employees of the [Department] responsible for the counsel eligibility screening process to administer the Screening Instrument and make counsel eligibility determinations." *Id.* at 50. To the extent a parolee is ineligible for counsel, the district court ordered the Department to create and implement a policy requiring that an ineligibility determination be recorded in writing and given to parolees within a reasonable amount of time. *Id.* at 51-52.

*Tenth*, the district court concluded that the Department fails to "appoint counsel when due process so requires." *Id.* at 39, 52. The court rejected the Department's argument that it lacked authority to appoint counsel because the "authority, and, in fact, the requirement to provide state-funded counsel when warranted was bestowed on" the Department in *Gagnon*. *Id.* at 52 (quoting *Gagnon*, 411 U.S. at 790 ("[T]he decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system.")). "*Gagnon* does not address state public defender systems nor instruct that

20

public defenders must provide state-funded counsel." *Id.* at 52-53. Thus, the district court ordered the Department to "refrain from proceeding with revocation hearings and reincarcerating parolees who are not represented by state-funded counsel when minimum due process so requires" and to "adopt and implement a new policy for appointing state-funded counsel to eligible parolees." *Id.* at 53-54.

*Finally*, the district court, without citing any authority, revised the Department's appeal process for revocation decisions by ordering the Department to make appeal forms available to parolees the "same day" an adverse decision is received and to include in decisions denying appeals "the reasoning for the denial." *Id.* at 56.

Following the entry of the district court's Order on Remedy, the Department filed its notice of appeal. JA1852. Subsequently, the district court, on the Department's motion, stayed the case pending appeal. JA1855.

21

## STANDARD OF REVIEW

In reviewing a judgment in a court-tried case, this Court reviews the district court's legal conclusions de novo. *Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 737 (8th Cir. 2013). Further, conclusions of law underlying a district court's denial of a motion to dismiss for nonjoinder are reviewed de novo. *Cedar Rapids Bank & Tr. Co. v. Mako One Corp.*, 919 F.3d 529, 534 (8th Cir. 2019), *cert. denied*, 140 S. Ct. 848 (2020).

Appellate Case: 20-3447    Page: 30    Date Filed: 02/16/2021 Entry ID: 5004702

## SUMMARY OF ARGUMENT

The Supreme Court in *Morrissey* and *Gagnon* established minimal due process requirements for parole revocation hearings. The Court made clear it would not and could not "write a code of procedure" for parole revocation proceedings because "that is the responsibility of each State." *Morrissey*, 408 U.S. at 488–89. Instead, a federal court's "task is limited to deciding the *minimum requirements of due process*" at such proceedings. *Id.* (emphasis added). The Department took good-faith corrective measures that met (and exceeded) these minimal requirements.

Here, however, the district court erroneously believed the Constitution compelled it to write a code of procedure for, and to supervise, Missouri's parole revocation system. Indeed, the court embarked on an overreaching effort to re-write individual forms and even mandated amendments to forms. This kind of unnecessary federal-court intervention into a state's authority to run its correctional system is directly contrary to the Supreme Court's clear direction. Because the district court's remedy was both overbroad and unauthorized, this Court should reverse the judgment.

Appellate Case: 20-3447    Page: 31    Date Filed: 02/16/2021 Entry ID: 5004702

Further, the district court's overbroad remedy was exacerbated by the fact that it ordered changes to Missouri's parole revocation process that the Department has no authority to provide, namely the appointment of counsel for indigent parolees. Although the crux of the Amended Complaint was that the Department failed to make such appointments of counsel, neither Plaintiffs nor the district court sought to join the sole entity with such authority under Missouri law: the Commission. Indeed, Missouri law *mandates* that the Commission appoint counsel when the Constitution requires it. Without this necessary and indispensable party, the district court could not and cannot provide complete relief. Thus, this Court should reverse the district court's judgment and remand the case with instructions that it be dismissed without prejudice.

Appellate Case: 20-3447    Page: 32    Date Filed: 02/16/2021 Entry ID: 5004702

<u>**ARGUMENT**</u>

I.  **The District Court's Remedy Exceeds the Minimum Due Process Requirements Established in *Morrissey v. Brewer*, 408 U.S. 471 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778 (1973).**

The Department conceded its processes for parole revocation proceedings fell short of due process requirements at the time the Amended Complaint was filed, and it readily took good-faith corrective measures to remedy any constitutional violation. Thus, the district court should not have ordered the Department to do anything else.

Federal courts' power "to restructure the operation of local and state governmental entities is not plenary"—rather, it "may be exercised only on the basis of a constitutional violation" and, even then, "a federal court is required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation." *Dayton Bd. of Ed. v. Brinkman*, 433 U.S. 406, 419–20 (1977) (citations and quotation marks omitted); *cf. Lewis v. Casey*, 518 U.S. 343, 363 (1996) (Thomas, J., concurring) (federal judges should decide cases and controversies, not run state correctional systems by judicial decree). In devising a remedy, federal courts "must take into account the interests of state and local authorities in managing their own affairs, consistent with the Constitution."

25

*Missouri v. Jenkins*, 515 U.S. 70, 97–98 (1995) (citations and quotation marks omitted). It is also a "bedrock principle" that "federal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate the Constitution or does not flow from such a violation." *Id.*

The district court exceeded its remedial powers here by imposing remedies that went far beyond the minimal due process requirements established in *Morrissey* and *Gagnon* and effectively writing a code of procedure for Missouri's parole revocation process. The district court misconstrued the Department's statement—that "the policies that existed at the time Plaintiffs filed their Amended Class Action complaint did not satisfy the requirements" of *Morrissey* and *Gagnon* (JA1203)—to mean that the Department had agreed to all relief that the Plaintiffs' requested (and would later request). It did not. The Department took the extraordinary step and agreed that the policies were deficient and then "independently undertook substantial corrective measures to remedy these shortcomings." JA1203. The Department attempted to temporarily stay the case while it issued compliant policies, but the

26

district court forged ahead finding liability over the old policies. JA30-31.

When reviewing the new policies, the district court wrote a fifty-page opinion attempting to do what even the Supreme Court has said it would be unable to do: write a code of procedure for revocation hearings. The court erred for several reasons.

## A. The Supreme Court's decisions in *Morrissey* and *Gagnon* simply established minimal due process requirements at parole revocation proceedings that should not substantially burden a state's parole system.

The Supreme Court's decisions in *Morrissey* and *Gagnon* governed the district court's remedy. Add. 9. But the court's ultimate remedy greatly exceeded the confines of those decisions. The Supreme Court in *Morrissey* stressed that it could not "write a code of procedure" for parole revocation proceedings because "that is the responsibility of each State." 408 U.S. at 488–89. Instead, the federal court's "task is limited to deciding the *minimum requirements of due process*" at such proceedings. *Id.* (emphasis added). The Supreme Court in *Morrissey* and *Gagnon* stated that, while parole revocation was not a part of a criminal prosecution in which the full panoply of rights apply, such a proceeding

27

still resulted in a "loss of liberty" for which due process applies. *Gagnon*, 411 U.S. at 781; *Morrissey*, 408 U.S. at 480.

"Specifically," the Court "held that a parolee is entitled to two hearings, *one* a preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his parole[.]" *Gagnon*, 411 U.S. at 781–82. At this preliminary hearing, parolees are entitled to (1) notice of the alleged parole violations, (2) an opportunity to appear and to present evidence, (3) "a conditional right to confront adverse witnesses," (4) "an independent decisionmaker,"[7] and (5) "a written report of the hearing." *Id.* at 786.

*Second*, parolees are entitled to "a somewhat more comprehensive hearing prior to the making of the final revocation decision." *Id.* at 781–82. "The final hearing is a less summary one because the decision under consideration is the ultimate decision to revoke rather than a mere

---

[7] *See Morrissey*, 408 U.S. at 485 ("[D]ue process requires that after the arrest, the determination that reasonable ground exists for revocation of parole should be made by someone *not directly involved in the case*.") (emphasis added); *id.* at 486 (for example, "someone … other than the one who has made the report of parole violations or has recommended revocation").

Appellate Case: 20-3447     Page: 36     Date Filed: 02/16/2021 Entry ID: 5004702

determination of probable cause, but the 'minimum requirements of due process' include very similar elements[.]" *Id.* (quoting *Morrissey*, 408 U.S. at 489). These elements include: (1) written notice of the alleged parole violations, (2) the disclosure of adverse evidence against the parolee, (3) an opportunity to be heard in person and to present witnesses and evidence, (4) a right to confront and cross-examine adverse witnesses, except where "the hearing officer specifically finds good cause for not allowing confrontation[,]" (5) a neutral and detached hearing body (i.e., "a traditional parole board"), and (6) "a written statement by the factfinders as to the evidence relied on and reasons for revoking" parole. *Id.*[8]

As the Supreme Court stated in *Morrissey*, the minimal due process requirements detailed above "*should not impose a great burden on any State's parole system*." 408 U.S. at 490 (emphasis added).

_____

[8] In *Morrissey*, the Supreme Court noted that "due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." 408 U.S. at 485. Moreover, the Court stated that, while the "revocation hearing must be tendered within a reasonable time after the parolee is taken into custody[,]" a "lapse of two months … would not appear to be unreasonable." *Id.* at 488.

Appellate Case: 20-3447    Page: 37    Date Filed: 02/16/2021 Entry ID: 5004702

As for the appointment of counsel at the above hearings, the Supreme Court rejected the "contention that the State is under a constitutional duty to provide counsel for indigents in *all* probation or parole revocation cases." *Gagnon*, 411 U.S. at 787. The Court explained that "such a rule … would impose direct costs and serious collateral disadvantages without regard to the need or the likelihood in a particular case for a constructive contribution by counsel." *Id.* "Certainly, the decisionmaking process will be prolonged, and the financial cost to the State—for appointed counsel, counsel for the State, a longer record, and the possibility of judicial review—will not be insubstantial." *Id.* at 788. Indeed, "[i]n most cases, the probationer or parolee has been convicted of committing another crime or has admitted the charges against him" and, "while in some cases he may have a justifiable excuse for the violation or a convincing reason why revocation is not the appropriate disposition, mitigating evidence of this kind is often not susceptible of proof or is so simple as not to require either investigation or exposition by counsel." *Id.* at 787 (footnote omitted).

Thus, the Supreme Court in *Gagnon* found "no justification for a new inflexible constitutional rule with respect to the requirement of

counsel" and, instead, held that "the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system." *Id.* at 790. The Court explained that, while "certain cases" will require state-funded counsel, "the presence and participation of counsel will probably be both *undesirable and constitutionally unnecessary in most revocation hearings*[.]" *Id.* (emphasis added).

Just as the Supreme Court in *Morrissey* refused to "write a code of procedure" for parole revocation proceedings, 408 U.S. at 488–89, the Court in *Gagnon* found it "*neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines* to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements." 411 U.S. at 790 (emphasis added). "The facts and circumstances in preliminary and final hearings are susceptible of almost infinite variation, and a *considerable discretion* must be allowed the responsible agency in making the decision." *Id.* (emphasis added).[9]

---

[9] To be sure, the Supreme Court in *Gagnon* noted that

Appellate Case: 20-3447    Page: 39    Date Filed: 02/16/2021 Entry ID: 5004702

**B. The district court exceeded its limited remedial powers by imposing remedies that went beyond the minimal due process requirements established in *Morrissey* and *Gagnon* and effectively writing a code of procedure for Missouri's parole revocation process.**

Notwithstanding that the Department's policies undoubtedly meet the minimum due process requirements established in *Morrissey* and *Gagnon*, the district court ordered detailed, extensive additional remedies that the Constitution does not mandate. In doing so, it erred by exceeding its limited remedial powers.

---

counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee *makes such a request*, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself.

411 U.S. at 790–91 (emphasis added). Moreover, whenever counsel is requested but refused, "the grounds for refusal should be stated succinctly in the record." *Id.*

*First*, the scope of the dispute must be limited to whether the new procedures screen parolees for those cases that require counsel. But the district court's inquiry was not so limited, and it repeated the lower court's error in *Gagnon*: "accepting [the parolee's] contention that the State is under a constitutional duty to provide counsel for indigents in *all* probation or parole revocation cases." 411 U.S. at 787 (emphasis added). Due process requires counsel when "parolee's version of a disputed issue can fairly be represented only by a trained advocate." *Id.* at 788. But the Department's new policies effectively screen for that scenario. JA1276, 1283-84.

*Second*, the district court repeatedly noted that the Department's policies satisfied due process but found that the Department had not lived up to its policies. *See, e.g.*, Add. 15, 20, 27, 34-35, 37, & 50. However, Plaintiffs sole count in the amended complaint pleaded that the Department's *omissions* violated due process, and not that its policies were *inadequate*. JA97-98. Plaintiffs exclusively sought "injunctive and declaratory relief" for the constitutional violations. *Id.* The district court's Remedy Order found that the new policies satisfied (if not exceeded) due process, but it then ordered the Department to comply with

its policies. *See, e.g.*, Add. 13-15, 20-21. For instance, the Department's policy requires revocation hearings to be held within thirty days of custody, but the Supreme Court and this Court have stated that sixty- and ninety-day timeframes, respectively, were reasonable and sufficient for due process. *Morrissey*, 408 U.S. at 488; *Creech v. U.S. Bd. of Parole*, 538 F.2d 205, 208 (8th Cir. 1976). The district court ordered the Department to comply with the thirty-day timeframe stated in the policy, without finding that the Department had violated the Constitution. Add. 34-35; *but see Gonzaga Univ. v. Doe*, 536 U.S. 273, 282 (2002) (section 1983 provides redress for a violation of a federal *right*, not a violation of federal *law*); *Walton v. Dawson*, 752 F.3d 1109, 1122 (8th Cir. 2014) (violation of internal policy does not *ipso facto* violate the Constitution).

*Third*, Plaintiffs did not produce any evidence that any one of them had a case that *required* counsel. *Gagnon*, 411 U.S. at 788. Certainly, the district court found no such evidence. And, indeed, all but one of Plaintiffs' witnesses waived their rights to a preliminary hearing after receiving constitutionally sufficient notice. Evidentiary Hr'g Tr. 148, 189, 229-30, 251. Thus, these witnesses effectively forfeited their right

34

to dispute whether there was probable cause to believe a parole violation has occurred. As a result, Plaintiffs have not demonstrated a constitutional failure here either.

Further, the district court's orders to the Department that it provide space for a parolee to *explain* the denial of an alleged parole violation and mitigating circumstances (Add. 41-42, 44) finds no basis in either *Morrissey* or *Gagnon* and, indeed, amounts to no more than an impermissible attempt to write a code of procedure for Missouri. To be sure, when a parolee is informed of the right to counsel and the parolee *requests* counsel, counsel should be provided. *Gagnon*, 411 U.S. at 790-91. Although the Department has no authority to appoint counsel, *see* Point II(A), *infra*, it readily provides notice to the parolee of the right to counsel and space to request counsel. *See, e.g.*, Add. 61-66.

*Fourth*, the district court exceeded its limited remedial powers by ordering an overbroad remedy that the Supreme Court in *Gagnon* did not mandate. The court categorically prohibited the Department from conducting *any* revocation hearings and reincarcerating *any* parolees *unless* it adopts and implements a policy for appointing counsel to eligible parolees. But the Supreme Court in *Gagnon* rejected such an inflexible

35

rule. 411 U.S. at 787, 790. And the Court's remedy was to simply remand the case to the district court for the parolees to be afforded the opportunity to have a preliminary hearing and a final revocation hearing. *Id.* at 791. Nowhere in *Gagnon* did the Supreme Court express that Wisconsin was categorically prohibited from conducting parole revocation proceedings.

Because the district court exceeded its authority by ordering remedies that went beyond the Department's constitutional obligations, the district court's judgment must be reversed.

## C. The Department's revised policies satisfy the minimal due process requirements established in *Morrissey* and *Gagnon*.

The Supreme Court in *Morrissey* and *Gagnon* established six minimal due process requirements for parole revocation proceedings. The Department's revised policies and procedures undoubtedly meet (and even exceed) these minimal requirements.

### 1. The Department's policies provide parolees with written notice of the alleged parole violations.

The Department's policies specifically advise parolees of the alleged parole violations at their initial interviews and require the parole officer to state that the parolee acknowledged receipt of a violation report before

36

the preliminary hearing.  JA1271, 1276, 1297-98, 1317, 1325.  Indeed, all five of Plaintiffs' witnesses admitted to having notice of their alleged parole violations.  Evidentiary Hr'g Tr. 145, 188, 214, 228, 230, & 248. And the district court found, consistent with due process, that the Department's policies require that parolees be given notice of alleged violations and a preliminary hearing promptly after arrest.  Add. 15. Thus, the Department's policies provide parolees with written notice of the alleged parole violations.

### 2. The Department's policies provide parolees with an opportunity to be heard and to present evidence and witnesses.

The district court did not find that the Department's policies failed to provide parolees an opportunity to be heard.  Nor could it; under the Department's policies and procedures, parolees are afforded the opportunity to tell their side of the story during the revocation process, which includes presenting evidence and witnesses.  JA1280-81, 1331, 1333, 1355, 1357.  At the evidentiary hearing, the Department demonstrated that its policies and practices provide parolees the opportunity to appear and present evidence in a preliminary hearing before a neutral third party.  Evidentiary Hr'g Tr. 303.  Mr. Schwent

testified that he has observed parolees present their own defense, which included presenting evidence and witnesses. *Id.* at 303-04. Indeed, the practice is for the "hearing officer [to] first take the testimony and receive documents from the" parolee and the parolee's attorney. *Id.* at 304. Thus, the Department's policies and practices provide parolees with an opportunity to be heard, which includes presenting evidence and witnesses.

### 3. The Department discloses adverse evidence against the parolee.

The district court erroneously found that the Department's procedures "do not require that evidence against the parolee be disclosed to parolees." Add. 32. But Mr. Kimsey testified that parolees are given advanced notice of adverse witnesses, such as police officers. Evidentiary Hr'g Tr. 356, 374-75. Further, the Department's policies require disclosure of adverse facts and witnesses against parolees and, indeed, require officers to complete a Revocation Report, which is provided to parolees so that they are notified of all the facts against them. JA1344-45. Thus, the district court erred in concluding that the Department's policies did not require that adverse evidence be disclosed to parolees. The court further erred in ordering the Department to disclose such

38

adverse evidence "five days before the revocation hearing[,]" Add. 33, because this is no more than an impermissible attempt to write a code of procedure for Missouri. *See Morrissey*, 408 U.S. at 488–89.

### 4. The Department's policies allow parolees to confront and cross-examine adverse witnesses.

The district court did not find that the Department's policies failed to allow parolees to confront and cross-examine adverse witnesses. Nor could it; under the Department's policies and procedures, parolees are afforded the opportunity to confront and cross-examine adverse witnesses at both the preliminary and final revocation hearings, except in very limited circumstances. JA1331, 1333, 1355, 1357. The Notice of Rights given to parolees informs them of their right to cross-examine adverse witnesses. JA1280-81. Parolees are given advanced notice of adverse witnesses, such as police officers. Evidentiary Hr'g Tr. 356, 374-75. And Mr. Schwent testified that he has observed parolees cross-examine adverse witnesses. *Id.* at 303-04. Thus, the Department's policies allow parolees to confront and cross-examine adverse witnesses.

Appellate Case: 20-3447     Page: 47     Date Filed: 02/16/2021 Entry ID: 5004702

### 5. Parole revocation hearings are held before a neutral decisionmaker.

The district court did not find that parole revocation hearings in Missouri are not held before a neutral decisionmaker. Nor could it; under the Department's policies and procedures, "[t]he hearing officer must be a supervisor but cannot be the immediate supervisor of the officer who prepared the [violation report], nor any supervisor having been involved in decision-making, problem-solving, or investigation regarding the violation(s) in question." JA1318. Further, if "all supervisors in a district office have been involved with the violation(s) in question, it is the responsibility of the [Chief Administrative Officer]/designee to locate a hearing officer to conduct the hearing." *Id.*

Additionally, the Notice of Rights informs parolees that they have the right to a probable cause hearing before a neutral third-party. JA1280-81. And the Department reiterated at the evidentiary hearing that its policies and practices provide parolees the opportunity to appear and present evidence in a preliminary hearing before a neutral third party. Evidentiary Hr'g Tr. 303. Thus, a neutral decisionmaker is present throughout Missouri's parole revocation process.

40

### 6. Parolees are provided with a written violation report and a decision that provides the reasons for revoking parole.

Finally, the Department's policies and procedures satisfy the minimum due process requirements established in *Morrissey* and *Gagnon* because the Department provides parolees with a written violation report and a detailed decision when parole is revoked.

The Department's policies specifically require that parolees be advised of the alleged parole violations at their initial interviews and require that the parole officer state that the parolee acknowledged receipt of a violation report before the preliminary hearing. JA1270-71, 1276, 1297-98, 1317, & 1325; *see also* JA1315-1322. Notably, the district court found these policies satisfied due process. Add. 13-14. Further, the sole witness who requested a preliminary hearing received a report that summarized the hearing. Evidentiary Hr'g Tr. 217-18; *see Gagnon*, 411 U.S. at 786.

Parolees are also provided with a written determination when their parole is revoked. Evidentiary Hr'g Tr. 377-79; *see also* JA1402 (notice of board action given to parolee "within 10 business days from the date on the notice"). Although the district court found "no policy that requires

41

parolees to be given evidence relied on and reasons for revoking parole after a revocation hearing[,]" Add. 36 (quotation marks omitted), the Department's policy specifically requires that the decision detail what was considered for revocation, including aggravating and mitigating circumstances. Evidentiary Hr'g Tr. 377-79.

The Department's policy further requires the hearing panel to make a determination, by a preponderance of the evidence, for each citation. JA1355, 1357. If the hearing panel finds a violation, then the panel "shall review all violations, aggravating and mitigating circumstances" and "shall make a determination as to whether … parole … should be revoked." *Id.*

There is no difference between the Department's policy and the district court's remedy. *Compare* Add. 38 (ordering department to construct and implement a policy mandating that written decision revoking parole "outlin[e] the evidence relied on to determine whether the parolee violated a condition(s) of parole, the mitigating circumstances considered, and reasons for revoking").

Finally, in yet another attempt to write a code of procedure for Missouri, the district court revised the Department's appeal process for

42

revocation decisions by ordering that the Department make appeal forms available to parolees the "same day" an adverse decision is received and to include in decisions denying appeals "the reasoning for the denial." Add. 56.

Setting aside the fact that neither *Morrissey* nor *Gagnon* mandated an appeal process in its six minimal due process requirements, much less a comprehensive one, suffice it to say that the Department's policies requiring a detailed decision provide more than "an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence." *Black v. Romano*, 471 U.S. 606, 613–14 (1985). The Department does not simply revoke parole without *any evidentiary support* for finding that parole conditions were violated, as in *Douglas v. Buder*, 412 U.S. 430, 432 (1973) (per curiam). All six of the minimum due process requirements established in *Morrissey* and *Gagnon*, which the Department has clearly met, "protect" the parolee against revocation "in a constitutionally unfair manner" because these six procedural safeguards "minimize" the "risk of unfairness[.]" *Black*, 471 U.S. at 613 (citation omitted). Thus, "there is a diminished justification for requiring" the Department to "explain [its] rulings." *Id.*

43

Indeed, "where the factfinder has discretion to continue" parole, "the procedures required by *Gagnon* and *Morrissey* assure" the parolee "an opportunity to present mitigating evidence and to argue that alternatives to imprisonment are appropriate. That opportunity, combined with the requirement that the factfinder state the reason for its decision and the evidence relied upon, *accommodates the interests involved in a manner that satisfies procedural due process*." *Id.* at 614 (emphasis added).

## II. The District Court Erred in Not Joining the Missouri Public Defender Commission to this Action and, in its Absence, the Court's Remedy Cannot Be Enforced Because, under Missouri law, the Missouri Department of Corrections Has No Authority to Appoint Counsel When the Constitution Requires It.

Missouri law is clear: when the Constitution requires that counsel be appointed, the Commission is the exclusive entity with the power to make such an appointment. *See* Mo. Rev. Stat. § 600.042.4(5). No similar directive or authority is given to the Department. And "an administrative agency enjoys no more authority than that which is granted to it by statute." *Pen-Yan Inv., Inc. v. Boyd Kansas City, Inc.*, 952 S.W.2d 299, 303–04 (Mo. Ct. App. 1997).

Nevertheless, the district court significantly changed the parole revocation process in Missouri by prohibiting the Department from holding

44

revocation hearings until it created and implemented a policy for appointing state-funded counsel for eligible parolees. Add. 53-54. In other words, the court ordered changes to the parole revocation process in Missouri that the Department does not have the authority to implement. And, despite several opportunities to join it as a party, the sole entity that possesses such authority under Missouri law has not been joined.

The district court's changes to the parole revocation process in Missouri will result in the significant use of time and resources to provide a new process the Department has no authority to provide. It further alters the process adopted by the Missouri General Assembly. As this Court recently reaffirmed, "it is in the public interest to uphold the will of the people, as expressed by acts of the state legislature, when such acts appear harmonious with the Constitution." *Pavek v. Donald J. Trump for President, Inc.*, 967 F.3d 905, 909 (8th Cir. 2020). The people of Missouri, through the Missouri General Assembly, provided that the Commission, and not the Department, is the exclusive entity that makes appointments of counsel when the Constitution requires it. The relief granted by the district court frustrates the will of the people of Missouri and far exceeds the proper role and authority of the federal courts.

45

Accordingly, the district erred in not joining the Commission to this action and denying the Department's motion to dismiss.

## A. The Department has no authority to appoint counsel when the Constitution requires it.

A party "subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined" if in that party's absence "the court cannot accord complete relief among existing parties[.]" Fed. R. Civ. P. 19(a)(1)(A). If a party "has not been joined as required, the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2). "The Rule 19 inquiry is a context sensitive one which may vary from case to case." *Two Shields v. Wilkinson*, 790 F.3d 791, 798 (8th Cir. 2015). Rule 19(a)(1)(A) "is designed to protect" existing parties "so that any relief that may be awarded will effectively and completely adjudicate the dispute." 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1604 (3d ed., West 2020); *see also Cedar Rapids Bank*, 919 F.3d at 534 (focus of Rule 19(a)(1) is on relief between the existing parties). Even if one party is liable, that does not mean it is solely liable; indeed, for purposes of joinder, "the Supreme Court has recognized that a defending party has an interest in avoiding 'sole responsibility for a liability he shares with another.' " *Two Shields v.*

46

*Wilkinson*, 790 F.3d 791, 798 (8th Cir. 2015) (quoting *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 110 (1968)). Although "questions of joinder" are governed by federal law, "a federal court must look to the state-law relationships between the parties when determining which parties are, as a practical matter, necessary for a just adjudication of the case." *Delta Fin. Corp. v. Paul D. Comanduras & Assocs.*, 973 F.2d 301, 305 (4th Cir. 1992).

Missouri state agencies are creatures of statute that possess only those powers conferred on them by statute. *See, e.g.*, *State ex rel. MoGas Pipeline, LLC v. Missouri Pub. Serv. Comm'n*, 366 S.W.3d 493, 496 (Mo. 2012); *cf. VF Jeanswear LP v. Equal Employment Opportunity Comm'n*, 140 S. Ct. 1202, 1204 (2020) (Thomas, J., dissenting from the denial of certiorari) ("[A]ll administrative agencies are creatures of statute, bound to the confines of the statute that created them.") (quotation marks omitted). Chapter 217 of the Revised Statutes of Missouri governs the Department. At least two sections directly address the Department's powers and duties. *First*, § 217.020 provides that the Department shall (1) "[s]upervise and control programs assigned to it and any of its divisions by the general assembly;" (2) "[h]ave the authority to

47

sue and be sued;" and (3) "[a]dvise, consult and cooperate with other state agencies, local governmental units, private entities, other states and interstate and interlocal agencies in developing and implementing programs to fulfill the department's responsibilities." Mo. Rev. Stat. § 217.020. Nowhere in this section is the Department obligated or authorized to appoint counsel when the Constitution requires it.

*Second*, § 217.035 provides that the Director of Corrections "shall have the authority" to take various actions, including establishing, with the approval of the Governor, the Department's internal organization, and exclusively preparing the Department's budget. Mo. Rev. Stat. § 217.035. Like in § 217.020, nowhere in this section is the Department authorized to appoint counsel when the Constitution requires it.

Indeed, *nothing* in Chapter 217 even mentions the appointment of counsel. Thus, neither the Department nor the Director of Corrections has the authority to appoint counsel when the Constitution requires it. Nor can either entity delegate such authority to one of the Department's divisions, such as the Division of Probation and Parole or the Board of Probation and Parole, because these entities are vested only with the authority granted to them by Missouri law. And mandating that the

48

Department appoint counsel for a parolee while also serving as the entity that determines whether to revoke that person's parole would undoubtedly raise a conflict of interest within the Department. Oral Argument Tr. 14.

**B.** **Because the Missouri Public Defender Commission has the exclusive authority to appoint counsel when the Constitution requires it, the Commission was a "necessary" party under Fed. R. Civ. P. 19(a)(1)(A).**

Although the Department has no authority to appoint counsel under Missouri law, the Commission is not so limited. The Commission, unlike the Department, is *mandated* under Missouri law to appoint counsel when the Constitution requires it. *See* Mo. Rev. Stat. § 600.042.4(5) ("The director and defenders *shall* provide legal services to an eligible person … [f]or whom the federal constitution … requires the appointment of counsel[.]") (emphasis added).

At the evidentiary hearing, Director Fox testified that her agency's responsibilities are expressed in "Chapter 600 of the Missouri Revised Statutes." Evidentiary Hr'g Tr. at 162-63. Specifically, she testified that Mo. Rev. Stat. § 600.042 contains the "categories of cases" that the Commission "is authorized to provide representation[.]" *Id.* at 164. She

49

acknowledged that the section requires her agency "to represent eligible persons for whom the federal … constitution require[s] the appointment of counsel[.]" *Id.* at 165.

Director Fox further testified that, despite amendments to § 600.042 in 2013, "the legislature never removed the provision" that said that her agency *must* provide counsel when the Constitution requires it. Evidentiary Hr'g Tr. 176; *see also* H.B. 215, 97th Gen. Assemb., 1st Reg. Sess. (Mo. 2013) (repealing director and defenders' duty to provide legal services to all parole detainees, but maintaining obligation to appoint counsel when the Constitution requires it).

Thus, under Missouri law, the Commission is the sole entity that has the authority to appoint counsel when the Constitution requires it. *See* Mo. Rev. Stat. § 600.042.4(5). No similar provision is found anywhere in Chapter 217 of the Revised Statutes of Missouri, much less in sections §§ 217.020 and 217.035, which directly address the Department's powers and duties. Indeed, at least two other Missouri statutes expressly state that the Commission possesses the exclusive authority to appoint counsel. For example, the Commission, unlike the Department, has the authority to hire private counsel, even "due to

50

caseload" concerns. *See, e.g.*, Mo. Rev. Stat. § 600.042.1(10) (director "shall … [c]ontract for legal services with private attorneys on a case-by-case basis"); Mo. Rev. Stat. § 600.063.3(1). No such express language appears anywhere in Chapter 217. So, while the state of Missouri must provide counsel at parole revocation hearings when due process requires, that responsibility falls within the exclusive province of the Commission.

But the Commission was not joined as a party to this action either by Plaintiffs or the district court, despite the Department's repeated objections. The district court unquestionably had personal jurisdiction over the Commission, which is domiciled in Missouri, *see, e.g.*, *Milliken v. Meyer*, 311 U.S. 457, 462 (1940), and its joinder would not have destroyed subject matter jurisdiction given that this was exclusively a federal-question case. JA97; *see* Fed. R. Civ. P. 19(a)(1). Without the Commission, the district court could not provide complete relief among the existing parties, since the Department has no authority to appoint counsel when the Constitution requires it. *Cf. Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1280 (11th Cir. 2003) (joinder required because complete relief not possible in absence of media company since transit authority could not "require the running of a

particular advertisement on its bus shelters"); *Wymbs v. Republican State Exec. Comm. of Fla.*, 719 F.2d 1072, 1080 (11th Cir. 1983) (joinder required because judgment had "little or no effect" in absence of national political party organization, which determines the selection of the delegates from each congressional district, not the state executive committee). Indeed, appointment of counsel was at the core of the Amended Complaint. *See* JA97-98.

Accordingly, the Commission was a "necessary" party under Rule 19(a). Under the text of that Rule, the district court was *required* to join the Commission, unless it was not feasible to do so. *See* Fed. R. Civ. P. 19(a)(2) (if a party "has not been joined as required, the court *must* order that the person be made a party") (emphasis added); *Askew v. Sheriff of Cook Cty., Ill.*, 568 F.3d 632, 635 (7th Cir. 2009) ("The district court's first error was to skip over Rule 19(a)(2) altogether."); Wright & Miller, *supra*, § 1611 ("[T]he court has no discretion at this point because of the mandatory language of the rule."); *see also United States v. John Doe, Inc. I*, 481 U.S. 102, 109 (1987) (when the "choice … is between recognizing or ignoring what the Rule provides in plain language" courts "accept the Rule as meaning what it says") (quotation marks omitted); *United States*

52

*v. $579,475.00 in U.S. Currency*, 917 F.3d 1047, 1049 (8th Cir. 2019) (en banc) ("A rule of civil procedure should be interpreted in accordance with its plain meaning."). But there is nothing in the record that suggests it would not have been feasible for the Commission to be joined as a party. Notably, the district court expressed disbelief that it could order the Commission's joinder and, only after the Department alerted the court to its authority to join a necessary party under Rule 19(a)(2), did the court comment that it was "always learning of all these magical Article III powers, just forcing people to be parties to lawsuits." Oral Argument Tr. 41-43. Thus, the district court erred in not joining the Commission as a necessary party. *See* Fed. R. Civ. P. 19, advisory committee notes ("If a person as described in subdivision (a)(1)(2) is amenable to service of process and his joinder would not deprive the court of jurisdiction in the sense of competence over the action, he should be joined as a party; and if he has not been joined, *the court should order him to be brought into the action*.") (emphasis added).

Further, the district court erred in concluding that the Commission was not a "necessary" party under Rule 19. Add. 4-5. The court misread *Gagnon* as imposing a duty to appoint state-funded counsel on the

53

Department merely because it was the state authority responsible for administering the probation and parole system. *Id.* But *Gagnon* does not (and cannot) change which entity, under Missouri law, has the exclusive authority to make appointments of counsel. Indeed, that determination does not derive from a Supreme Court decision; it derives from state law. *See Delta*, 973 F.2d at 305 ("[A] federal court must look to the state-law relationships between the parties when determining which parties are, as a practical matter, necessary for a just adjudication of the case."). And, here, Missouri law is clear: when the Constitution requires that counsel be appointed, the Commission is the exclusive entity with the power to make such an appointment. *See* Mo. Rev. Stat. § 600.042.4(5).

The district court misread *Gagnon* because all the Supreme Court said there was that "the decision as to the *need* for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system." 411 U.S. at 790 (emphasis added). But this does not (and cannot) mean that the Department possesses the authority to *appoint* counsel when the need arises simply because it administers the

54

parole system. Such authority rests exclusively with the Commission. And, consistent with *Gagnon*, the Department can determine whether counsel is *necessary* on a case-by-case basis without ever determining whether a parolee is eligible and ultimately given state-funded counsel.

In fact, the Department's practice has been to provide the Screening Instrument when counsel is requested. JA1276, 1283-84. This application "was developed based on a reading of *Gagnon*." Oral Argument Tr. 9. The application is then faxed to the public defender's office. JA1276, 1283-84; Add. 49-50, 53, 66. Although the Commission has received these requests from the Department, it has categorically denied the requests. Evidentiary Hr'g Tr. 166. But the Commission's failure to discharge its statutory and constitutional obligations to provide counsel when the Constitution requires it should not prejudice the Department's statutory directive to hold revocation hearings. *See, e.g.*, Mo. Rev. Stat. § 217.720. Accordingly, the district court erred in concluding that the Commission was not a "necessary" party under Rule 19.

The district court further erred in finding that the Department

"cite[d] no authority demonstrating that appointment of state-funded counsel is within the exclusive purview" of the Commission. Add. 4-5. The Department's motion to dismiss asserted *at least three times* that such authority rests exclusively with the Commission, citing Mo. Rev. Stat. § 600.042.4(5) each time. JA1248, 1250, & 1258-59. And the Department made similar assertions at the oral argument for the motion to dismiss. Oral Argument Tr. 15, 40. Indeed, the district court acknowledged that § 600.042.4(5) provides that the Commission "is responsible for the representation of anybody where there's a Federal Constitution … which requires the appointment of counsel." *Id.* at 37-38.

At bottom, the Missouri General Assembly, has designated a state entity to appoint counsel when the Constitution requires it: the Commission. No similar directive can be found anywhere in Chapter 217, which details the Department's powers and responsibilities. *See, e.g.*, *City of Aurora v. Spectra Commc'ns Grp., LLC*, 592 S.W.3d 764, 783 (Mo. 2019) ("This Court presumes each word, clause, sentence, and section of a statute will be given meaning and that the legislature did not insert superfluous language.") (quotation marks omitted). Accordingly, the district court erred in not joining the Commission to this action.

56

## C. The Missouri Public Defender Commission was an Indispensable Party under Fed. R. Civ. P. 19(b).

To be sure, "[t]he absence of parties other than those indispensable to the court's jurisdiction is not ordinarily ground for dismissal." *Capital Fire Ins. Co. of Cal. v. Langhorne*, 146 F.2d 237, 243 (8th Cir. 1945). But "[o]nce a party is determined to be required, Rule 19(b) provides four factors that courts are to consider in deciding whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *Two Shields*, 790 F.3d at 798 (quotation marks omitted). These factors include (1) whether a judgment rendered in the party's absence may prejudice that party or the existing parties; (2) whether any prejudice can be reduced or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether the judgment would be adequate without the absent party; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. *Id.*

Despite having concluded that the Commission was not a necessary party, the district court, without addressing the four factors under Rule 19(b), also concluded that the Commission was not indispensable. Add. 4-5. But the court was required under Rule 19(b) to analyze the four

57

factors, based on the text of the Rule. *See California v. Arizona*, 440 U.S. 59, 62 n.3 (1979) ("[W]hen a person described by Rule 19(a) cannot be joined, 'the court *shall* determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.' ") (quoting Fed. R. Civ. P. 19(b) (emphasis added)). Thus, the court erred in concluding that the Commission was not an indispensable party under Rule 19 without addressing the Rule 19(b) factors.

The district court further erred because the Commission was an indispensable party under Rule 19(b). *See Provident Tradesmen's Bank & Trust Co. v. Patterson*, 390 U.S. 102, 106–08 (1968) (appellate court should address joinder issues sua sponte); *Fetzer v. Cities Serv. Oil Co.*, 572 F.2d 1250, 1253 n.6 (8th Cir. 1978) ("The issue of indispensability of parties may be raised at any stage of the proceedings, and as late as on appeal.").[10]

---

[10] To be sure, even when an absent party is deemed "necessary," the "proper procedure under Rule 19(a) is to give the parties an opportunity to bring in such a party, not to dismiss the action." *Ranger Transp., Inc. v. Wal-Mart Stores*, 903 F.2d 1185, 1187 (8th Cir. 1990) (per curiam). But as stated above, the Department made several pleas to Plaintiffs and the district court to join the Commission well before the evidentiary hearing and the issuance of the Remedy Order, but those pleas were rejected.

Appellate Case: 20-3447    Page: 66    Date Filed: 02/16/2021 Entry ID: 5004702

## 1. The Remedy Order prejudices the Department because it prohibits the Department from conducting all revocation hearings and reincarcerating all parolees unless it adopts and implements a policy for appointing counsel to eligible parolees.

All four Rule 19(b) factors weigh in favor of dismissal. *First*, the district court ordered the Department to "refrain from proceeding with revocation hearings and reincarcerating parolees who are not represented by state-funded counsel when minimum due process so requires" and to "adopt and implement a new policy for appointing state-funded counsel to eligible parolees." Add. 53-54. Thus, the court's Remedy Order prejudices the Department because it categorically prohibits the Department from conducting *any* revocation hearings and reincarcerating *any* parolees *unless* it adopts and implements a policy for appointing counsel to eligible parolees.

But as explained in Point II(A)-(B), *supra*, the Department has no authority under Missouri law to appoint counsel when the Constitution requires it and, indeed, Missouri law makes it clear that the Commission has such authority. In fact, the Department's practice has been to

---

Thus, this case is simply not one where this Court should remand the case to the district court to join the Commission; instead, dismissal is the proper remedy.

provide the Screening Instrument when counsel is requested. JA1276, 1283-84. This application "was developed based on a reading of *Gagnon*." Oral Argument Tr. 9. The application is then faxed to the public defender's office. JA1276, 1283-84; Add. 49-50, 53, 66. Although the Commission has received these requests from the Department, it has categorically denied the requests. Evidentiary Hr'g Tr. 166. But the Commission's failure to discharge its statutory obligation to provide counsel when the Constitution requires it should not prejudice the Department's statutory directive to hold parole revocation hearings. *See, e.g.*, Mo. Rev. Stat. § 217.720.

### 2. The Remedy Order's prejudice could have been avoided by omitting the categorical prohibition on conducting parole revocation hearings and reincarcerating all parolees.

*Second*, the district court's Remedy Order did not have to be so broad. Indeed, the court could have avoided any prejudice to the Department by omitting the prohibition on holding parole revocation hearings in *all* cases, given that such a categorical prohibition goes beyond the four corners of *Gagnon*. 411 U.S. at 787 (rejecting contention that "the State is under a constitutional duty to provide counsel for indigents in *all* probation or parole revocation cases") (emphasis added).

Appellate Case: 20-3447    Page: 68    Date Filed: 02/16/2021 Entry ID: 5004702

The district court envisioned "various legal alternatives" in the event the Department did not exercise its purported authority to appoint counsel under *Gagnon*, but the only express alternative it imposed was "enjoining" the Department "from proceeding with revocation hearings and reincarcerating" unrepresented parolees. Add. 4-5. No other "alternative remedies or forms of relief" were imposed and none were readily available without asking the Department to exercise authority it did not possess. *Republic of Philippines v. Pimentel*, 553 U.S. 851, 870 (2008). In the Commission's absence, the Remedy Order cannot afford complete relief to Plaintiffs.

### 3. The Remedy Order could have been adequate by simply joining the Missouri Public Defender Commission under Fed. R. Civ. P. 19(a)(2), but the district court did not exhaust that avenue.

*Third*, the district court's Remedy Order could have been adequate or fully effective if it had simply joined the Commission when the issue was raised well before the evidentiary hearing. As used in Rule 19(b)(3), "adequacy refers to the public stake in settling disputes by wholes, whenever possible." *Republic of Philippines*, 553 U.S. at 870–71 (quotation marks omitted). "This social interest in the efficient administration of justice and the avoidance of multiple litigation is an

61

interest that has traditionally been thought to support compulsory joinder of absent and potentially adverse claimants." *Id.*

Although the district court did not believe it had such authority, the Department alerted the court to its authority to compel the Commission to be joined as a party under Rule 19(a)(2) at the oral argument on the motion to dismiss. In other words, the court was on notice well before the evidentiary hearing that a key party for a fully effective remedy was absent. But the court persisted in continuing the proceeding without the Commission. Going forward with the action without the Commission would not further the public interest in settling the dispute as a whole because the Commission, as a nonparty, would not be bound by the Remedy Order. *Republic of Philippines*, 553 U.S. at 870–71; *see also Provident Tradesmens Bank*, 390 U.S. at 110 (nonparty "cannot be bound by the judgment rendered"). Thus, the Remedy Order cannot be adequate when the entity with the sole authority to appoint counsel has not been joined.

Appellate Case: 20-3447    Page: 70    Date Filed: 02/16/2021 Entry ID: 5004702

### 4. Plaintiffs would have had an adequate remedy had the district court dismissed the action for nonjoinder and will still have such a remedy if this Court remands the case to the district court with instructions to dismiss.

The fourth 19(b) factor especially weighs in favor of dismissal. "The final factor listed in Rule 19(b) is whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder of the absentee. *Often dismissal is not a hardship because plaintiff will be able to bring the action in another federal court*[.]" Wright & Miller, *supra*, § 1608 (footnote omitted) (quotation marks omitted). Of course, "[d]ismissal under Rule 19(b) will mean, in some instances, that plaintiffs will be left without a forum for definitive resolution of their claims." *Republic of Philippines*, 553 U.S. at 872.

For the following reasons, Plaintiffs would have had an adequate remedy had the district court dismissed the action for nonjoinder, and will still have an adequate remedy even if this Court remands the case to the district court for dismissal. Indeed, such a dismissal "is not considered to be on the merits and is without prejudice; therefore, it does not have any former adjudication effect." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1359 (3d ed., West 2020); *accord Dredge Corp. v. Penny*, 338 F.2d 456, 463–64 (9th Cir. 1964)

(dismissal for nonjoinder ordinarily without prejudice because "defense operates only to abate the particular action"); *but see Sladek v. Bell Sys. Mgmt. Pension Plan*, 880 F.2d 972, 980 (7th Cir. 1989) (dismissal for nonjoinder "with prejudice" appropriate "only after the court *has ordered the party joined and the plaintiff has failed to do so*") (emphasis added). Res judicata would not bar Plaintiffs from suing the Commission because the underlying action would not constitute an action between the same parties (and, certainly, the Commission is not in privity with the Department). *Rutherford v. Kessel*, 560 F.3d 874, 877 (8th Cir. 2009). Moreover, the Commission would be afforded an opportunity to defend itself because "a judgment is not res judicata as to, or legally enforceable against, a nonparty." *Provident Tradesmens Bank*, 390 U.S. at 110.

Thus, Plaintiffs have an adequate remedy even if this Court remands the case to the district court with instructions to dismiss because Plaintiffs may sue the Commission in federal court. *See* Wright & Miller, *supra*, § 1608 ("Often dismissal is not a hardship because plaintiff will be able to bring the action in another federal court[.]"). And even if Plaintiffs are left without a forum to adjudicate their claims because of sovereign immunity or another defense, that is of no

64

consequence because Rule 19(b) contemplates that scenario. *Cf. Republic of Philippines*, 553 U.S. at 872 (dismissal may mean that plaintiffs are left without a forum to resolve disputes, "[b]ut that result is contemplated under the doctrine of foreign sovereign immunity"); *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 497 (1983) ("[I]f a court determines that none of the exceptions to sovereign immunity applies, the plaintiff will be barred from raising his claim in any court in the United States[.]").

For the foregoing reasons, the Commission was an indispensable party under Rule 19(b) and, therefore, the district court erred in not dismissing the action. Accordingly, this Court should remand the case to the district court with instructions to dismiss without prejudice.

## CONCLUSION

The Court should reverse the district court's judgment.

Respectfully submitted,

**ERIC S. SCHMITT**
MISSOURI ATTORNEY GENERAL

/s/ *Jesus A. Osete*
Jeremiah J. Morgan, #50387
  *Deputy Attorney General - Civil*
Jesus A. Osete, #69267
  *Deputy Solicitor General*

Counsel for Appellants

65

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this Brief complies with the type-volume, typeface, and type-style requirements of Fed. R. App. P. 32, and contains 12,624 words, as determined by the word-count feature of Microsoft Word.  Both the Brief and Addendum have been scanned for viruses and are virus free.

/s/ *Jesus A. Osete*
Deputy Solicitor General

*Counsel for Appellants*

Appellate Case: 20-3447    Page: 74    Date Filed: 02/16/2021 Entry ID: 5004702

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 11, 2021, a copy of the foregoing document was served electronically to counsel of record by operation of the Court's CM/ECF system. Counsel of record for Appellees has waived service of the paper brief required under 8th Cir. R. 28A(d).

/s/ *Jesus A. Osete*

Deputy Solicitor General

*Counsel for Appellants*

Appellate Case: 20-3447　Page: 75　Date Filed: 02/16/2021 Entry ID: 5004702