No. 20-3447

# United States Court of Appeals
## For the Eighth Circuit

STEPHANIE GASCA, MILDRED CURREN, KENNETH HEMPHILL, JESSE NEELY, AMBER WYSE, TIMOTHY GALLAGHER, and SOLOMON WARREN,

*Plaintiffs-Appellees,*

v.

ANNE L. PRECYTHE, in her official capacity as Director of the Missouri Department of Corrections; KENNETH JONES, in his official capacity as Chairman of the Missouri Division of Probation and Parole; JENNIFER ZAMKUS, in her official capacity as Vice Chair of the Missouri Board of Probation and Parole; JIM WELLS, in his official capacity as Member of the Missouri Board of Probation and Parole; MARTIN RUCKER, in his official capacity as Member of the Missouri Board of Probation and Parole; ELLIS MCSWAIN, in his official capacity as Member of the Missouri Board of Probation and Parole; GARY DUSENBERG, in his official capacity as Member of the Missouri Board of Probation and Parole; and PAUL FITZWATER, in his official capacity as Member of the Missouri Board of Probation and Parole,

*Defendants-Appellants.*

Appeal from the United States District Court,
Western District of Missouri - Jefferson City
The Honorable Stephen R. Bough, United States District Judge

## ADDENDUM OF APPELLANTS

Office of the Attorney General
Supreme Court Building
P.O. Box 899
Jefferson City, MO 65102
Tel. (573) 751-1800
Fax (573) 751-0774
Jesus.Osete@ago.mo.gov

**ERIC S. SCHMITT**
MISSOURI ATTORNEY GENERAL
Jeremiah J. Morgan, #50387
   *Deputy Attorney General - Civil*
Jesus A. Osete, #69267
   *Deputy Solicitor General*
Counsel for Appellants

# INDEX TO ADDENDUM

December 19, 2019 Order (Doc. 217) ................................................ Add. 1

November 12, 2020 Order (Doc. 323) .............................................. Add. 6

December 15, 2017 Order (Doc. 50) ................................................ Add. 67

January 4, 2019 Order (Doc. 132) .................................................. Add. 81

January 24, 2019 Order (Doc. 139) ................................................ Add. 84

February 27, 2019 Order (Doc. 146) .............................................. Add. 89

June 10, 2020 Text Order (Doc. 299) ............................................. Add. 91

June 10, 2020 Text Order (Doc. 300) ............................................. Add. 93

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### SOUTHERN DIVISION

STEPHANIE GASCA, et al.,                     )
                                             )
on behalf of themselves and all similarly    )
situated individuals,                        )
                                             )
      Plaintiffs,                        )
                                             )
v.                                           )    Case No. 17-cv-04149-SRB
                                             )
ANNE PRECYTHE, Director of the Missouri       )
Department of Corrections, et al.,           )
                                             )
      Defendants.                        )

## ORDER

Before the Court is Defendants' Motion to Dismiss as Moot and for Failure to Join an Indispensable Party. (Doc. #194). The Court has considered the parties' arguments set forth in the briefing on the Motion and asserted at oral argument. For the following reasons, the motion is DENIED.

## I.    BACKGROUND

This class-action lawsuit challenges the constitutionality of the parole revocation policies and procedures of the Missouri Department of Corrections ("MDOC") and its Division of Probation and Parole ("Parole Board"). Plaintiffs seek injunctive relief. Defendants have conceded that "the policies that existed at the time Plaintiffs filed their Amended Class Action complaint did not satisfy [Due Process requirements]" and that Defendants have taken "substantial corrective measures to remedy these shortcomings." (Doc. #140, p. 1). Defendants consented to entry of summary judgment in Plaintiffs' favor and, the Court granted Plaintiffs'

Add. 1

motion for summary judgment. Defendants now argue the claims against them should be dismissed as moot and for failure to join an indispensable party.

## II.    DISCUSSION AND LEGAL STANDARDS

### A. Mootness

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a defendant may assert a "facial attack" or a "factual attack." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In this instance, Defendants assert a factual attack. Accordingly, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* at 730. "Article III, § 2, of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (internal citation omitted). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Id.* at 71–72. "A case might become moot [by a defendant's voluntary conduct] if subsequent events ma[k]e it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal citation and quotation marks omitted) (emphasis added). "Defendants who argue mootness due to changed circumstances based on their own behavior face a heavy burden." *Charleston Hous. Auth. v. U.S. Dep't. of Agric.*, 419 F.3d 729, 740 (8th Cir. 2005).

Defendants argue dismissal pursuant to Rule 12(b)(1) is appropriate because they have completed their revisions of policies and procedures governing parole revocation proceedings and brought them into compliance with constitutional mandates. Defendants argue their voluntary conduct renders the case moot. Plaintiffs argue Defendants' policy changes do not warrant dismissal because they fail to address or cure all constitutional deficiencies.

2

Add. 2

Defendants have failed to meet their heavy burden to establish it is "absolutely clear" that Defendants' current revised policies, procedures, and forms pass constitutional muster under *Morrissey v. Brewer*, 408 U.S. 471, 480–90 (1972) and *Gagnon v. Scarpelli*, 411 U.S. 778, 790–92 (1973). The record supports Plaintiffs' assertion, as detailed in their suggestions in opposition to the instant motion to dismiss and in oral argument, that Defendants' revisions do not address or remedy all constitutional deficiencies in the parole revocation process. The Court also notes that Defendants themselves implicitly acknowledge a live controversy exists regarding the right to state-funded counsel when constitutionally required, as discussed in more detail below. The Court finds a controversy as to the adequacy of remedy remains extant. The Court looks forward to the parties' presentation of evidence related to Defendants' voluntary revisions of their parole revocation polices and procedures at the upcoming evidentiary hearing regarding remedy.

### B. Failure to Join

Rule 12(b)(7) permits dismissal for failure to join a party under Rule 19. Under Rule 19(a)(1)(A), "[a] person . . . must be joined as a party if in that person's absence, the court cannot accord complete relief among existing parties." Defendants argue dismissal pursuant to Rule 12(b)(7) is appropriate because Plaintiffs failed to join the Missouri Public Defender Commission (the "Commission") under Rule 19. Defendants argue the Commission is an indispensable party because the authority to provide state-funded counsel for indigent probationers and parolees rests with the Commission. Plaintiffs argue the Commission is not an indispensable party because Defendants have the authority and are legally required to appoint counsel when alleged parole or probation violators are deemed eligible for state-funded counsel.

Case 2:17-cv-04149-SRB   Document 217   Filed 12/19/19   Page 3 of 5
Appellate Case: 20-3447   Page: 5   Date Filed: 02/16/2021 Entry ID: 5004705

"This is a civil rights class action [lawsuit] filed on behalf of men and women in custody, or under supervision, of the [MDOC] and who are at risk of imprisonment without adequate due process as a result of unconstitutional practices, procedures, and customs of both the MDOC and its [Parole Board] with respect to parole revocation proceedings." (Doc. #23, ¶ 1). In the Amended Class Action Complaint, Plaintiffs detailed various allegations of due process violations against Defendants, including that "Defendants systematically fail to screen parolees to determine whether they are eligible for counsel, at cost to the State, as required under *Gagnon v. Scarpelli*. They fail to appoint counsel to those parolees who do qualify." (Doc. #23, ¶ 156). In their motion for summary judgment, which Defendants did not oppose, Plaintiffs alleged Defendants were not screening for or providing State-funded counsel in compliance with *Gagnon*. (Doc. #130, ¶¶ 32–40). In response to Plaintiffs' motion for summary judgment, Defendants conceded liability for the alleged constitutional violations, stating that "the policies that existed at the time Plaintiffs filed their Amended Class Action complaint did not satisfy the requirements of *Gagnon v. Scarpelli* . . . and *Morrissey v. Brewer* . . . ." (Doc. #140, p. 1). Now, Defendants seem to argue they are not in fact liable for all the unconstitutional policy violations for which they formerly admitted liability.

Notwithstanding Defendants' apparent effort to withdraw their concession on liability, under *Gagnon*, "the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion *by the state authority charged with responsibility for administering the probation and parole system*." 411 U.S. at 790 (emphasis added). "[C]ertain cases . . . will require that the State provide at its expense counsel for indigent probationers or parolees." *Id.* Defendants cite no authority demonstrating that appointment of state-funded counsel is within the exclusive purview of the Commission.

4

Add. 4

Based on the foregoing, the Court finds under *Gagnon* that the Commission is not a necessary party to this lawsuit. *Gagnon* entrusts Defendants, as "the state authority charged with responsibility for administering the probation and parole system," with ensuring alleged parole violators obtain state-appointed counsel when due process so requires. *Id.* Should Defendants fail to fulfill their constitutional obligation of ensuring alleged probation or parole violators are represented by counsel when deemed constitutionally necessary according to the framework set forth in *Gagnon*, 411 U.S. at 790–97, the Court envisions various legal alternatives to illegally permitting alleged parole violators to proceed unrepresented. The Court can "accord complete relief among existing parties," Rule 19(a)(1)(A), by, for example, enjoining Defendants from proceeding with revocation hearings and reincarcerating indigent alleged parole or probation violators if such parolees or probationers are not represented by state-funded counsel when due process so requires. Accordingly, the Commission is not an indispensable party to this lawsuit.

### III.    CONCLUSION

It is hereby **ORDERED** that Defendants' Motion to Dismiss as Moot and for Failure to Join an Indispensable Party (Doc. #194) is DENIED.


**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH, JUDGE
UNITED STATES DISTRICT COURT

DATED: December 19, 2019

Add. 5

# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| STEPHANIE GASCA, et al., | ) | |
| | ) | |
| on behalf of themselves and all similarly | ) | |
| situated individuals, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-04149-SRB |
| | ) | |
| ANNE PRECYTHE, Director of the Missouri | ) | |
| Department of Corrections, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Add. 6

## INDEX

I.      BACKGROUND………………………………………………………………3

II.     DISCUSSION………………………………………………………………4

     A.     Revocation Proceedings………………………………………………5

          i.     Arrest and Preliminary Hearing (Stage 1)………………………6

               a.     Notice of Alleged Violations………………………………7

               b.     Notice of Rights……………………………………....11

                    1.     Timeliness of Notice……………………………14

                    2.     Content of Forms………………………………16

                    3.     Explanation of Rights…………………………...19

               c.     Pressure to Waive Preliminary and Revocation Hearings………23

          ii.     Revocation Hearing (Stage 2)……………………………………26

               a.     Disclosure of Evidence Against Parolee………………………27

                b.     Timeliness of Revocation Hearings……………………………28

                c.     Written Statement of Revocation Decisions……………………30

                d.     Hearings Conducted……………………………………………33

     B.     Screening for and Appointment of Counsel…………………………………34

          i.     Screening for Eligibility………………………………………36

                a.     Screening Instrument……………………………………36

                b.     Screening Process…………………………………………40

          ii.     Determination of Qualification for Counsel……………………44

          iii.     Denial of Counsel………………………………………………45

          iv.     Appointment of Counsel………………………………………47

     C.     Appeal Process………………………………………………………49

          i.     Availability of Appeal Form……………………………………50

          ii.     Explanation of Appeal Decision………………………………...51

III.     CONCLUSION……………………………………………………………52

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 2 of 55
Appellate Case: 20-3447   Page: 9   Date Filed: 02/16/2021 Entry ID: 5004705

## I.     BACKGROUND

In *Morrissey v. Brewer*, 408 U.S. 471 (1972) and *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), the United States Supreme Court outlined the minimum due process requirements for parole revocation proceedings and mandated appointment of state-funded counsel at parole revocation hearings in certain cases.  Nearly fifty years later, Defendants the Missouri Department of Corrections ("MDOC"), its Division of Probation and Parole, and the Missouri Board of Probation and Parole ("Parole Board"), in response to the instant lawsuit challenging the constitutionality of their parole revocation policies, procedures, and practices, conceded that "the policies that existed at the time Plaintiffs[1] filed their Amended Class Action complaint[2] did not satisfy the requirements of [*Morrissey* and *Gagnon*]" but contended that they had taken "substantial corrective measures to remedy these shortcomings."  (Doc. #140, p. 1).[3] Defendants consented to entry of summary judgment in Plaintiffs' favor as to liability on Plaintiffs' sole claim for due process violations under 42 U.S.C. § 1983.  In turn, the Court, finding "no genuine dispute as to any material fact" and that Plaintiffs were "entitled to judgment as a matter of law," entered summary judgment in Plaintiffs' favor.[4]  Fed. R. Civ. P. 56(a).

While the merits of the case have already been ruled, the question remains regarding whether Defendants' revised policies and procedures satisfy due process requirements.  On June 10–11, 2020, the Court conducted an evidentiary hearing to examine the current standing of Defendants' parole revocation process.  Having reviewed the evidence presented at the hearing

---

[1] The plaintiff class ("Plaintiffs") includes all adult parolees in the state of Missouri who currently face, or who in the future will face, parole revocation proceedings.

[2] Plaintiffs seek injunctive and declaratory relief and request that the Court retain jurisdiction of this case until Defendants bring their policies, procedures, and practices into constitutional compliance.

[3] All page numbers refer to the pagination automatically generated by CM/ECF.

[4] The motion for summary judgment and suggestions in support containing the undisputed facts, deemed admitted by Defendants pursuant to Local Rule 56.1(b)(1), are incorporated by reference herein.

3

Add. 8

and in the parties' briefing on the matter, the Court finds constitutional deficiencies in the current parole revocation process remain and issues this Order to remedy such due process violations.

## II.    DISCUSSION

*Morrissey* and *Gagnon* control the Court's analysis.  Although parole revocation "is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations," *Morrissey* held that certain minimum due process procedures are required for parole revocation proceedings.  408 U.S. at 480 (citation omitted).  This is because parole revocation deprives an individual of "conditional liberty," which "is valuable and must be seen as within the protection of the Fourteenth Amendment." *Id.* at 482.  Termination of conditional liberty, therefore, "calls for some orderly process, however informal."  *Id.*  The *Morrissey* Court identified "two important stages in the typical process of parole revocation."  *Id.* at 485.  "The first stage occurs when the parolee is arrested and detained[.]"  *Id.*  "The second occurs when parole is formally revoked."  *Id.*

In 1973, a year after *Morrissey*, the Supreme Court mandated the appointment of state-funded counsel at parole revocation hearings in certain cases.  Recognizing that "there are critical differences between criminal trials and probation or parole revocation hearings," the *Gagnon* Court found that "[t]he need for counsel at revocation hearings derives, not from the invariable attributes of those hearings, but rather from the peculiarities of particular cases."  411 U.S. at 788-89.  "[T]he decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system."  *Id.* at 790.  "Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in

4

Add. 9

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 4 of 55
Appellate Case: 20-3447   Page: 11   Date Filed: 02/16/2021 Entry ID: 5004705

most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees." *Id.*

The Supreme Court has noted it has not and could not "write a code of procedure" for parole revocation hearings. *Morrissey*, 408 U.S. at 488. Instead, "[m]ost States have done so by legislation, *others by judicial decision* usually on due process grounds." *Id.* (footnote omitted) (emphasis added). Thus, what follows is the Court's careful examination of each of the current policies, procedures, and practices at issue, considered individually and as components of the parole revocation process as a whole, and corresponding determinations as to whether due process is being met or violated. The Court will endeavor to identify mandated relief to remedy due process violations and suggested changes to avoid prolonged litigation.[5] The Court will conduct a status hearing with the parties following the issuance of this Order to discuss effectuating the remedies set forth herein.

The Court will first address Defendants' policies, procedures, and practices that correspond with each of the two stages of parole revocation proceedings before turning to the provision of state-funded counsel.[6] The Court will address only the aspects of the parole revocation process that are at issue at this juncture of the case.

### A. Revocation Proceedings

The Court recognizes that from the time Plaintiffs initiated this case in 2017 to present, Defendants have made significant changes to their parole revocation policies and procedures.

---

[5] In some instances, the Court finds that individual provisions of policies or components of forms may not violate due process in and of themselves, but present concerns and contribute to constitutional shortcomings in Defendants' parole revocation process as a whole. In those instances, the Court provides suggested revisions to bring Defendants closer to the administration of minimum due process to parolees and to avoid prolonged litigation.
[6] While this Order generally analyzes the components of revocation proceedings in chronological order, the Court will occasionally depart from this structure for purposes of clarity and succinctness.

The Court applauds the significant changes to the system, but notes these issues involve almost 50-year-old Supreme Court precedent. The Court deduces from the record as a whole that Defendants' revocation proceedings are designed to track the following basic structure. A parolee is arrested and detained. Within five to ten days of detention, the parolee is given an initial violation interview with a parole officer to discuss the alleged violations and the parolee's rights during the revocation process. At the initial interview, the parole officer gives the parolee the option to request or waive screening for eligibility for state-funded counsel and to request or waive a preliminary hearing. After the preliminary hearing is conducted or waived, if probable cause that the parolee committed the alleged violation(s) is determined to exist, a parole officer conducts another violation interview with the parolee in preparation for the revocation hearing. The parolee is reminded of his rights during the revocation process, given the option to request or waive a revocation hearing, and given the option to request or waive the right to be screened for state-funded counsel eligibility. A revocation hearing is waived or conducted, and determinations of whether the parolee violated conditions of his parole and whether revocation is warranted are made. Parole is then either revoked or the parolee is released on parole. The parolee receives notice of the decision and in some cases is given the option to appeal.

### i. Arrest and Preliminary Hearing (Stage 1)

Regarding the first stage of revocation proceedings, due process requires "that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." *Morrissey*, 408 U.S. at 485. The purpose of this "preliminary hearing" is to "determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Id.* "[T]he

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 6 of 55
Appellate Case: 20-3447   Page: 13   Date Filed: 02/16/2021 Entry ID: 5004705

determination that reasonable ground exists for revocation of parole should be made by someone not directly involved in the case." *Id.* "[T]he parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation." *Id.* at 486-87. "The notice should state what parole violations have been alleged." *Id.* at 487.

"At the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer." *Id.* The parolee may question adverse witnesses at the discretion of the hearing officer. *Id.* "The hearing officer shall have the duty of making a summary, or digest, of what occurs at the hearing in terms of the responses of the parolee and the substance of the documents or evidence given in support of parole revocation and of the parolee's position." *Id.* "[T]he decision maker should state the reasons for his determination and indicate the evidence he relied on." *Id.* (citation and quotation marks omitted). With these United States Supreme Court mandates in mind, the Court turns to Defendants' policies, procedures, and practices that govern the preliminary hearing stage of the revocation proceedings.

### a. Notice of Alleged Violations

Defendants' Procedure P3-8.2 requires parole officers to interview parolees who have allegedly violated parole "within 10 business days of becoming aware of an alleged violation(s)" and in some cases within five business days.[7] (Doc. #194-2, pp. 2-3). Pursuant to the same procedure, at the violation interview, the parole officer is to advise the parolee of the specific violations and give the parolee an opportunity to respond to each violation. (Doc.

---

[7] For example, when the parolee is part of the Violator Unit, Procedure P3.8-7 provides that "[t]he Violator Unit shall be responsible for completing a violation interview and offering the preliminary hearing within five business days of the [parolee's] arrest." (Doc. #194-7, pp. 2, 5).

7

Add. 12

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 7 of 55
Appellate Case: 20-3447   Page: 14   Date Filed: 02/16/2021 Entry ID: 5004705

#194-2, p. 4).  Pursuant to Procedure P3-9.1, "within five business days of becoming aware of their incarceration on alleged violations," the parole officer is also required to offer the parolee a preliminary hearing.  (Doc. #287-1, p. 6).

According to Defendants, parolees also "are . . . to be provided with a copy of the violation report setting out their alleged violations at their violation interviews."  (Doc. #194, p. 8).  At least one of their procedures provides as much.  Procedure P3-9.1 requires that parolees be provided with a copy of the violation report—which details the particulars of the violation(s)—at their violation interviews.  (Doc. #287-1, p. 5).  Procedure P3-8.1 provides that an initial violation report should be provided to parolees "within 10 business days of substantiating the violation."  (Doc. #194-1, p. 8).  This same procedure also requires that any supplemental violation report be provided to parolees "within 10 business days of receiving additional information."  (Doc. #194-1, p. 9).

Plaintiffs contend that Defendants' policy that "an alleged parole violator must receive a [] violation report [] outlining the alleged violations . . . within ten days of substantiating the violation . . . is not being consistently implemented in practice" and, therefore, violates due process.  (Doc. #316, p. 12).  Plaintiffs argue that, in practice, some parolees do not receive their violation reports until the revocation process is well under way, sometimes after they have already waived their constitutional rights.  Defendants respond that their procedures governing notice to parolees of their alleged violations satisfy due process, but they do not address in their briefing the concern that they fail to consistently comply with such policies.

The Court finds that the relevant policies, as written, satisfy *Morrissey*'s minimum due process requirements that parolees be given notice of their alleged violations and a preliminary hearing "as promptly as convenient after arrest while information is fresh and sources are

8

available." 408 U.S. at 485. However, Defendants' policies governing the timeliness of the initial interview and those governing the timeframe in which parolees must be provided with the violation report are inconsistent. For example, Procedure P3-8.1 states that parolees are to receive their violation reports within ten days of substantiating the violation. But Procedure P3-9.1 requires that parolees be provided with a copy of the violation report at the violation interviews, which, depending on circumstances, may be required to be held within five—and not ten—days.

*Suggested Change*

- Defendants should amend their policies to clarify that in all cases, parolees must receive their violation report at their initial violation interviews, regardless of whether the five or ten-day timeframe applies.[8]

The Court also finds that the relevant policies governing notice of alleged violations are not consistently implemented. Plaintiffs' expert, Mr. David Muhammad, "identified inadequate notice as one of the key constitutional deficiencies remaining in Defendants' parole revocation process." (Doc. #316, p. 12; Tr.[9] 91:15-18). All five class members who testified at the evidentiary hearing indicated they did not receive their violation report within the ten-day timeframe required by MDOC policy. (Tr. 148:22-25, 149:1-11, 186:1-18, 214:7-25, 215:1-16, 230:18-22, 247:18-25, 248:1-6). Four out of the five indicated they did not receive their violation report at their initial violation interview. (Tr. 148:22-25, 149:1-11, 186:1-18, 214:7-25, 215:1-16, 230:18-22). One class member testified she saw her violation report for the first time when she received her revocation decision. (Tr. 230:5-22). Another indicated he did not

---

[8] The Court observes similar inconsistences throughout Defendants' policies in other instances but is limited to critiquing only those inconsistencies at issue in this case. Defendants are encouraged to ensure all language is clear, consistent, and accurate across all policies and forms to ensure parolees' due process rights are being met.
[9] "Tr." denotes citation to the electronic transcript of the evidentiary hearing, located at Doc. #313 and Doc. #314.

9

Add. 14

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 9 of 55
Appellate Case: 20-3447   Page: 16   Date Filed: 02/16/2021 Entry ID: 5004705

receive notice of his violations until a month after his arrest and after he had been encouraged to waive his revocation hearing. (Tr. 148:22-25, 149:1-11). A third class member asserted that he did not receive his violation report until he had been in custody for over four months, even though he met with a parole officer soon after his arrest. (Tr. 214:7-25, 215:1-16).

Similarly, other parolees' declarations indicate they never received their violation reports, or received untimely, incomplete, or inaccurate violation reports at their initial violation interviews. (Doc. #287-10, ¶ 5; Doc. #287-12, ¶ 13; Doc. #287-13, ¶¶ 7, 19; Doc. #287-20, ¶ 9; Doc. #287-21, ¶ 19; Doc. #287-22, ¶ 9; Doc. #287-24, ¶¶ 7, 17). In other instances, parolees never received the relevant violation report at all. (Doc. #316, p. 16; Doc. #287-18, ¶ 20). This evidence demonstrates parolees are making determinations as to whether they would like to request or waive hearings and the right to be screened for state-funded counsel, as discussed later in this Order, before being made aware of the alleged parole violations.

Thus, even though this Court finds Defendants' policies governing notice to parolees of their alleged violations satisfy due process, Defendants' failure to adhere to such policies does not.

*Mandated Remedy*

- Defendants are ordered to comply with the policies governing notice to parolees of their alleged violations and keep documentation of their compliance.

*Suggested Change*

- The Court encourages Defendants to ensure all forms, reports, and other relevant documents include space to state the date on which the document was provided or administered.

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 10 of 55
Appellate Case: 20-3447   Page: 17   Date Filed: 02/16/2021 Entry ID: 5004705

### b. Notice of Rights

Pursuant to Procedure P3-9.1, at the initial interview, parolees are to be provided a copy of the Notice of Rights During the Revocation Process form ("Notice of Rights form") (Doc. #194-8, p. 4).[10]

You have the right to a probable cause hearing in front of an officer who will not be your Probation and Parole Officer or your Probation and Parole Officer's immediate supervisor. This is an informal proceeding and is not your final revocation hearing. The hearing officer acts as a neutral fact-finder. The hearing officer merely determines if there is probable cause to believe you violated the terms of your supervision. If probable cause is found, the Court or Parole Board may schedule a revocation hearing.

During the preliminary hearing, you have the right to:

- Have counsel represent you, or be appointed counsel in some cases, as explained above
- Remain silent regarding any potential criminal charges. You do not have to admit to any wrongdoing and you have the right to refuse to answer any questions about your alleged violation(s)
- Tell your side of the story, if you think it will help your case
- Present witnesses, in person, or by phone through coordination with the Parole Officer.
- Ask questions of anyone who testifies at the hearing, unless the hearing officer specifically finds there is good cause for not allowing you to do so
- Present documents related to the alleged violation

If you are on probation, the judge will control when and how your revocation hearing takes place.

If you are on parole, you have the same rights at the revocation hearing that you have at the preliminary hearing. In addition, after the Parole Board makes a decision after the revocation hearing, you will receive written notice to include the evidence the Parole Board relied on in making its decision.

Procedure P3-8.7 requires the parole officer to explain the Notice of Rights form, which describes the revocation proceedings process, advises the parolee of the right to counsel, and discusses the right to preliminary and revocation hearings. (Doc. #194-7, p. 5).

Specifically, the Notice of Rights form explains that parolees have a right to a "probable cause hearing" and that the purpose of such a hearing is to "merely determine[] if there is probable cause to believe [the parolee] violated the terms of . . . supervision." (Doc. #194-3, p. 2). It states that the "preliminary hearing will occur within 10 business days of the initial

---

[10] The Notice of Rights Form is attached to this Order as Exhibit A.

Add. 16

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 11 of 55
Appellate Case: 20-3447   Page: 18   Date Filed: 02/16/2021   Entry ID: 5004705

interview." (Doc. #194-3, p. 3). It also explains that the hearing officer will be a neutral party and details the rights parolees have at the preliminary hearing. Further, the form provides that parolees have the same rights at the revocation hearing that they are entitled to at the preliminary hearing.

> You may have a right to counsel, if you desire counsel, you are free to obtain your own attorney to represent you. If you are on Missouri probation and cannot afford an attorney, you may tell the judge you would like counsel and the court will determine your eligibility. If you are on Missouri parole, conditional release or an Interstate probation or parole case and cannot afford counsel, you may tell your Probation and Parole Officer that you would like counsel and they will determine whether you are eligible. If you are on Missouri parole, conditional release or an Interstate probation or parole case and your request for counsel is denied, you will receive a written explanation for the denial.

The Notice of Rights form explains that if parolees cannot afford an attorney, they may tell their parole officer that they would like counsel and the parole officer will determine whether the parolee is eligible. The form also provides space for the parolee and a "witness" to sign. (Doc. #194-3, p. 3).

In addition to the Notice of Rights form, the Request for or Waiver of Preliminary Hearing form ("Preliminary Hearing form"),[11] which is to be completed at the initial violation interview pursuant to Procedure P3-9.1, provides a space for the parole officer to list the violation(s) charged against the parolee and boxes to fill out the date, time, and location of the preliminary hearing, as well as the hearing officer. (Doc. #287-1, p. 6).

---

[11] The Preliminary Hearing form is attached to this Order as Exhibit B.

12

Add. 17

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 12 of 55
Appellate Case: 20-3447   Page: 19   Date Filed: 02/16/2021 Entry ID: 5004705

NOTICE OF RIGHT TO COUNSEL AT A PRELIMINARY HEARING

You have a right to a preliminary hearing. You may be represented at your hearing by counsel of your choice, selected and paid for by you. You will receive written notice of the hearing and it is up to you to ensure your counsel has the information and is able to appear and represent you.

If you are on Probation for a Missouri case and cannot afford counsel, you may tell the judge you would like counsel and the court will determine your eligibility.

If you are on Missouri Parole, Conditional release or an Interstate Probation or Parole case, and cannot afford counsel, you may tell your Probation and Parole Officer that you would like counsel and they will screen you for eligibility. If your request for counsel is denied, you will receive a written explanation for the denial.

You may also decide to waive your right to counsel.

**I will provide my own counsel_____client's initials,**

**Request I be screened for eligibility to have counsel represent me at the preliminary hearing_____client's initials,** *OR*

**Request to waive right to counsel_____client's initials**

CLIENT'S REQUEST/WAIVER OF PRELIMINARY HEARING:

Having been fully informed and having full knowledge of these rights in the aforementioned section, I do hereby,

☐ REQUEST a preliminary hearing _____Client's Initials

☐ WAIVE a preliminary hearing_____Client's Initials

INTERSTATE CASES: Clients must sign a written admission in order to waive their hearing.

INTERSTATE CLIENT STATEMENT:

I,_____admit to violating all or some of the below listed conditions of my supervision by:

VIOLATION(S)
The charges brought against you consist of the following violation(s) of the conditions of your probation, parole or conditional release:

CLIENT SIGNATURE                    DATE          WITNESS SIGNATURE                    DATE

The Preliminary Hearing form also permits parolees to request or waive a preliminary hearing and request or waive the right to be screened for counsel or elect to provide their own counsel.

The Request for or Waiver of Revocation Hearing form ("Revocation Hearing form"),[12] which is also to be completed at a violation interview, similarly includes boxes to fill out the date, time, and location of the revocation hearing.

---

[12] The Revocation Hearing form is attached to this Order as Exhibit C.

13

Add. 18

NOTICE OF RIGHT TO COUNSEL AT REVOCATION HEARING

You have a right to a revocation hearing and your parole/conditional release may be revoked at your hearing. You may be represented at your hearing by counsel of your choice, selected and paid for by you. You will receive written notice of the hearing and it is up to you to ensure your counsel has the information and is able to appear and represent you. If you cannot afford counsel, you may tell your Parole Officer that you would like counsel and they will screen you for eligibility. If your request for counsel is denied, you will receive a written explanation for the denial. You may also decide to waive your right to counsel.

Request I be screened for eligibility to have counsel represent me at the revocation hearing _____ Initials     OR

Request to waive right to counsel _____ Initials

CLIENT'S REQUEST/WAIVER OF REVOCATION HEARING:

Having been fully informed and having full knowledge of these rights in the aforementioned section, I do hereby,

☐ WAIVE a revocation hearing _____ Initials

☐ REQUEST a revocation hearing _____ Initials

By Signing this form, I agree that I have been provided the following:

A copy of the Notice of Rights to Revocation Process form,

Any Violation Reports pertaining to the cited violations, and

Preliminary Hearing was:

☐ Waived

☐ Held (date:_____)

| CLIENT SIGNATURE | DATE | WITNESS SIGNATURE | DATE |

The Revocation Hearing form permits parolees to request or waive a revocation hearing and request or waive the right to be screened for counsel. The Revocation Hearing form does not, however, include the language allowing parolees to elect to provide their own counsel. Nor does it contain a space for the parole officer to list the violation(s) alleged against the parolee. Pursuant to Procedure P3-8.2, the Notice of Rights and hearing forms—like all signed forms—are required to be kept in the parolee's file. (Doc. #194-2, p. 4).

### 1. Timeliness of Notice

Plaintiffs argue that "Defendants have improved their process for notifying parolees of their rights, at least on paper. But implementation of this process is problematic because it is

'very inconsistent'" and does not satisfy due process concerns. (Doc. #316, p. 20; Tr. 45:12-15). Plaintiffs specifically complain that the Notice of Rights form is not always provided in a timely manner. Defendants do not address Plaintiffs' argument that Defendants fail to consistently provide timely notice of rights but argue instead that their policies are constitutional because they require timely notice.

The Court agrees that Defendants' policy governing the timely provision of the Notice of Rights form to parolees satisfies due process requirements. But the evidence shows that the policy is not being applied in practice. Many parolees testified that they did not receive their Notice of Rights form during their initial interview as required by Defendants' policy and waited weeks to months to receive it, or, in some cases, never received it at all. (Tr. 145:17-22, 146:8-9, 156:20-22, 185:1-25, 186:1-3, 215:13-19, 230:10-24; Doc. #287-10, ¶ 6; Doc. #287-11, ¶ 5; Doc. #287-12, ¶ 9; Doc. #287-24, ¶ 8). Mr. Muhammad testified to the same. (Tr. 45:12-20, 46:2-8, 69:25, 70:1-4, 137:11-16).

Failure to provide the Notice of Rights form in a timely manner or at all pursuant to Defendants' policy and as required by *Morrissey* constitutes a violation of due process. 408 U.S. at 485-87 (Parolees must be given the required notice in advance of a preliminary hearing "as promptly as convenient after arrest while information is fresh and sources are available.").

*Mandated Remedy*

- Defendants are ordered to comply with their policy governing the timely provision of the Notice of Rights form to parolees and keep documentation of their compliance.

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 15 of 55
Appellate Case: 20-3447   Page: 22   Date Filed: 02/16/2021 Entry ID: 5004705

## 2. Content of Forms

Plaintiffs next complain that the Notice of Rights form, while an improvement from the previous mechanism used, provides insufficient information and "still includes language that is unnecessarily confusing." (Doc. #316, p. 20; Tr. 67:19-21). Plaintiffs note that "the form refers both to a preliminary hearing and to a probable cause hearing, but never connects the dots for a parolee by explaining that these are the same thing." (Doc. #316, p. 20; Tr. 68:7-10). Plaintiffs argue that not only is the right to be screened for a free attorney buried in dense language, but the criteria for qualifying for this right is absent from the form altogether. Plaintiffs also argue that the Notice of Rights form does not adequately describe the preliminary or revocation hearing processes themselves. Defendants respond by arguing that the Notice of Rights form sufficiently notifies parolees of their rights during revocation proceedings.

The Court notes initially that the Notice of Rights form must be analyzed together with the Preliminary Hearing form and the Revocation Hearing form because all three forms are administered at violation interviews and contribute to providing due process to parolees. In view of that, the Court finds that the forms for the most part satisfy due process. However, certain portions of the forms violate minimum due process requirements or are inconsistent with Defendants' policies, and the Court mandates amendments to the forms in those cases. The Court further finds that other provisions may not violate due process when considered as distinct components, but, when considered as a whole, they contribute to Defendants' failure to provide due process to parolees in the parole revocation process. In those instances, the Court suggests Defendants revise the identified forms to bring Defendants closer to the administration of minimum due process and avoid prolonged litigation. The Court addresses both types of

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 16 of 55
Appellate Case: 20-3447   Page: 23   Date Filed: 02/16/2021 Entry ID: 5004705

concerns with the identified forms, beginning with mandated revisions and then turning to suggested revisions.

*Mandated Remedies*

- Defendants are ordered to amend the Revocation Hearing form to add a space for the alleged violations to be listed, just as the Preliminary Hearing form provides such space. *Morrissey* requires "written notice of the claimed violations of parole" in connection with a revocation hearing. 408 U.S. at 489.

- Defendants are ordered to amend the Revocation Hearing form to include an option for parolees to provide their own counsel at revocation hearings, as required by Defendants' Procedure P6-8.1. (Doc. #287-5, p. 9)

In addition to these mandated revisions, Defendants are strongly encouraged to incorporate the following additional revisions to the identified forms to ensure parole revocation proceedings, as a whole, comply with due process requirements and to avoid protracted litigation.

*Suggested Changes*

- Parolees should be notified of the conditional right to "*state-funded*" counsel, or counsel that is free of cost to parolees, before they decide whether to provide their own counsel, request to be screened for counsel, or waive the right to counsel. *Gagnon*, 411 U.S. at 790. Currently, the Notice of Rights form fails to make clear that if eligible, parolees will be appointed counsel at no cost to parolees. This should be made clear on the Notice of Rights form.

- Defendants should consider defining the criteria that qualify a parolee for state-funded counsel on the Notice of Rights form. While the screening for and

Add. 22

appointment of state-funded counsel is addressed in detail later in this Order, this criteria for qualification should be contained on the Notice of Rights form in order for parolees to make an informed decision to either request to be screened for counsel or waive that right.

- As Plaintiffs note, the Notice of Rights form refers to the preliminary hearing as a probable cause hearing, without informing the parolee that they are the same. Defendants should either clarify that the preliminary hearing and probable cause hearing are synonymous or omit the term "probable cause hearing" from the Notice of Rights form.

- The Notice of Rights form also informs parolees that even if they waive their preliminary hearing, they "*will* still have a revocation hearing before the court or Parole Board." (Doc. #194-3, p. 3) (emphasis added). This is inaccurate since parolees have the option to waive the revocation hearing. Correcting this language to indicate parolees "*may*" have a revocation hearing if they so choose will help to ensure parolees have an accurate understanding of the revocation process.

- The Notice of Rights form incorrectly advises parolees that after the initial arrest, they will receive a copy of their alleged violations, "called the Notice of Rights," when, in fact, the alleged violations are contained in "violation reports." Defendants should fix this mistake and utilize the correct terminology.

- The Notice of Rights form provides that parolees should meet with a parole officer within five business days after the parolees' arrest; however, Defendants' policies in some instances call for a violation interview within ten business days.

18

Add. 23

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 18 of 55
Appellate Case: 20-3447   Page: 25   Date Filed: 02/16/2021 Entry ID: 5004705

Defendants should ensure this language conveys accurate expectations to

parolees and accurately reflects the timeframe within which the initial violation

interview with a parole officer will take place (five to ten business days after the

parolee's arrest, according to Defendants' policies).

Although the Court likely did not catch every inconsistency or inaccuracy within the

forms, the Court encourages Defendants to keep terminology consistent and ensure the forms

contain an accurate description of the revocation process to properly inform parolees of their

rights and guarantee the administration of due process.[13]

### 3. Explanation of Rights

Plaintiffs also argue that many parolees do not understand their rights due to higher rates

of illiteracy and mental illness among parolees. Plaintiffs argue that the Notice of Rights form

is only read to parolees if they request it, and, in at least one instance, a parolee asked for the

form to be read to him and was denied. Plaintiffs argue that parole officers should be required

to ask all parolees if they want the Notice of Rights form read to them. Defendants argue that

their policies governing provision of the Notice of Rights form to parolees satisfy due process

requirements.

Defendants' procedures provide that the parolee must be provided an explanation of the

Notice of Rights, Preliminary Hearing, and Revocation Hearing forms. Procedure P3-8.7 states

---

[13] Defendants should also consider the use of headings on the Notice of Rights form to differentiate between the preliminary hearing and the revocation hearing and ensure parolees understand they have a right to both. Defendants should also consider organizing the Notice of Rights form in a more accessible way. For example, Defendants could first describe the preliminary hearing and next describe the revocation hearing. Then, instead of couching the section describing the right to counsel in between the hearing descriptions, Defendants could move it to a section below the hearing descriptions. The Notice of Rights form also states, "If you want to have witness testimony at your preliminary hearing, you must include your witnesses' names and contact information on a separate piece of paper and give it to the PO." (Doc. #194-3, p. 3). Defendants should consider making these instructions more precise, to include the manner in which to submit such information to the parole officer. The Court reiterates that implementing these changes will ensure parolees have an accurate understanding of the parole revocation process and enable Defendants to carry out due process, while avoiding continued legal challenges.

Add. 24

that "The Violator Unit *shall explain* the Notice of Rights During the Revocation Process form .

. . [and] read the Notice of Right to Counsel section on the Request for or Waiver of Preliminary

Hearing form . . . to the [parolee]." (Doc. #194-7, p. 5) (emphasis added). Procedure P3-8.2

states that "the [parolee] shall be provided a copy of the . . . Notice of Rights During the

Revocation Process form . . . *for explanation* and signatures." (Doc. #194-2, p. 4) (emphasis

added). Procedure P3-9.1 further states that the parole officer "*shall explain* the purpose of the

violation interview[.]" (Doc. #287-1, p. 5) (emphasis added). Procedure P3-9.1 also states that

"The Notice of Right to Counsel section on the Request for or Waiver of Preliminary Hearing

form [] shall be read to the [parolee]." (Doc. #287-1, p. 6). Procedure P6-8.1 instructs parole

officers to read "The Notice of Counsel section on the Request for or Waiver of Revocation

Hearing form" to parolees. (Doc. #287-5, p. 9). Language at the top of the Notice of Rights

forms states:

> **YOU MAY REQUEST THAT THE DEPARTMENT OF CORRECTIONS REPRESENTATIVE READ THIS DOCUMENT TO YOU**

(Doc. #287-2, p. 3).[14]

Defendants explicitly acknowledge that their policies require parole officers to explain

the revocation process and the parolees' rights therein so that parolees can make an informed

decision to either request or waive their preliminary and revocation hearings. (Doc. #194, pp.

11-12) ("These policies establish that the parole revocation process is explained to alleged

parole violators and they are informed of their rights during this process, including the right to

counsel (and appointed counsel if eligible) before being asked to decide whether they wish to

waive either the preliminary hearing, the final hearing, or both."). Put simply, these policies

---

[14] The Court notes that if an individual is illiterate, placing an item in all caps and bold does not change the individual's ability to read or understand the language.

Add. 25

reflect the importance of explaining the revocation process and, where necessary, reading the forms to parolees to ensure they have notice of their rights and the purpose of the revocation proceedings. *Morrissey*, 408 U.S. at 486-87.

Evidence indicates that parole officers are not complying with these written procedures. In November of 2019, a survey was sent to all parolees who went through the revocation process after the grant of summary judgment in this case. Of the 470 class members who responded, only 12-15% of surveyed parolees reported being informed of their right to counsel. (Doc. #316, pp. 30, 35; Tr. 61:18-19). "Of the fifteen Class Members who submitted declarations to this Court, as well as the five witnesses who testified before this Court, none clearly understood that they may have been entitled to be represented by a free attorney" or what would qualify them for such representation. (Doc. #316, p. 22). Some indicated they were never told they might have the right to a state-funded attorney. (Doc. #287-10, ¶ 9; Doc. #287-11, ¶ 6; Doc. #287-12, ¶ 10; Doc. #287-13, ¶¶ 9, 14; Doc. #287-14, ¶¶ 11, 19; Doc. #287-15, ¶¶ 13, 23; Doc. #287-16, ¶ 18; Doc. #287-17, ¶ 8; Doc. #287-18, ¶ 13; Doc. #287-19, ¶ 10; Tr. 146:25, 147:1-2, 153:19-25, 154:1-5, 157:22-25, 264:22-25, 265:1-12, 228:2-4, 228:22-25, 229:1-2).

Parolees described their meetings with parole staff as "real quick" or "real fast" and described the parole officer's explanation of the preliminary hearing as "very vague." (Tr. 226:21, 252:11-13, 189:8-18). One parolee indicated he was told "nothing about the rights" he may have at a preliminary hearing. (Tr. 146:19-24). Another testified that "[n]othing about the process was explained to me, including what rights I may have." (Doc. #287-20, ¶¶ 8, 16). Another testified that "the parole officer did not explain any rights that I may have" and "I also do not recall waiving any hearings." (Doc. #287-11, ¶ 5). One parolee indicated that his parole

21

Add. 26

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 21 of 55
Appellate Case: 20-3447   Page: 28   Date Filed: 02/16/2021 Entry ID: 5004705

officer did not tell him what the purpose of the preliminary hearing was and that his violation interview left him with the impression that a revocation hearing did not pertain to him. (Tr. 250:23-25, 253:12-15). Another parolee asserted that she was told "nothing really" about the revocation hearing. (Tr. 229:18-19).

Moreover, some parolees indicated their parole officers gave them the Notice of Rights form but they "did not really discuss it," much less ask if the parolees wanted the form read to them or if they had any questions. (Doc. #287-15, ¶ 25; Doc. #287-20, ¶ 8). Others indicated they did not recall receiving the Notice of Rights form but, if they did, they did not remember the parole officer explaining it to them. (Doc. #287-11, ¶ 5; Doc. #287-17, ¶ 32; Doc. #287-18, ¶12; Doc. #287-19, ¶ 8). Mr. Muhammad opined that the evidence demonstrates "a general lack of knowledge and understanding of the revocation process and the purpose of the hearings within that process." (Doc. #316, p. 26; Tr. 65:12-19). This Court agrees.

Accordingly, even though the Court finds that Defendants' policies requiring parole officers to explain the parole revocation process and parolees' rights therein conform to due process requirements, failure to abide by such policies render them meaningless.

*Mandated Remedies*

- Defendants are ordered to comply with their policies requiring parole officers to explain the content of the Notice of Rights, Preliminary Hearing, and Revocation Hearing forms and the parole revocation process to parolees at the violation interviews.

- Defendants are further ordered to orally offer to read the Notice of Rights form to parolees and to amend their policies to reflect this requirement.

22

Add. 27

### c. Pressure to Waive Preliminary and Revocation Hearings

Plaintiffs argue that parolees are often pressured to waive their rights to preliminary and revocation hearings. Defendants respond that all parolees who testified at the evidentiary hearing knowingly and voluntarily waived their rights to a hearing, which they argue is evidenced by the fact that they signed the forms indicating they waived.

As discussed, *Morrissey* requires that a parolee be given notice that the preliminary and revocation hearings will take place and the purpose of those hearings. 408 U.S. at 487-87. In other words, *Morrissey* makes clear that the default is to conduct preliminary and revocation hearings and that parolees are constitutionally entitled to such hearings. *See Gagnon*, 411 U.S. at 786 ("*Morrissey* mandated preliminary and final revocation hearings."); *Morrissey*, 408 U.S. at 485 ("[D]ue process would seem to require" a preliminary hearing to determine whether probable cause exists); *id.* at 487-88 ("There must also be an opportunity for a hearing, if it is desired by the parolee, prior to the final decision on revocation by the parole authority.").

Nevertheless, a parolee may waive his or her right to these hearings. "There is a presumption against the waiver of constitutional rights." *Brookhart v. Janis*, 384 U.S. 1, 4 (1966). All parties to this action agree that "'to be effective a waiver must be knowingly and voluntarily made.'" (Doc. #318, p. 6) (quoting *United States v. Taylor*, 747 F.3d 516, 519 (8th Cir. 2014)); (Doc. #316, p. 25); *see also Brookhart*, 384 U.S. at 4 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) ("[F]or a waiver to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.'")). Defendants acknowledge that "in determining whether a waiver is knowing and voluntary . . . the totality of the circumstances is to be examined, with particular attention paid to the defendant's understanding of the right to be waived and how it might be waived." (Doc. #318,

23

Add. 28

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 23 of 55
Appellate Case: 20-3447   Page: 30   Date Filed: 02/16/2021   Entry ID: 5004705

p. 7) (citing *United States v. Jones*, 770 F.3d 710, 712 (8th Cir. 2014) (examining effective waiver in the context of federal parole revocation process)).

The evidence shows that parolees are pressured to waive their right to hearings. Eighty-three percent of parolee survey respondents "reported being encouraged to waive their preliminary hearing." (Doc. #316, p. 30; Tr. 62:4-19, 67:16-25, 68:1-25, 69:1-24). Only 45% of survey respondents were offered a revocation hearing, and 58% of those offered indicated they were encouraged to waive it. (Doc. #287-9, p. 4). Testimony at the evidentiary hearing reinforces the survey's results. Even after Defendants revised their policies, the rate of preliminary hearings conducted is 2.4% and the rate of revocation hearings conducted is 2.2%. (Doc. #316, p. 25; Tr. 60:1-15; Doc. #287-9, p. 4). According to Mr. Muhammad, this "damning data"—which goes unaddressed by Defendants—"shows that this [] basic right of having a hearing is happening very, very seldomly." (Tr. 60:3-15). The evidence indicates this low rate is due, at least in part, to pressure on parolees to waive their hearings.

Indeed, Mr. Muhammad opined that there is "significant pressure" placed on parolees to waive their hearings. (Tr. 65:8-11). His testimony and that of the parolees also indicate that the hearing rate is so low because parolees are often encouraged to waive their hearings. For example, one parolee testified that he waived his preliminary and revocation hearings because his parole officer told him he would likely be released and conducting hearings "would just slow the process." (Tr. 146:13-18). His parole was ultimately revoked. (Tr. 148: 14-22; Doc. #287-23, ¶ 21). Another parolee similarly testified he waived his preliminary hearing based on the understanding that he would likely be released and waived his revocation hearing because he "didn't think [the revocation hearing] pertained to him." (Tr. 253:15). This parolee's parole was also revoked. (Doc. #287-16, ¶ 29). A different parolee testified that he waived his

24

Add. 29

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 24 of 55
Appellate Case: 20-3447   Page: 31   Date Filed: 02/16/2021   Entry ID: 5004705

preliminary hearing because his parole officer gave him the impression that the hearing "would have been just basically a nuisance" and would only delay the revocation process, and that the parole board "typically [sticks] to what they've already made up their mind to do." (Tr. 187:16-21, 189:22-25). The parolee testified that he was informally notified that his parole was revoked but never received a written revocation decision. (Tr. 197:21-25, 198:1-3). Another parolee testified that she waived her hearings because the parole officer told her that she would be quickly released and that "it was [the parolee's] word against the police that arrested [her]." (Tr. 226:16-17, 227:11-13). The parolee's parole was ultimately revoked. (Doc. #287-19, ¶¶ 17-18). Other parolees who submitted declarations and whose parole was ultimately revoked similarly testified that they were encouraged to waive their hearings, and did waive such hearings, often before being fully or accurately informed of their alleged violations or rights in the revocation process. (Doc. #287-10, ¶¶ 9-10; Doc. #287-12, ¶¶ 8, 14; Doc. #287-13, ¶¶ 8, 12; Doc. #287-14, ¶¶ 17-18; Doc. #287-15, ¶ 22; Doc. #287-17, ¶¶ 7, 20, 27; Doc. #287-21, ¶ 15; Doc. #287-24, ¶¶ 9, 18; Doc. #287-25, ¶ 19).

The Court finds troubling the pressure placed on parolees to waive preliminary and revocation hearings, sometimes based on false and misleading information. The issue is exacerbated by evidence that some parolees waive their right to hearings before receiving their violation reports and without an adequate explanation of their rights in the process. Pressuring parolees to waive their hearings strips parolees of their right to challenge allegations that they contend are untrue or for which mitigating circumstances may render revocation unwarranted. (Doc. #287-13, pp. 2-4; Doc. #287-14, p. 3; Doc. #287-16, pp. 3-4; Doc. #287-23, p. 4). A waiver that is the result of inaccurate or incomplete information or that is coerced or encouraged

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 25 of 55
Appellate Case: 20-3447   Page: 32   Date Filed: 02/16/2021 Entry ID: 5004705

is unknowing and involuntary, and denying parolees the hearings to which they are constitutionally entitled under *Morrissey* is a violation of due process.

*Mandated Remedy*

- Defendants are ordered to ensure parole officers stop encouraging and pressuring parolees to waive their hearings.

### ii. Revocation Hearing (Stage 2)

"There must also be an opportunity for a hearing, if it is desired by the parolee, prior to the final decision on revocation by the parole authority." *Morrissey*, 408 U.S. at 487-88. "This hearing . . . must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." *Id.* at 488. "The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." *Id.* "The revocation hearing must be tendered within a reasonable time after the parolee is taken into custody." *Id.* "A lapse of two months . . . would not appear to be unreasonable." *Id.*

As outlined in *Morrissey*, the minimum due process requirements at "this second stage of parole revocation" include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489.

### a. Disclosure of Evidence Against Parolee

Plaintiffs argue that Defendants have violated due process by failing to have a policy requiring Defendants to disclose evidence against parolees. Plaintiffs claim such evidence must be produced before the preliminary hearing. Defendants argue they are not required to disclose the evidence prior to the preliminary hearing, and, in any event, the evidence against parolees is disclosed. In support of their argument, Defendants point to their policies, which they claim "disclose to the parolee the adverse facts and witnesses against them" and "require officers to complete a Revocation Report, a letter given to the parolee so that they are notified of all the facts against them." (Doc. #318, p. 14) (citing Procedure P6-8.1).

Procedure P6-8.1 provides that "[i]f the [parolee] requests a revocation hearing before the Parole Board, then a Revocation Report shall be completed." (Doc. #287-5, p. 10). The report should be "provided to the [parolee] prior to the hearing" and contain the "condition(s) violated with a short explanation," "other violations," "mitigating or aggravating circumstances," and the parole officers' recommendation. (Doc. #287-5, pp. 10-11).

*Morrissey* requires disclosure to parolees of the evidence against them. 408 U.S. at 489; *see also Belk v. Purkett*, 15 F.3d 803, 806 (8th Cir. 1994) (finding evidence was not disclosed to Missouri parolee as required by *Morrissey* in that parolee "was not permitted to examine the written statement of the alleged victim," "did not receive the police reports," "was not given the results of the fingerprint test on the knife," and "was not told of [witnesses'] oral statements"). And contrary to Defendants' contention, their procedures do not require that evidence against the parolee be disclosed to parolees.

Mr. Muhammad testified that Defendants' failure to provide evidence to parolees and lack of policy requiring them to do so are key constitutional deficiencies of Missouri's parole

27

Add. 32

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 27 of 55
Appellate Case: 20-3447   Page: 34   Date Filed: 02/16/2021 Entry ID: 5004705

revocation process. (Tr. 91:15-18). He further stated that "no evidence [is] being provided to the alleged parole violator[s]." (Tr. 51:18-21). Accordingly, Plaintiffs urge the Court to require Defendants to adopt a policy requiring the disclosure of evidence to parolees. They request such evidence be produced no later than five days before the *preliminary* hearing.

While this Court agrees that such evidence must be provided to parolees, *Morrissey* only requires disclosure of evidence before the revocation hearing. 408 U.S. at 485-487; *Gagnon*, 411 U.S. at 786 (noting "[t]he final hearing is a less summary one because the decision under consideration is the ultimate decision to revoke rather than a mere determination of probable cause" and requires "disclosure to the [] parolee of evidence against him.").

*Mandated Remedy*

- The Court orders Defendants to disclose to parolees all evidence against them no later than five days before the revocation hearing. Defendants shall amend their policies to reflect this requirement.[15]

## b. Timeliness of Revocation Hearings

Plaintiffs next argue that revocation hearings are not consistently conducted in a timely manner. Defendants fail to address this argument in their briefing. *Morrissey* requires that "the revocation hearing must be tendered within a reasonable time after the parolee is taken into

---

[15] Plaintiffs also argue that "Defendants have a written policy that allows a hearing officer to address new evidence at a revocation hearing, even if that evidence was not included in a violation report or otherwise produced to a parolee." (Doc. #316, p. 17). Defendants do not respond to this argument. In support of their argument, Plaintiffs cite Procedure P3-9.4. But that procedure governs preliminary hearings, and Plaintiff did not cite, nor did the Court find, any authority requiring the disclosure of evidence to parolees in advance of the preliminary rather than the revocation hearing. Therefore, the provision at issue does not violate due process. However, the same provision is contained in Procedure P6-8.2, which governs revocation hearings. The provision reads: "Should the hearing panel be aware of relevant information contained in police reports or official documents regarding the alleged violation(s), but not summarized in the violation report, the information may be addressed with the [parolee]." (Doc. #287-8, p. 7). Still, contrary to Plaintiffs' argument, this provision does not state that hearing officers may address evidence not produced to a parolee. Instead, the provision addresses information contained in police reports or official documents, which, as the Court ordered, must be disclosed to parolees in advance of the revocation hearing. Therefore, the Court finds this provision does not violate due process.

Add. 33

custody." 408 U.S. at 488. "A lapse of two months . . . would not appear to be unreasonable." *Id.* The Eighth Circuit has held that a three-month delay from the time a parolee under federal supervision was taken into federal custody until the revocation hearing was reasonable in light of "administrative difficulties." *Creech v. U.S. Bd. of Parole*, 538 F.2d 205, 208 (8th Cir. 1976).

In accordance with these rulings, the Court finds Defendants' Procedure P6-8.1, which requires revocation hearings be conducted within 30 days of a parolee's return to MDOC custody, is reasonable. (Doc. #287-5, p. 11). The evidence, however, indicates Defendants do not always comply with this policy. The average time from return to MDOC custody until the revocation hearing is 74 days. (Tr. 90:17-21; Doc. #291-31, p. 2). In a data set provided by Defendants, 40 of the 44 parolees who requested revocation hearings were in MDOC custody for more than 30 days before their revocation hearings. (Doc. #291-31, p. 2). Twenty-two out of the 44 were in MDOC custody for more than 60 days. (Doc. #291-31, p. 2). In some instances, parolees are in MDOC custody for hundreds of days before their revocation hearing. (Doc. #291-31, p. 2). Defendants offered testimony at the evidentiary hearing indicating more recent data shows shorter custodial stays overall and demonstrates that the major outliers are due to extenuating circumstances such as parolees not being in MDOC custody. (Tr. 366:1-25, 367:1-25, 368:1-25, 369:1-19). The Court recognizes that certain cases may arise in which Defendants, for reasons out of their control, will not be able to conform to their own 30-day policy. However, Defendants must demonstrate overall adherence to the policy in order to ensure due process is afforded to parolees, especially considering parolees may spend weeks in jail before being transferred to MDOC custody and Defendants do not account for such time.

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 29 of 55
Appellate Case: 20-3447   Page: 36   Date Filed: 02/16/2021 Entry ID: 5004705

*Mandated Remedy*

- The Court orders Defendants to demonstrate overall adherence to the policy requiring revocation hearings be conducted within 30 days of a parolee's return to MDOC custody, maintain documentation of their compliance with this policy, and keep detailed records to account for circumstances in which the 30-day deadline is not met.

The Court also notes that while Defendants' policy measures 30 days from the parolee's return to MDOC custody to the revocation hearing, the data set discussed above conflates the revocation hearing date with the date parolees receive revocation decisions. However, evidence indicates there is often a gap in time between the revocation hearing and the time the parole board makes a revocation decision. (Tr. 378:6-18). Defendants are directed to ensure the documentation they keep measures the time between parolees' return to MDOC custody and the revocation hearing.

### c. Written Statement of Revocation Decisions

Plaintiffs argue that Defendants fail to provide constitutionally adequate notice of revocation decisions, while Defendants argue the written statements provided to parolees satisfy constitutional demands. The revocation hearing "must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." *Morrissey*, 408 U.S. at 488. "The decision to revoke probation or parole typically involves two separate tiers: (1) a retrospective factual question whether the probationer has violated a condition of probation; and (2) a discretionary determination by the sentencing authority whether violation of a condition warrants revocation of probation." *Belk*, 15 F.3d at 814 (quoting *Black*, 471 U.S. at 609 (quotation marks omitted)). "Thus, a revocation decision

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 30 of 55
Appellate Case: 20-3447   Page: 37   Date Filed: 02/16/2021 Entry ID: 5004705

must include both a finding that the parolee violated a condition of his parole and that the parolee should be committed to prison." *Id*. The parolee must be given "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Morrissey*, 408 U.S. at 489. This requirement ensures the written statements "provide an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence." *Belk*, 15 F.3d at 814 (citing *Black*, 471 U.S. at 613-14).

Procedure P6-8.2 requires the hearing panel to make "a determination as to preponderance of the evidence on each violation cited." (Doc. #287-8, p. 8). If the hearing panel finds there to be a violation(s), then "[t]he hearing panel shall review all violations, aggravating and mitigating circumstances and shall make a determination as to whether the [parolee's] parole or conditional release should be revoked." (Doc. #287-8, p. 8). Subsequently, a Notification of Board Action "shall be processed and delivered to the [parolee], in person, within 10 business days from the date on the notice." (Doc. #211-1, p. 3). While a lead analyst for the Parole Board testified that parolees who have been revoked following a revocation hearing will "receive the decision, the aggravating circumstances in detail, and mitigating circumstances in detail," Defendants proffer no policy that requires parolees to be given "evidence relied on and reasons for revoking parole" after a revocation hearing. (Tr. 378:21-25). The lead analyst testified that "[a] parolee that has waived their hearing will simply receive the order of revocation with the violations and a notice of the decision," but again, Defendants point to no policy setting forth this requirement. (Tr. 379:10-13).

Plaintiffs argue, and Defendants do not dispute, that at least two testifying parolees did not receive their Notification of Board Action at all or received it weeks after the revocation decision was made. (Tr. 160:21-25, 161:1-7; 198:2-3).

31

Add. 36

*Mandated Remedy*

- Defendants are ordered to comply with the policy requiring parolees be given the Notification of Board Action within 10 business days of the date on the Notification. The Court orders Defendants to maintain careful documentation of the delivery of the Notifications of Board Action to parolees.

Next, Defendants' policies require the hearing panel to (1) determine whether the parolee has violated a condition(s) of parole and (2) consider whether revocation is warranted based on the violation(s) and aggravating circumstances. Defendants, however, have no policy that requires parolees be given "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Morrissey*, 408 U.S. at 489. While Defendants testify that "if it's a revocation hearing notice and [the parolee has] been revoked, [he or she will] receive the decision, the aggravating circumstances in detail, and mitigating circumstances in detail of what was considered for the revocation," Defendants do not indicate they have a policy requiring such information be provided to revoked parolees in writing. (Tr. 378:21-25).

The parties do not dispute that under current practices, parolees who waive the revocation hearing will only receive written notice that their parole has been revoked, with no discussion of the evidence relied upon or reasons for revocation. Waiver of the revocation hearing does not equate to waiver of the right to "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Morrissey*, 408 U.S. at 489. The evidence demonstrates that some revocation decisions are appealable even if a revocation hearing is not conducted. (Doc. #131-20). And for purposes of appeal, written statements must "provide an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence." *Belk*, 15 F.3d at 814 (citing *Black*, 471 U.S. at 613-14).

32

Add. 37

*Mandated Remedy*

- Defendants are ordered to construct and implement a policy mandating that, when a decision to revoke parole is made—regardless of whether a hearing was conducted—the Notice of Board Action must provide to the parolee a written decision outlining the evidence relied on to determine whether the parolee violated a condition(s) of parole, the mitigating circumstances considered, and reasons for revoking. *Morrissey*, 408 U.S. at 489.

Defendants' Procedure P6-6.1 requires that the "Notification of Board Action . . . shall be processed and delivered to the [parolee], in person, within 10 business days from the date on the notice," that a parolee "is presumed to have received their decision within 10 business days of the date the notice was final formed," and that parolees must file appeals "within 30 days after the decision has been received." (Doc. #211-1, pp. 3, 6). Defendants have no policy dictating how long after a revocation hearing or waiver of revocation hearing that a revocation decision must be made and the associated Notification of Board Action completed. Such a policy is necessary in order to give meaning to the policies governing parolees' receipt of revocation decisions and deadlines for filing appeals.

*Mandated Remedy*

- The Court orders Defendants to construct and implement a policy requiring revocation decisions be made and Notifications of Board Action completed within a reasonable amount of time after a revocation hearing or waiver thereof.

### d. Hearings Conducted

The parties dispute to a limited extent whether Defendants' policies, procedures, and practices governing the administration of the preliminary and revocation hearings themselves

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 33 of 55
Appellate Case: 20-3447   Page: 40   Date Filed: 02/16/2021 Entry ID: 5004705

and Defendants' compliance therewith satisfy due process requirements. The evidence in the record is insufficient for the Court to make that determination. The Court acknowledges that evidence is likely lacking because so few hearings are conducted and anticipates that as Defendants implement the relief required in this Order, they will begin to conduct hearings at a higher rate. Therefore, should constitutional issues arise regarding the administration of hearings and the governing policies in the future, the Court will address them at such time. The Court will further discuss this matter at a status hearing to be arranged by the Court following the issuance of this Order.

### B. Screening for and Appointment of Counsel

One of the most glaring shortcomings of Defendants' parole revocation policies and procedures is the failure to properly screen for state-funded counsel eligibility and appoint counsel when due process so requires. "[T]here are critical differences between criminal trials and probation or parole revocation hearings[.]" *Gagnon*, 411 U.S. at 788-89. "The need for counsel at revocation hearings derives, not from the invariable attributes of those hearings, but rather from the peculiarities of particular cases." *Id.* at 789. "[T]he decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system." *Id.* at 790. "Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees." *Id.*

Under *Gagnon*:

Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes

34

Add. 39

such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself.

411 U.S. at 790-91.

Thus, *Gagnon* indicates indigent parolees are presumptively entitled to counsel in essentially three circumstances: (1) when the parolee's request for counsel is based on a timely and colorable claim that he or she has not committed the alleged parole violation (claim of innocence); (2) when the parolee's request is based on a timely and colorable claim that mitigating circumstances make revocation inappropriate even if he or she did commit the violation, and the circumstances are complex or otherwise difficult to develop or present (complex mitigating circumstances); and (3) when the parolee appears to be incapable of speaking effectively for himself. *Id.* "In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record." *Id.* at 791.

Plaintiffs argue the Counsel Eligibility Screening Instrument ("Screening Instrument")[16] is facially deficient, the screening process is deficient as implemented in practice, and that Defendants fail to provide counsel to eligible parolees. Defendants argue their policies ensure parolees can waive legal counsel, hire their own legal counsel, or be screened and apply for a public defender, satisfying due process requirements. The Court addresses each of these arguments in turn.

---

[16] The Screening Instrument is attached to this Order as Exhibit D.

35

Add. 40

### i. Screening for Eligibility

### a. Screening Instrument

Defendants' Screening Instrument is divided into two sections: (1) "Screening Questions to ask the Client [parolee]" and (2) "Processing Questions for the PO – (Not to be Asked of the Client [parolee])." (Doc. #287-3, p. 2).

| Screening Questions to ask the Client |
|---|
| 1) Are you contesting any of the alleged violations?  ☐ Yes  ☐ No |
| 2) Do you have any problems understanding the English Language?  ☐ Yes  ☐ No<br>   a) If client answers yes, explain: |
| 3) What is your highest level of education completed:<br>   ☐ Elementary   ☐ Junior High/Middle School   ☐ High School/HSE   ☐ College |
| 4) Do you have any history of mental illness or are you now suffering from any mental illness?<br>   ☐ Yes  ☐ No<br>   If yes, explain: |
| 5) Have you consumed any alcohol, drugs, or any medication within the last 48 hours?  ☐ Yes  ☐ No<br>   a) If yes, list all substances client consumed: |

The first section, "Screening Questions to ask the Client," contains one question that corresponds with the first ground under which parolees presumptively qualify for state-funded counsel—a parolee's claim of innocence (question one). The Screening Instrument asks whether the parolee is contesting any of the alleged violations and contains a checkbox for the parole officer to select "yes" or "no." The Screening Instrument, however, contains no space for an explanation if the parolee denies violating a condition(s) of parole.

*Mandated Remedy*

- Defendants are ordered to amend the "Screening Questions to ask the Client" section of the Screening Instrument to provide space in case a parolee wishes to explain the claim of innocence, which serves to aid the parole officer in

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 36 of 55
Appellate Case: 20-3447   Page: 43   Date Filed: 02/16/2021 Entry ID: 5004705

determining whether the parolee qualifies for counsel based on a timely and colorable claim of innocence. *Gagnon*, 411 U.S. at 790.

The Screening Instrument lacks any "Screening Questions to ask the Client" that correspond with the second ground—complex mitigating circumstances. *Id.* While there are questions related to mitigation on the Screening Instrument, they are located under the section marked "Not to be Asked of the Client." [17]

*Mandated Remedy*

- Because parolees must be given the opportunity to share mitigating circumstances surrounding the alleged violation, Defendants are ordered to amend the "Screening Questions to ask the Client" section of the Screening Instrument to add a screening question(s) to be asked of parolees related to potential complex mitigating circumstances, with space for parole officers to detail the alleged mitigating circumstances.

The Screening Instrument is sufficient as to the third ground—whether a parolee appears capable of advocating on his or her own behalf. It asks questions about the parolee's education, understanding of the English language, history of mental illness, and use of alcohol, drugs, or medication (questions two through four).

---

[17] The Court is unable to understand how a parole officer determines whether "the alleged violations [could] have been avoided" or "what circumstances caused the alleged violations" without asking those questions of the parolee, but that is what is currently required by the Screening Instrument.

37

Add. 42

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 37 of 55
Appellate Case: 20-3447   Page: 44   Date Filed: 02/16/2021 Entry ID: 5004705

The third ground is also sufficiently addressed in the second section of the Screening Instrument, "Processing Questions for the PO – (Not to be Asked of the Client)."

| Processing Questions for the PO – (Not to be Asked of the Client) |
|---|
| 1) Does client appear to be oriented to time, place, and nature of interview?  ☐ Yes  ☐ No<br>List any observations: |
| 2) Are the issues to be adjudicated during the revocation complex and are there substantial mitigating circumstances?<br><br>a) Could the alleged violations have been avoided?<br><br>b) What circumstances caused the alleged violation?<br><br>c) Is there a reason the violation will not happen again?<br><br>d) Summarize mitigating factors for each violation, what evidence makes the violations less believable or less severe?<br><br>e) If the issues to be adjudicated at the revocation hearing are complex and there are substantial mitigating circumstances, have the client complete a public defender application. |
| 3) Based on the client's understanding of the English Language, education, presence or absence of mental illness, and consumption or lack thereof of alcohol, drugs, or medication, and your physical observations, is the client incompetent to proceed?  ☐ Yes  ☐ No<br><br>a) If your answer is "Yes", have the client complete a public defender application.<br><br>b) If your answer is "No", list the reasons: |
| If the Public Defender application was faxed to the Public Defender's Office, what date: |

The Screening Instrument contains two processing questions for the parole officer pertaining to the third ground of ability to effectively speak for oneself (questions one and three).[18]  The Screening Instrument also currently contains processing questions to aid parole officers on the

---

[18] The Court notes the two processing questions that correspond with the third ground that presumptively qualifies a parolee for counsel—inability to effectively speak for oneself—are currently numbered as questions one and three.  To help with clarity and support accurate processing, Defendants should list these two processing questions sequentially.

38

Add. 43

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 38 of 55
Appellate Case: 20-3447   Page: 45   Date Filed: 02/16/2021 Entry ID: 5004705

second ground—complex mitigating circumstances (question two with sub-questions).

However, the Court acknowledges that while there are five processing questions that correspond

with the second ground, the first four (questions 2(a) – 2(d)) call for subjective responses and

appear to be questions that should be asked of the parolee rather than the parole officer.

*Suggested Changes*

- Defendants should move these four processing questions that correspond with

  the second ground—complex mitigating circumstances—questions 2(a) – 2(d) up

  to the "Screening Questions to ask the Client" section of the Screening

  Instrument pertaining to the second ground.

- Defendants should add an option to the processing questions(s) that correspond

  with the second ground for the parole officer to check "yes" or "no," in response

  to whether complex mitigating circumstances exist and direct the parole officer

  to secure state-funded counsel when required, which is the current format of the

  processing questions pertaining to the third ground for counsel qualification.

Unlike the second and third grounds, the Screening Instrument contains no processing

questions for the parole officer pertaining to the first ground—claim of innocence. *Id.*

*Mandated Remedy*

- Defendants are ordered to amend the "Processing Questions for the PO – (Not to

  be Asked of the Client)" section of the Screening Instrument to add a processing

  question(s) to aid parole officers in determining whether appointment of counsel

  is warranted based on the parolee's timely and colorable claim that he has not

  committed the alleged violation.[19]

---

[19] The processing question(s) should, at minimum, allow the parole officer to check "yes" or "no" in response to whether the parolee contests a violation(s) and direct the parole officer to secure state-funded counsel when

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 39 of 55
Appellate Case: 20-3447   Page: 46   Date Filed: 02/16/2021 Entry ID: 5004705

In sum, Defendants must make the amendments to the Screening Instrument ordered by the Court above to comply with minimum due process demands as required by *Gagnon*. Defendants are encouraged to make the additional amendments suggested by the Court to ensure proper screening of parolees for state-funded counsel and to avoid continued litigation.

### b. Screening Process[20]

As previously discussed, parolees are presumptively entitled to state-funded counsel in three circumstances—claim of innocence, complex mitigating factors, and parolees' inability to effectively speak on his own behalf. Pursuant to Procedures P3-8.7, P3-9.1, and P6-8.1, "[i]f the [parolee] is eligible for a public defender based on the Counsel Eligibility Screening Instrument . . . then the [parole officer] shall assist the [parolee] in completing [an application for a public defender]." (Doc. #194-7, p. 5; Doc. #287-1, p. 6; Doc. #287-5, p. 9). Procedures P3-9.2 and P6-8.2 provide that "[i]f it has been determined the [parolee] lacks the mental ability to understand the proceedings, an attorney shall be requested through the Public Defender's Office to protect the [parolee's] interest, regardless of the [parolee's] wishes." (Doc. #194-13, p. 5; Doc. #287-8, p. 6). Once Defendants make the revisions to the Screening Instrument ordered by this Court, these policies will satisfy constitutional requirements. In practice, however, Defendants' current counsel eligibility screening process fails to capture all parolees who qualify for state-funded counsel.

A parole supervisor and parole officer testified to their belief that parolees only qualify for state-funded counsel if the parolee is indigent, has trouble understanding English, or has a

---

required, which is the current format of the processing questions pertaining to the third ground for counsel qualification.

[20] Plaintiffs argue that screening for state-funded counsel should be conducted by a neutral, detached individual who is not involved in the parolee's case. *Morrissey* requires a "'neutral and detached' hearing body" conduct revocation hearings, not counsel screening. 408 U.S. at 489. Therefore, the Court declines to impose such a requirement on Defendants.

Add. 45

mental disability. For example, the parole supervisor testified, "My understanding would just be if there's no assets or no [] financial means to secure counsel, then they would [] qualify for public defender service." (Doc. #316-1, 58:17-25, 59:1-5). The parole officer testified, "My understanding of who qualifies is any offender that needs assistance that does not understand the process of the revocation hearing." (Doc. #316-2, 30:22-25, 31:1-10). Indeed, parolees testified that they were told by parole officers that they would only qualify for state-funded counsel if they did not speak English, were illiterate, or had a mental illness, and revocation hearing transcripts substantiate this testimony. (Tr. 15:6-8, 82:21-25, 83:1-15, 190:8-18, 194:1-11, 15-21; Doc. #291-27, 8:5-25, 9:1-2). Still, some parolees testified they were never asked about their mental health or learning disabilities to determine qualification for state-funded counsel. (Tr. 217:6-8, 218:6-8, 231:10-12, 243:16-25, 250:16-19, Doc. #287-10, ¶¶ 13-14; Doc. #287-15, ¶ 26; Doc. #287-16, ¶¶ 19-21; Doc. #287-17, ¶¶ 9-10; Doc. #287-21, ¶ 24; Doc. #287-25, ¶ 23).

Moreover, Defendants fail to consistently screen for timely and colorable claims of innocence and complex mitigating circumstances, which *independently* presumptively qualify indigent parolees for state-funded counsel. *Gagnon*, 411 U.S. at 790-91. A parole supervisor testified that a claim of innocence is one factor in counsel eligibility consideration but alone is not enough to warrant appointment of counsel. (Tr. 457:2-25, 458:16-20) (At the evidentiary hearing, the Court asked the parole supervisor if parolees "have made a timely and colorable claim that they did not commit the alleged violation of the conditions and that's all you know, is that enough to go with counsel, or [are] there still other things you need to look at?" The parole supervisor answered, "There will still be other factors."). The parole supervisor also testified that this approach is how parole officers are trained to conduct screenings and determine

counsel eligibility. (Tr. 458:16-20). Further, many parolees testified that they were not asked whether they contested the alleged parole violation(s) or whether there were any mitigating circumstances related to their alleged violations, and that they did not understand the meaning of "mitigating circumstances" and received no explanation thereof. (Tr. 191:2-5, 6-9, 194:19-21, 196:17-23, 209:19-25, 210:1-7, 217:3-5, 228:8-13; Doc. #287-10, ¶ 13; Doc. #287-11, ¶ 7; Doc. #287-16, ¶ 18; Doc. #287-17, ¶¶ 30-31; Doc. #287-23, ¶ 9).

This evidence is particularly concerning where, as here, many class members asserted they had credible claims of innocence, mitigating circumstances, mental health issues, and learning disabilities that would have qualified them for counsel had they been properly screened. (Tr. 190:19-25, 191:1, 216:12-25, 217:1-2; Doc. #287-10, ¶¶ 13-14; Doc. #287-11, ¶ 7; Doc. #287-13, ¶ 13; Doc. #287-14, ¶ 20; Doc. #287-16, ¶¶ 19-21; Doc. #287-17, ¶¶ 9, 29; Doc. #287-21, ¶ 24; Doc. #287-25, ¶ 23). Parole officers must administer counsel eligibility screening in a manner consistent with the understanding that in addition to the inability to speak effectively for oneself, both a timely and colorable claim of innocence and a timely and colorable claim of mitigating circumstances that are complex or otherwise difficult to develop or present also independently warrant appointment of state-funded counsel.

*Mandated Remedy*

- The Court orders Defendants to train parole officers and other Division of Probation and Parole employees involved in and responsible for the counsel eligibility screening process to conduct the screening process in accordance with the three separate grounds set forth in *Gagnon*.

Furthermore, the evidence shows that under Defendants' current practice, parole officers often do not even reach the counsel screening stage because they wrongly require parolees to

make a decision to waive or request hearings before offering to screen for counsel or are otherwise not informed that they might have the right to representation by a state-funded attorney. (Tr. 483:10-13, 355:6-9; Doc. #316-2, 106:23-25, 107:1-25, 108:5; Doc. #316-3, 84:13-25, 85:1-11; Doc. #287-10, p. 3; Doc. #287-11, p. 3; Doc. #287-12, pp. 3-4; Doc. #287-13, pp. 3-4; Doc. #287-14, pp. 3-4; Doc. #287-15, p. 3; Doc. #287-16, p. 5; Doc. #287-17, pp. 3, 5-6; Doc. #287-18, p. 3; Doc. #287-19, p. 3; Doc. #287-20, p. 3; Doc. #287-23, p. 3; Doc. #287-24, p. 4; Doc. #287-25, pp. 3-4). It is imperative that after being informed of the right to be screened for state-funded counsel and the qualifications for state-funded counsel, parolees be allowed to make a determination as to whether or not they request to be screened for counsel (and subsequently screened for counsel if applicable) *before* requesting or waiving a preliminary or revocation hearing. Parolees must be informed of the right to be screened for state-funded counsel and subsequently screened upon request in order to make an informed and voluntary decision whether to request or waive the hearings to which they are entitled under *Morrissey*. This is because, as parolee testimony indicates, the possibility of appointment of counsel is a consideration relevant to the decision to request or waive such hearings. (Doc. #287-14, ¶ 12; Doc. #287-15, ¶ 13; Doc. #287-16, ¶ 18; Doc. #287-18, ¶ 17; Doc. #287-20, ¶ 18; Doc. #287-24, ¶ 21) (parolees testifying that had they known they could be screened for state-funded counsel, they would not have waived their right to a preliminary or revocation hearing); *see Brady v. United States*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences").

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 43 of 55
Appellate Case: 20-3447   Page: 50   Date Filed: 02/16/2021 Entry ID: 5004705

*Mandated Remedy*

- Defendants are ordered to ensure parolees are informed of the right to be screened for state-funded counsel and are subsequently screened upon request before parolees decide whether to request or waive preliminary or revocation hearings. Defendants are further ordered to amend their policies to reflect this requirement.

### ii. Determination of Qualification for Counsel

"[T]he decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system." *Gagnon*, 411 U.S. at 790. Procedures P3-8.7, P3-9.1, and P6-8.1 reflect Defendants' understanding that the Division of Probation and Parole is charged with the responsibility of determining eligibility for state-funded counsel. The procedures state that "*[i]f the [parolee] is eligible for a public defender based on the Counsel Eligibility Screening Instrument* . . . then the [parole officer] shall assist the [parolee] in completing [an application for a public defender]." (Doc. #194-7, p. 5; Doc. #287-1, p. 6; Doc. #287-5, p. 9) (emphasis added). Both *Gagnon* and Defendants' own procedures require parole officers and other employees of the Division of Probation and Parole involved in and responsible for the counsel eligibility screening process to administer the Screening Instrument and determine counsel eligibility. The evidence shows this policy is not consistently understood or implemented.

One parole supervisor testified that parole officers do not determine whether parolees are eligible for state-funded counsel—the Missouri State Public Defender System ("MSPD") does. (Doc. #316-1, 47:6-12) (When asked whether "it is the parole officer who makes the

44

determination whether [parolees] are eligible or not for counsel," the parole supervisor responded, "No. We [] are told to fax everything to the Public Defender's Office."). The Assistant Division Director testified similarly. (Tr. 339:17-23) (When asked "who makes the decision as to which parolees qualify for counsel under *Gagnon*," the Assistant Division Director responded that "[I]t's the public defender who has the final determination."). Another parole supervisor testified that the parole officers she supervises send every Screening Instrument completed to the MSPD along with an application for a public defender. (Tr. 486:20-25, 487:4-25, 488:1-24) (The parole supervisor was asked, "So your parole officers don't make the decision themselves if someone's eligible and then only send eligible applications?" The parole supervisor responded, "Correct."). Another parole supervisor testified that the parole officers who conduct the screening make the counsel qualification determination. (Tr. 455:7-9).

*Mandated Remedy*

- The Court orders Defendants to adhere to their policies and, as mandated by *Gagnon*, require parole officers and other employees of the Division of Probation and Parole responsible for the counsel eligibility screening process to administer the Screening Instrument and make counsel eligibility determinations.

### iii. Denial of Counsel

"In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record." *Gagnon*, 411 U.S. at 791. Defendants identify no procedure that governs recording or giving parolees notice of a denial of counsel. Indeed, a parole supervisor and the Assistant Division Director testified that there are no written policies that state the requirements for the written notice. (Tr. 336:2-5, 455:15-21)

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 45 of 55
Appellate Case: 20-3447   Page: 52   Date Filed: 02/16/2021   Entry ID: 5004705

(For example, the parole supervisor was asked, "And there aren't any written policies that dictate what has to be in that notice, are there?" The parole supervisor responded, "Correct."). Nevertheless, a parole supervisor testified that parole officers provide parolees who have been deemed ineligible for counsel with a written decision that includes reasons why they have been denied immediately after the determination is made. (Tr. 455:10-14, 20-21). The Assistant Division Director testified that parole officers send a memo to parolee explaining the ineligibility determination. However, a unit supervisor's testimony and other evidence indicates parolees do not always receive a written decision and that if they do, the written decisions do not address all bases for counsel eligibility and are given to parolees after the passage of a significant amount of time. For example, the unit supervisor was asked, "[I]f [parolees are] screened and then found not eligible, do they receive a written decision, an explanation of why they're not eligible for counsel?" The unit supervisor responded, "No, not from our office." (Tr. 486:20-23). Additionally, one parolee's written decision, which was dated for nearly two weeks *after* the date of his revocation hearing, stated he didn't qualify for state-funded counsel only because, "You appear to have an understanding of the English language, test average on the IQ and memory testing, your mental health does not appear to affect your ability to understand, and you did not appear to be under the influence of drugs or alcohol." (Doc. #287-26, p. 2).

*Mandated Remedy*

- The Courts orders Defendants to construct and implement a policy requiring that a finding that a parolee is ineligible for counsel must be recorded in the appropriate and relevant records and be given to parolees in writing within a

reasonable amount of time. The decision must expressly state all grounds for refusal. *Gagnon*, 411 U.S. at 791.

### iv. Appointment of Counsel

When parolees are determined to be eligible for appointment of state-funded counsel, Defendants wholly fail to provide such counsel. (Doc. #318, p. 21; Tr. 342:17-19). Plaintiffs argue that Defendants are knowingly evading their obligation to provide counsel to eligible parolees. Defendants argue they lack authority to provide counsel and that under Missouri law, only the MSPD possesses such authority. Defendants are mistaken. The authority, and, in fact, the requirement to provide state-funded counsel when warranted was bestowed on Defendants by the Supreme Court in *Gagnon* nearly fifty years ago:

> [T]he decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system. Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees.

411 U.S. at 790.

*Gagnon* tasks "the state authority charged with responsibility for administering the probation and parole system" with making the counsel eligibility determination. *Id.* Defendants recognize they are that agency. (Tr. 341:6-17) (When asked if "the Division of Probation and Parole is the division of the Department of Corrections that is responsible for administering the probation and parole system in Missouri," the Assistant Division Director responded, "Correct."). *Gagnon* goes on to require that when the state authority—here, Defendants—finds parolees eligible for counsel, the State must provide such counsel at its expense. *Id. Gagnon* does not address state public defender systems nor instruct that public

47

Add. 52

defenders must provide state-funded counsel. Instead, *Gagnon* commands state probation and parole systems to conduct revocation proceedings that comply with due process, which includes providing counsel to indigent parolees at cost to the State when parolees meet outlined criteria. *Id.* The Court also underscores that Defendants consented to entry of summary judgment in Plaintiffs' favor and therefore admitted as true Plaintiffs' allegation that Defendants fail to provide State-funded counsel in violation of *Gagnon*. (Doc. #130, ¶¶ 32-40). Still, Defendants continue to contradict their prior concession by arguing they are not liable for the unconstitutional policy violations for which they previously admitted liability.

Defendants' Procedures P3-8.7, P3-9.1, and P6-8.1 mandate that for parolees who have been screened and deemed eligible for appointment of counsel, parole officers must "assist the [parolees] in completing the Application/Affidavit for Public Defender Services and Promise to Pay form" and fax the completed form and Screening Instrument to the Public Defender Office. (Doc. #194-7, p. 5; Doc. #287-1, p. 6; Doc. #287-5, p. 9). Defendants claim that after doing so, whether counsel is appointed is no longer their concern; it is the MSPD's. But the MSPD declines to provide representation for parole revocation proceedings. (Doc. #194-15; Tr. 314:3-6). In turn, Defendants fail to provide counsel to parolees for whom state-funded counsel is constitutionally required pursuant to *Gagnon*. (Tr. 342:6-19).

*Mandated Remedies*

- Because such practice violates *Gagnon*, Defendants are ordered to refrain from proceeding with revocation hearings and reincarcerating parolees who are not represented by state-funded counsel when minimum due process so requires.[21]

---

[21] Defendants argue the Court lacks authority to enter this injunction because "a prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement.'" *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (citation omitted). This argument fails on multiple grounds. Most obviously, Plaintiffs in this action are a class of adult parolees in the state of Missouri who currently face, or who in the future will face, parole revocation

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 48 of 55
Appellate Case: 20-3447   Page: 55   Date Filed: 02/16/2021 Entry ID: 5004705

- Defendants are also ordered to adopt and implement a new policy for appointing state-funded counsel to eligible parolees. All forms should be updated to reflect this new policy.

## C. Appeal Process

Plaintiffs argue that Defendants' process for appealing revocation decisions does not comport with the demands of due process. There appears to be little to no case law that addresses due process requirements for the appellate process in the context of parole revocation proceedings. Indeed, Plaintiffs failed to cite to any and Defendants altogether failed to address the argument. In general, "a State has great discretion in setting policies governing parole decisions, but it must nonetheless make those decisions in accord with the Due Process Clause." *Evitts v. Lucey*, 469 U.S. 387, 401 (1985) (citing *Morrissey*, 408 U.S. at 481-84). The Supreme Court also contemplated an appellate process for parole revocation decisions in *Black*, as did the Eighth Circuit in *Belk*. *See Belk*, 15 F.3d at 814 (citing *Black*, 471 U.S. at 611) ("While the sentencing authority is not required to elaborate upon the reasons for a course not taken, it must specifically state the reason for its decision and the evidence relied upon to provide an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence.").

---

proceedings. Plaintiffs are not all imprisoned and challenge *revocation* procedures, which affect parolees (not prisoners); the plaintiff class does not challenge the "fact or duration of [their] confinement." *Wilkinson* held that state prisoners *may* bring a § 1983 action for injunctive relief challenging the constitutionality of state parole procedures. *Id.* at 1245-1249. The exception to this rule, which Defendants cite, applies to prisoners seeking "an injunction ordering [their] immediate or speedier release into the community," which lies "within the core of habeas corpus." *Id.* at 74, 82 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 487, 500 (1973)). The plaintiff class in this case seeks only injunctive relief directed at Defendants' policies, practices, and procedures. Class members do not seek immediate or speedy release in their own individual cases. Therefore, the claims of the plaintiff class do not lie at "the core of habeas corpus," *id.* at 82 (quoting *Preiser*, 411 U.S. at 489), but "seek relief that will render invalid" state parole revocation procedures. *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 554-55 (1974)).

49

Add. 54

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 49 of 55
Appellate Case: 20-3447   Page: 56   Date Filed: 02/16/2021   Entry ID: 5004705

Recognizing an appellate process is necessary, Defendants' Procedure P6-6.1, which governs the appeal of parole revocation decisions, provides that hearing panel decisions are appealable but majority parole board decisions are not. (Doc. #211-1, p. 5). The policy states that the Notice of Board Action shall indicate whether the decision is subject to appeal, although parolees may consult with an institutional parole officer regardless of whether the decision is appealable. (Doc. #211-1, p. 6). The policy also states that if a parolee wishes to appeal an appealable decision, then the institutional parole officer must give the parolee an Appeal to Board Decision form ("Appeal form"). (Doc. #211-1, p. 6). Such an appeal must be filed within 30 days after the parolee receives the Notice of Board Action. (Doc. #211-1, p. 6). Parolees are "presumed to have received their decision within 10 business days of the date the notice was final formed." (Doc. #211-1, p. 6). "The appeal shall be considered by the Parole Board within 30 days of receipt of the appeal, or as soon thereafter as possible, and the [parolee] shall be advised of the Parole Board's decision as soon as the notice can be prepared and delivered." (Doc. #211-1, p. 6). "If no appeal is filed within 30 days after the [parolee] receives the original decision, then the decision shall stand as final." (Doc. #211-1, p. 6).

### i. Availability of Appeal Form

Plaintiffs argue, and the evidence shows, that the appeal process is hindered for some parolees because the appeal form is not made available to parolees upon request in a timely manner or, in some cases, at all. Some parolees encounter significant delay in obtaining an appeal form while others do not receive the form at all, even after sending multiple communications to parole officers. (Tr. 152:21-25, 153:1-5; 255:21-25; Doc. 287-13, ¶ 16; Doc. 287-18, ¶¶ 23-24). Although parolees are required to appeal an appealable decision within 30 days, parolees are not automatically given an appeal form when they receive a Notice of

50

Add. 55

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 50 of 55
Appellate Case: 20-3447   Page: 57   Date Filed: 02/16/2021 Entry ID: 5004705

Board Action revoking parole. If the thirty-day clock begins ticking on the day parolees receive their Notice of Board Action, then parolees must receive the appeal form on the day they receive their decision.

*Mandated Remedy*

- Defendants are ordered to make the appeal form available to parolees whose decisions are appealable on the same day they receive their decision. Defendants are further ordered to amend their policies to reflect this requirement.

Further, when revocation decisions are not subject to appeal, parolees are not made aware of the reasoning for lack of appealability.

*Suggested Change*

- The Court encourages Defendants to include on the Notice of Board Action for decisions that are not subject to appeal the reason for which the decision is not appealable. *See Morrissey*, 408 U.S. at 489 (requiring an explanation for revocation decisions).

### ii. Explanation of Appeal Decision

Plaintiffs argue, and Defendants do not dispute, that parolees whose appeals are denied receive a decision that "does not provide any explanation as to why" the appeal was denied. (Doc. #316, p. 58). Testimony offered by Defendants at the evidentiary hearing and parolee testimony corroborates this argument. (Tr. 406:24-25, 407:11-21; Doc. #287-23, ¶ 25). In at least one instance, a parolee received no response to his appeal. (Doc. #287-21, ¶ 25).

*Mandated Remedy*

- Defendants are ordered to include in their decisions denying appeals the reasoning for the denial. Without this requirement, Defendants could arbitrarily

51

Add. 56

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 51 of 55
Appellate Case: 20-3447   Page: 58   Date Filed: 02/16/2021 Entry ID: 5004705

and routinely deny appeals of revocation decisions.  *Morrissey*, 408 U.S. at 489

(requiring an explanation for revocation decisions).  Defendants are further

ordered to amend their policies to reflect this requirement.

## III.  CONCLUSION

In sum, the Court orders the following relief:

Mandated Relief to Remedy Minimum Due Process Violations

1.  Comply with policies governing notice to parolees of their alleged violations and keep documentation of compliance (p. 10).
2.  Comply with policy governing the timely provision of the Notice of Rights form to parolees and keep documentation of compliance (p. 15).
3.  Amend the Revocation Hearing form to add space for the alleged violations to be listed (p. 17).
4.  Amend the Revocation Hearing form to include an option for parolees to provide their own counsel at revocation hearings (p. 17).
5.  Comply with policies requiring parole officers to explain the content of the Notice of Rights, Preliminary Hearing, and Revocation Hearing forms and the parole revocation process to parolees at violation interviews (p. 22).
6.  Orally offer to read the Notice of Rights form to parolees and amend policies to reflect this requirement (p. 22).
7.  Ensure parole officers stop encouraging and pressuring parolees to waive their hearings (p. 26).
8.  Disclose to parolees all evidence against them no later than five days before the revocation hearing and amend policies to reflect this requirement (p. 28).
9.  Demonstrate overall adherence to the policy requiring revocation hearings be conducted within 30 days of a parolee's return to MDOC custody, maintain documentation of compliance with this policy, and keep detailed records to account for circumstances in which the 30-day deadline is not met (p. 30).
    a.  Ensure the documentation kept measures the time between parolees' return to MDOC custody and the revocation hearing (p. 30).
10. Comply with policy requiring parolees be given the Notification of Board Action within 10 business days of the date on the Notification and maintain careful documentation of the delivery of the Notifications of Board Action to parolees (p. 32).
11. Construct and implement a policy mandating that, when a decision to revoke parole is made—regardless of whether a hearing was conducted—the Notice of Board Action must provide to the parolee a written decision outlining the evidence relied on to determine whether the parolee violated a condition(s) of parole, the mitigating circumstances considered, and reasons for revoking (p. 33).
12. Construct and implement policy requiring revocation decisions be made and Notifications of Board Action completed within a reasonable amount of time after a revocation hearing or waiver thereof (p. 33).

52

Add. 57

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 52 of 55
Appellate Case: 20-3447   Page: 59   Date Filed: 02/16/2021 Entry ID: 5004705

13. Screening Instrument:
    a. Amend the "Screening Questions to ask the Client" section of the Screening Instrument to provide space in case a parolee wishes to explain the claim of innocence (pp. 36-37).
    b. Amend the "Screening Questions to ask the Client" section of the Screening Instrument to add a screening question(s) to be asked of parolees related to potential complex mitigating circumstances, with space for parole officers to detail the alleged mitigating circumstances (p. 37).
    c. Amend the "Processing Questions for the PO – (Not to be Asked of the Client)" section of the Screening Instrument to add a processing question(s) to aid parole officers in determining whether appointment of counsel is warranted based on a timely and colorable claim that he has not committed the alleged violation (p. 39).
14. Train parole officers and other Division of Probation and Parole employees involved in and responsible for the counsel eligibility screening process to conduct the screening process in accordance with the three separate grounds set forth in *Gagnon* (p. 42).
15. Ensure parolees are informed of the right to be screened for state-funded counsel and are subsequently screened upon request before parolees decide whether to request or waive preliminary or revocation hearings and amend policies to reflect this requirement (p. 44).
16. Adhere to policies requiring parole officers and other employees of the Division of Probation and Parole responsible for the counsel eligibility screening process to administer the Screening Instrument and make counsel eligibility determinations (p. 45).
17. Construct and implement a policy requiring that a finding that a parolee is ineligible for counsel must be recorded in the appropriate and relevant records and be given to parolees in writing within a reasonable amount of time. The decision must expressly state all grounds for refusal (pp. 46-47).
18. Refrain from proceeding with revocation hearings and reincarcerating parolees who are not represented by state-funded counsel when minimum due process so requires (p. 48).
19. Adopt and implement a new policy for appointing state-funded counsel to eligible parolees and update all forms to reflect the new policy (p. 49).
20. Make the appeal form available to parolees whose decisions are appealable on the same day they receive their decision and amend policies to reflect this requirement (p. 51).
21. Include in decisions denying appeals the reasoning for the denial and amend policies to reflect this requirement (pp. 51-52).

Suggested Changes to Avoid Prolonged Litigation

1. Amend policies to clarify that in all cases, parolees must receive their violation report at their initial violation interviews, regardless of whether the five or ten-day timeframe applies (p. 9).
2. Ensure all forms, reports, and other relevant documents include space to state the date on which the document was provided or administered (p. 10).
3. Notice of Rights Form:
    a. Make clear on the Notice of Rights form that if eligible, parolees will be appointed counsel at no cost to parolees (p. 17).

53

Add. 58

Case 2:17-cv-04149-SRB   Document 323   Filed 11/12/20   Page 53 of 55
Appellate Case: 20-3447   Page: 60   Date Filed: 02/16/2021 Entry ID: 5004705

b. Define the criteria that qualify a parolee for state-funded counsel on the Notice of Rights form (pp. 17-18).

c. Clarify on the Notice of Rights form that "preliminary hearing" and "probable cause hearing" are synonymous or omit the term "probable cause hearing" from the Notice of Rights form (p. 18).

d. Correct the language on the Notice of Rights form that states even if parolees waive their preliminary hearing, they "*will* still have a revocation hearing before the court or Parole Board," to accurately state parolees "*may*" have a revocation hearing if they so choose (p. 18).

e. Change the language on the Notice of Rights form that incorrectly advises parolees that the copy of the alleged violations they will receive is called the "Notice of Rights," to the correct terminology, which is "violation report" (p. 18).

f. Ensure language on the Notice of Rights form conveys accurate expectations to parolees and accurately reflects the timeframe within which the initial violation interview with a parole officer will take place (five to ten business days after the parolee's arrest, according to Defendants' policies) (pp. 18-19).

g. Use headings on the Notice of Rights form to differentiate between the preliminary hearing and the revocation hearing and ensure parolees understand they have a right to both (p. 19).

h. Organize the Notice of Rights form in a more accessible way, such as by first describing the preliminary hearing and next describing the revocation hearing and by moving the section describing the right to counsel to a section below the hearing descriptions (p. 19).

i. Make the instructions for parolees to submit witness names and contact information to the parole officer more precise, to include the manner in which to submit such information to the parole officer (p. 19).

4. Screening Instrument:

a. List sequentially the processing questions that correspond with the third ground that presumptively qualifies a parolee for counsel—inability to effectively speak for oneself—which are currently numbered as questions one and three (p. 38).

b. Move the four processing questions that correspond with the second ground—complex mitigating circumstances—questions 2(a) – 2(d) up to the "Screening Questions to ask the Client" section of the Screening Instrument pertaining to the second ground (p. 39).

c. Add an option to the processing questions(s) that correspond with the second ground for the parole officer to check "yes" or "no" in response to whether complex mitigating circumstances exist and direct the parole officer to secure state-funded counsel when required (p. 39).

d. Add an option to the processing question(s) that correspond with the first ground for the parole officer to check "yes" or "no" in response to whether the parolee contests a violation(s) and direct the parole officer to secure state-funded counsel when required (pp. 39-40).

5. Include on the Notice of Board Action for decisions that are not subject to appeal the reason for which the decision is unappealable (p. 51).

Accordingly, Defendants are hereby **ORDERED** to comply with and implement the relief set forth above.

Defendants are further **ORDERED** to keep documentation of their compliance with their policies and this Order.

Defendants are further **ORDERED** to train all Division of Probation and Parole employees involved in parole revocation proceedings to carry out the revocation process in compliance with this Order and the policies and procedures discussed herein.

As discussed briefly in this Order, the Court anticipates that as Defendants implement the relief required in this Order, they will begin to conduct hearings at a higher rate. Should constitutional issues arise regarding the administration of hearings and the governing policies in the future, or other constitutional issues come to light, the Court will address them at such time. The Court will retain jurisdiction over the case until Defendants' parole revocation policies, procedures, and practices afford parolees the due process rights mandated by *Morrissey* and *Gagnon*. The Court is confident that given the great strides taken by Defendants, jurisdiction over this matter will be extremely limited.

The Court will contact the parties to schedule an initial status hearing to discuss implementing the remedies set forth in this Order.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH, JUDGE
UNITED STATES DISTRICT COURT

DATED: November 12, 2020

Add. 60

# NOTICE OF RIGHTS DURING THE REVOCATION PROCESS

## YOU MAY REQUEST THAT THE DEPARTMENT OF CORRECTIONS REPRESENTATIVE READ THIS DOCUMENT TO YOU

### I.     OVERVIEW OF THE PRELIMINARY AND REVOCATION HEARING PROCESS

You have been arrested and are accused of violating the terms of your supervision. Your violation report describes the violation(s) you are accused of committing. This document describes your rights during the revocation process.

You have the right to a probable cause hearing in front of an officer who will not be your Probation and Parole Officer or your Probation and Parole Officer's immediate supervisor. This is an informal proceeding and is not your final revocation hearing. The hearing officer acts as a neutral fact-finder. The hearing officer merely determines if there is probable cause to believe you violated the terms of your supervision. If probable cause is found, the Court or Parole Board may schedule a revocation hearing.

You may have a right to counsel, if you desire counsel, you are free to obtain your own attorney to represent you. If you are on Missouri probation and cannot afford an attorney, you may tell the judge you would like counsel and the court will determine your eligibility. If you are on Missouri parole, conditional release or an Interstate probation or parole case and cannot afford counsel, you may tell your Probation and Parole Officer that you would like counsel and they will determine whether you are eligible. If you are on Missouri parole, conditional release or an Interstate probation or parole case and your request for counsel is denied, you will receive a written explanation for the denial.

During a revocation hearing, the court or Parole Board will determine by preponderance of the evidence whether you violated the terms of your supervision, and if so, whether your probation or parole should be revoked.

If you are on probation, you can choose to waive the preliminary hearing.

If you are an Interstate probation or parole case, you must sign a written admission in order to waive the preliminary hearing.

If you are on parole or conditional release, you can choose to waive either or both the preliminary and/or the revocation hearing.

**What is probable cause?**

Probable cause is whether a reasonable person would think there is enough evidence to believe you may have violated the terms of supervision.

**What does preponderance of the evidence mean?**

Preponderance of the evidence is whether it is more likely than not you violated the terms of supervision.

### II.     AFTER INITIAL ARREST

You will receive a written copy of your alleged violation, this is called the Notice of Rights.

Add. 61

You have the right to waive your hearing. If you waive a preliminary hearing, this does not mean you have pled guilty to your probation or parole violation. You will still have a revocation hearing before the court or Parole Board.

If you want to have witness testimony at your preliminary hearing, you must include your witnesses' names and contact information on a separate piece of paper and give it to the PO.

## III.  PRELIMINARY AND REVOCATION HEARINGS

During the preliminary hearing, you have the right to:

- Have counsel represent you, or be appointed counsel in some cases, as explained above
- Remain silent regarding any potential criminal charges. You do not have to admit to any wrongdoing and you have the right to refuse to answer any questions about your alleged violation(s)
- Tell your side of the story, if you think it will help your case
- Present witnesses, in person, or by phone through coordination with the Parole Officer.
- Ask questions of anyone who testifies at the hearing, unless the hearing officer specifically finds there is good cause for not allowing you to do so
- Present documents related to the alleged violation

If you are on probation, the judge will control when and how your revocation hearing takes place.

If you are on parole, you have the same rights at the revocation hearing that you have at the preliminary hearing. In addition, after the Parole Board makes a decision after the revocation hearing, you will receive written notice to include the evidence the Parole Board relied on in making its decision.

## IV.  PAROLE BOARD REVOCATION PROCESS TIMELINES

The following timelines are designed to maintain an efficient disposition of cases and to prevent you from experiencing unnecessary incarceration due to needless delays.

After you are arrested a Probation and Parole Officer should meet with you within 5 business days.

Your preliminary hearing will occur within 10 business days of the initial interview with your Probation and Parole Officer. The Board may continue the hearing if additional information is needed.

If you are on probation, the judge will determine when you will be brought into court and if or when a revocation hearing will be scheduled.

If you are on parole, the Parole Board will hold a revocation hearing within 30 business days after return to a Reception and Diagnostic Center.

_____     _____     _____
Client Signature                           DOC Number        Date

_____                    _____
Witness Signature                                              Date

Placed in client
file.

Add. 62

July 3, 2019

Case 2:17-cv-04149-SRB   Document 323-1   Filed 11/12/20   Page 2 of 2
Appellate Case: 20-3447      Page: 64      Date Filed: 02/16/2021 Entry ID: 5004705



STATE OF MISSOURI
DEPARTMENT OF CORRECTIONS
DIVISION OF PROBATION AND PAROLE
**REQUEST FOR OR WAIVER OF PRELIMINARY HEARING**

| CLIENT NAME | DOC NUMBER |
|---|---|
| | |

**NOTICE OF RIGHT TO COUNSEL AT A PRELIMINARY HEARING**

You have a right to a preliminary hearing. You may be represented at your hearing by counsel of your choice, selected and paid for by you. You will receive written notice of the hearing and it is up to you to ensure your counsel has the information and is able to appear and represent you.

If you are on Probation for a Missouri case and cannot afford counsel, you may tell the judge you would like counsel and the court will determine your eligibility.

If you are on Missouri Parole, Conditional release or an Interstate Probation or Parole case, and cannot afford counsel, you may tell your Probation and Parole Officer that you would like counsel and they will screen you for eligibility. If your request for counsel is denied, you will receive a written explanation for the denial.

You may also decide to waive your right to counsel.

I will provide my own counsel_____client's initials,

Request I be screened for eligibility to have counsel represent me at the preliminary hearing_____client's initials, *OR*

Request to waive right to counsel_____client's initials

**CLIENT'S REQUEST/WAIVER OF PRELIMINARY HEARING:**

Having been fully informed and having full knowledge of these rights in the aforementioned section, I do hereby,

☐ **REQUEST** a preliminary hearing _____Client's Initials

☐ **WAIVE** a preliminary hearing_____Client's Initials

**INTERSTATE CASES:** Clients must sign a written admission in order to waive their hearing.

INTERSTATE CLIENT STATEMENT:

I,_____admit to violating all or some of the below listed conditions of my supervision by:

**VIOLATION(S)**
The charges brought against you consist of the following violation(s) of the conditions of your probation, parole or conditional release:

| CLIENT SIGNATURE | DATE | WITNESS SIGNATURE | DATE |
|---|---|---|---|

**NOTICE OF PRELIMINARY HEARING**

| THIS IS TO INFORM YOU, THAT AT YOUR REQUEST, A HEARING WILL BE HELD | DATE |
|---|---|

| TIME | LOCATION |
|---|---|

| CLIENT SIGNATURE | DATE | WITNESS SIGNATURE | DATE |
|---|---|---|---|

CLIENT PRIVATE COUNSEL OR APPOINTED COUNSEL (IF ELIGIBLE):

HEARING OFFICER:

The Parole Board will reach a decision within a reasonable amount of time. The client will receive a written notice of the Board's decision once the notice can be prepared and delivered.

03-12-2020

Add. 63

Case 2:17-cv-04149-SRB   Document 323-2   Filed 11/12/20   Page 1 of 1
Appellate Case: 20-3447    Page: 65    Date Filed: 02/16/2021 Entry ID: 5004705

STATE OF MISSOURI
DEPARTMENT OF CORRECTIONS
DIVISION OF PROBATION AND PAROLE
## REQUEST FOR OR WAIVER OF REVOCATION HEARING

| CLIENT NAME | DOC NUMBER | DATE |
|---|---|---|
| | | |

### NOTICE OF RIGHT TO COUNSEL AT REVOCATION HEARING

You have a right to a revocation hearing and your parole/conditional release may be revoked at your hearing. You may be represented at your hearing by counsel of your choice, selected and paid for by you. You will receive written notice of the hearing and it is up to you to ensure your counsel has the information and is able to appear and represent you. If you cannot afford counsel, you may tell your Parole Officer that you would like counsel and they will screen you for eligibility. If your request for counsel is denied, you will receive a written explanation for the denial. You may also decide to waive your right to counsel.

Request I be screened for eligibility to have counsel represent me at the revocation hearing _____ Initials **OR**

**Request to waive right to counsel** _____ Initials

### CLIENT'S REQUEST/WAIVER OF REVOCATION HEARING:

Having been fully informed and having full knowledge of these rights in the aforementioned section, I do hereby,

☐ **WAIVE** a revocation hearing _____ Initials

☐ **REQUEST** a revocation hearing _____ Initials

**By Signing this form, I agree that I have been provided the following:**

A copy of the Notice of Rights to Revocation Process form,

Any Violation Reports pertaining to the cited violations, and

Preliminary Hearing was:

☐ Waived

☐ Held (date:_____)

| CLIENT SIGNATURE | DATE | WITNESS SIGNATURE | DATE |
|---|---|---|---|
| | | | |

### NOTICE OF REVOCATION HEARING

| THIS IS TO INFORM YOU, THAT AT YOUR REQUEST, A HEARING WILL BE HELD | DATE |
|---|---|
| | |

| TIME | LOCATION | | |
|---|---|---|---|
| | | | |

| CLIENT SIGNATURE | DATE | WITNESS SIGNATURE | DATE |
|---|---|---|---|
| | | | |

| CLIENT PRIVATE COUNSEL: |
|---|
| |

| APPOINTED COUNSEL – IF ELIGIBLE |
|---|
| |

The Parole Board will reach a decision within a reasonable amount of time. The offender will receive a written notice of the Board's action as soon as the notice can be prepared and delivered.

4-1-2019

Add. 64



| Client Name: | DOC ID # | Date of Screening |
|---|---|---|
| PPO Conducting Screening: | | Location of Screening |

**Screening Questions to ask the Client**

1) Are you contesting any of the alleged violations?  ☐ Yes  ☐ No

2) Do you have any problems understanding the English Language?  ☐ Yes  ☐ No
   a) If client answers yes, explain:

3) What is your highest level of education completed:
   ☐ Elementary  ☐ Junior High/Middle School  ☐ High School/HSE  ☐ College

4) Do you have any history of mental illness or are you now suffering from any mental illness?
   ☐ Yes  ☐ No
   If yes, explain:

5) Have you consumed any alcohol, drugs, or any medication within the last 48 hours?  ☐ Yes  ☐ No
   a) If yes, list all substances client consumed:

**Processing Questions for the PO – (Not to be Asked of the Client)**

1) Does client appear to be oriented to time, place, and nature of interview?  ☐ Yes  ☐ No
   List any observations:

2) Are the issues to be adjudicated during the revocation complex and are there substantial mitigating circumstances?

   a) Could the alleged violations have been avoided?

   b) What circumstances caused the alleged violation?

   c) Is there a reason the violation will not happen again?

   d) Summarize mitigating factors for each violation, what evidence makes the violations less believable or less severe?

   e) If the issues to be adjudicated at the revocation hearing are complex and there are substantial mitigating circumstances, have the client complete a public defender application.

Add. 65

3) Based on the client's understanding of the English Language, education, presence or absence of mental illness, and consumption or lack thereof of alcohol, drugs, or medication, and your physical observations, is the client incompetent to proceed?   ☐   Yes   ☐   No

   a) If your answer is "Yes", have the client complete a public defender application.

   b) If your answer is "No", list the reasons:

If the Public Defender application was faxed to the Public Defender's Office, what date:

May 1, 2020

Add. 66

# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

STEPHANIE GASCA, et al.,                    )
                                            )
     Plaintiffs,                          )
                                            )
v.                                          )    Case No. 17-cv-04149-SRB
                                            )
ANNE PRECYTHE, Director of the Missouri,    )
Department of Corrections, et al.,          )
                                            )
     Defendants.                          )

## ORDER

Before the Court is Defendants' Motion to Dismiss Amended Class Action Complaint. (Doc. #25). For the following reasons, the motion is DENIED.

## I.    Background

This suit challenges the Missouri Department of Corrections ("MDOC") and its Division of Probation and Parole ("Parole Board") parole revocation practices. The named Plaintiffs are six parolees currently in the custody of MDOC. Each was taken into custody by parole officials for allegedly violating the terms of their parole, and their parole was revoked.

The named Plaintiffs, on behalf of the proposed class, allege "Defendants systematically fail to screen parolees to determine whether they are eligible for counsel [during the parole revocation proceedings,] at cost to the State, as required under *Gagnon v. Scarpelli*," 411 U.S. 778 (1973).[1] (Doc. #23, p. 37). Plaintiffs allege Defendants "fail to appoint counsel to those

---

[1] While judges have great discretion when deciding whether to appoint counsel in parole revocation hearings, fundamental fairness requires the appointment of counsel when: (1) a parolee has requested counsel, (2) makes a timely and colorable claim that either she has not violated her parole or that substantial reasons justify or mitigate the violation of parole, and (3) the reasons underlying such a claim are complex or otherwise difficult to develop or present. If it is a close call, the judge should consider whether the parolee can effectively speak for herself. *Gagnon v. Scarpelli*, 411 U.S. 778, 786-90 (1973). While *Gagnon* dealt with revocation of probation, the Supreme Court expressly said there was no "difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation." *Id.* at 782.

Add. 67

parolees who do qualify." (Doc. #23, p. 37). Additionally, Plaintiffs allege, "Defendants . . . fail to ensure that parolees receive adequate notice of the rights to which they are entitled in the parole revocation process. As a result of Defendants' policies, practices, and customs, parolees are unable to speak on their own behalf, present evidence, and cross-examine witnesses." (Doc. #23, p. 37). Specifically, Plaintiffs allege Defendants regularly commit, *inter alia*, the following constitutional violations: failure to inform parolees of their rights (Doc. #23, ¶ 57) or next steps (Doc. #23, ¶ 59); failure to protect parolees' rights to be protected from an involuntary waiver of a preliminary or final hearing (Doc. #23, ¶¶ 57-60); failure to allow parolees to present witnesses and/or evidence at their hearing (Doc. #23, ¶¶ 64-66); failure to provide adequate notice of hearings to parolees (Doc. #23, ¶ 69); and failure to screen and subsequently provide counsel for those parolees who qualify under *Gagnon* (Doc. #23, ¶¶ 72-92).

Plaintiffs sue eight Defendants in their official capacity, including the Director of MDOC, the Chairman of the Parole Board, and Parole Board members. Two named Defendants are no longer members of the Parole Board. Plaintiffs request: (1) declaratory relief, "declaring that the policies, practices, and conduct described in this Complaint are in violation of Plaintiffs' rights and the class they represent under the Fourteenth Amendment . . . ," and (2) injunctive relief, "enjoin[ing] Defendants, their agents, employees, and all persons under their control from subjecting Plaintiffs and the class they represent from the unlawful policies, practices, and conduct described in this Complaint." (Doc. #23, p. 37). Plaintiffs also request attorney's fees and any other relief this Court deems appropriate. Defendants filed this motion to dismiss the amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for lack of subject matter jurisdiction under Rule 12(b)(1).

2

Add. 68

## II.     Legal Standard

Dismissal under Rule 12(b)(6) is proper where the complaint fails to state a claim upon which relief can be granted. *Cook v. ACS State & Local Solutions, Inc.*, 663 F.3d 989, 992 (8th Cir. 2011). In ruling on a motion to dismiss, the "court accepts as true all factual allegations but is not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quotations omitted). The Court also construes all reasonable inferences in favor of the non-moving party. *Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint with "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not survive a motion to dismiss under Rule 12(b)(6). *Id.* at 678. Both parties agree that the standards for assessing a motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction on the face of the complaint are the same as those applied to a Rule 12(b)(6) motion.

## III.     Discussion

Defendants make eight arguments: (1) Plaintiffs' claims are mere speculation; (2) Plaintiffs lack standing with regard to their claim of failure to provide counsel; (3) Plaintiffs' claims are barred by judicial immunity; (4) Plaintiffs' claims for injunctive and declaratory relief fail because Plaintiffs have an adequate remedy at law; (5) Plaintiffs' claims should be dismissed under the *Younger* abstention doctrine; (6) the Eleventh Amendment bars any of Plaintiffs' claims for damages; (7) quasi-judicial immunity bars any of Plaintiffs' claims for damages; and (8) two Defendants are no longer state officials so Plaintiffs' claims against them should be dismissed.

### a. Mere Speculation

Defendants argue, "Plaintiffs' allegations that [D]efendants will fail to ensure [P]laintiffs are afforded appropriate process and that [P]laintiffs will be at risk for arbitrary and capricious processes relating to any future alleged parole violations . . . are nothing more than speculative accusations without a factual basis."  (Doc. #25, p. 3).  Defendants argue that Plaintiffs' Amended Complaint should be dismissed because "Plaintiffs offer no evidence that violations or revocation proceedings will occur in the future" and "more than 'bare accusations' must be made to escape a Motion to Dismiss."  (Doc. #25, pp. 3-4).

In response, Plaintiffs argue there is nothing speculative about the assertions in this suit because "for each named Plaintiff[,] the Amended Complaint carefully sets forth the ways in which they personally are being negatively impacted by the standing policies and practices of MDOC's Parole Board . . . ."  (Doc. #33, p. 6).  Plaintiffs argue that Defendants "try to frame Plaintiffs' single-count civil rights complaint as focusing merely on potential future proceedings or revocation proceedings that will occur in the future."  (Doc. #33, p. 7) (internal quotations omitted).

This Court agrees with Plaintiffs.  Defendants' position overlooks "at least 150 additional paragraphs of detailed factual allegations – and the hundreds of pages of attached exhibits – relating to the named Plaintiffs . . . and the real and material harms they now suffer and will suffer into the future . . . ."  (Doc. #33, p. 6).  Additionally, Plaintiffs' Amended Complaint includes numerous factual allegations regarding *past* harms that undermine Defendants' contention that Plaintiffs' claims are "nothing more than speculative accusations without a factual basis."  (Doc. #25, p. 3).

Case 2:17-cv-04149-SRB   Document 50   Filed 12/15/17   Page 4 of 14
Appellate Case: 20-3447   Page: 72   Date Filed: 02/26/2020 Entry ID: 4883619   November 19 2020 p61

Even if the Amended Complaint did not include these past factual allegations, allegations of future harm do not necessarily deem an otherwise factually-sufficient complaint merely "bare accusations," unable to withstand a motion to dismiss. The Supreme Court has stated that future injury may satisfy the "injury-in-fact" requirement for Article III standing "if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 2341 (2014) (internal quotations and citations omitted). This same principle surely must apply to the sufficiency of the factual pleadings. Otherwise, the Supreme Court's declaration that future injury may satisfy Article III in certain circumstances would never be realized. Once the individual Plaintiffs are on parole, this Court finds there is a substantial risk that future injury may occur, as required by *Susan B. Anthony List*, given Plaintiffs' histories of revocation and MDOC's past treatment of Plaintiffs. Therefore, this Court finds that both the past and future alleged harms put forth by Plaintiffs are more than "mere speculation."

Defendants also attack Plaintiffs' lack of evidence showing "that violations or revocation proceedings will occur in the future, much less [that those] proceedings [] would qualify as 'arbitrary and capricious processes.'" (Doc. #25, pp. 3-4). Evidence is neither required nor expected at the pleading stage. It has been long-settled that allegations as written are assumed to be true so long as they are plausible. *Twombly*, 550 U.S. at 556. Plaintiffs have met this threshold requirement. Thus, Plaintiffs' claims are not dismissed as mere speculation.

### b. Standing

Defendants argue that Plaintiffs lack standing to bring a claim of failure to provide counsel. To establish standing under Article III of the Constitution, a plaintiff must demonstrate: (1) injury-in-fact; (2) a causal connection between the alleged injury and the

5

Add. 71

conduct complained of (in other words, "the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court"); and (3) a likelihood that the alleged injury will not be redressed by a decision in plaintiff's favor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted). This Court will address each of these requirements.

Defendants do not contend a lack of injury-in-fact at this stage. With respect to the second (fairly traceable injury) and third (redressability) elements, Defendants argue, "Plaintiffs have not asserted what legal authority Defendants possess that would permit them to provide counsel to alleged parole violators." (Doc. #25, p. 4). Thus, Defendants argue, Plaintiffs have not demonstrated the requisite "showing of the legal basis for [their] claim[s]." (Doc. #49, pp. 2-3). Defendants further argue, "In the absence of such authority, the injury alleged here is not 'fairly . . . trace[able]' to any action of the [D]efendants and there is no likelihood that the alleged injury can be redressed by a decision in [P]laintiffs' favor." (Doc. #25, p. 5). This Court disagrees that the alleged injury is not fairly traceable to any action of the Defendants.

To support their position, Defendants cite *Balogh v. Lombardi*, 816 F.3d 536, 542 (8th Cir. 2016). *Balogh*, relying on *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952 (8th Cir. 2015), found the plaintiff's injury not fairly traceable to the defendant because he did not possess any statutory authority to enforce the law at issue. *Id.* These cases are inapplicable. In *Digital Recognition Network* the plaintiffs (companies in the automatic license plate reader technology industry) brought suit against the Arkansas attorney general and governor, contending that the Arkansas Automatic License Plate Reader System Act ("Act") violated their First Amendment speech rights. 803 F.3d at 954-55. The Eighth Circuit found no Article III

Case 2:17-cv-04149-SRB   Document 50   Filed 12/15/17   Page 6 of 14
Appellate Case: 20-3447   Page: 74   Date Filed: 02/26/2020 Entry ID: 4883119   November 19 2020 p63

case or controversy, reasoning that because the Act provides for enforcement *only* through private actions for damages, the attorney general and governor had no authority to enforce the Act and therefore did not cause injury to the plaintiffs. *Id.* at 958.

Such is not the case here. First, no statute or Parole Board practice limits the enforcement of these allegedly violated constitutional rights to a specific group or entity by, for example, providing exclusively for a private cause of action for damages. Second, in *Digital Recognition Network*, the Eighth Circuit noted it had previously found Article III standing where the state official had "some connection with the enforcement" of a state law or practice.[2] *Id.* at 957. Plaintiffs argue three connections between the Defendants in this case and the enforcement of a parolee's constitutional rights as guaranteed by Supreme Court precedent. Mo. Rev. Stat. §§ 217.035 (Director's Powers and Duties); 217.040 (Rulemaking Authority); 217.655 (Probation and Parole Board; General Duties).[3] Under Eighth Circuit precedent these connections are strong enough to satisfy the second element for Article III standing. *See 281 Care Cmte. v. Arneson*, 638 F.3d 621, 632-33 (8th Cir. 2011) (collecting Eighth Circuit cases).

Plaintiffs have also satisfied the third element (redressability) required to establish Article III standing. Defendants argue that because Plaintiffs do not point to any statute granting the MDOC and members of the Parole Board the direct authority to appoint counsel, there can be no redressability. This Court disagrees. Plaintiffs asks this Court to, *inter alia*:

> Adjudge and declare that the policies, practices, and conduct described in this Complaint are in violation of the rights of Plaintiffs and the class they represent under the Fourteenth Amendment of the United States Constitution; [p]reliminarily and permanently enjoin the Defendants, their agents, employees,

---

[2] "This court concluded in one case that where state officials had 'some connection with the enforcement' of a state law for purposes of the *Ex Parte Young* doctrine, then the case or controversy requirement of Article III was satisfied." *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957 (8th Cir. 2015) (citing *Citizens for Equal Prot. v. Bruning*, 455 F.3d 859, 864 (8th Cir. 2006)).

[3] Plaintiffs erroneously cite to Mo. Rev. Stat. § 217.255 (Probation and Parole Board; General Duties). However, this section title is associated with § 217.655.

7

Add. 73

Case 2:17-cv-04149-SRB    Document 50    Filed 12/15/17    Page 7 of 14
Appellate Case: 20-3447    Page: 75    Date Filed: 02/26/2020 Entry ID: 4886919  November 19 2020 p64

and all persons under their control from subjecting Plaintiffs and the class they represent from the unlawful policies, practices, and conduct described in this Complaint . . . .

(Doc. #23, pp. 37-38). Plaintiffs need not identify a single statute granting Defendants authority to appoint counsel to establish redressability. In fact, "Plaintiffs need not show that a favorable decision will ensure redress; it is enough that a decision is *likely* to result in redress." *Church v. Missouri*, No. 17-cv-04057-NKL, 2017 WL 3383301, at *19 (W.D. Mo. July 24, 2017) (citing *Lujan*, 504 U.S. at 561) (internal quotations omitted) (emphasis added).

Because Plaintiffs have identified several provisions of Missouri law granting Defendants discretion to set policy and procedure related to parole revocation, it is likely that a judgment from this Court will result in redress. Even assuming Defendants do not have any authority to provide counsel, there are numerous possible paths of equitable relief that this Court could impose which would redress Plaintiffs' alleged injuries, including, but not limited to, those proposed by Plaintiffs in their response.[4] (Doc. #33, p. 11). Thus, Plaintiffs have established redressability as required by Article III. Because Plaintiffs have met all requirements for Article III standing, Plaintiffs have standing to bring this suit.

### c. Judicial Immunity

Defendants argue Plaintiffs' claims are barred by quasi-judicial immunity, a sub-doctrine of judicial immunity, because the "parole decision making process is a quasi-judicial process that brings those who make these decisions as part of their official duties within protections available to judges." (Doc. #25, p. 6). To support their position Defendants cite

---

[4] "Relatedly, possible paths of equitable relief here include this Court declaring that continued parole revocation proceedings without access to or presence of counsel for indigent defendants violate the constitution. Or, the Court could enjoin Missouri parole proceedings from moving forward where a right to appointed counsel is shown and none has been provided. This Court can also, as part of an equitable remedy scheme, order the Parole Board to stop affirmatively misinforming parolees about the right to counsel, banning attorney presence from preliminary hearings, and precluding lawyers from behaving as lawyers at final hearings." (Doc. #33, p. 11).

8

Add. 74

Case 2:17-cv-04149-SRB   Document 50   Filed 12/15/17   Page 8 of 14
Appellate Case: 20-3447   Page: 76   Date Filed: 02/26/2020 Entry ID: 4882519   November 19 2020 p65

*Evans v. Dillahunty*, 711 F.2d 828, 830-31 (8th Cir. 1983), but that case is distinguishable from the present case. In *Evans* the plaintiff alleged that erroneous statements caused the parole board official to reject the parole panel's recommendation, which resulted in an extended sentence for plaintiff. *Id.* The Eighth Circuit noted that "in determining the type of immunity to be accorded to a particular official, courts should compare the officials['] functions with those of judges." *Id.* at 830. The Court blanketed the parole board official with immunity for review of the parole panel's recommendation and decision to deny parole because "[p]arole officials in deciding to grant, deny, or revoke parole, perform functions comparable to those of judges." *Id.* at 831. Here, however, the conduct challenged by Plaintiffs does not involve the "deci[sion] to grant, deny, or revoke parole." *Id.* Plaintiffs challenge Defendants' failure to provide counsel as required by the Supreme Court. This function is not comparable to that of a judge. Defendants did not provide any case law in their opening motion or reply supporting their assertion that parole board officials are entitled to quasi-judicial immunity when they allegedly deny constitutionally-guaranteed procedural rights. Accordingly, Defendants are not protected by quasi-judicial immunity.

### d. Adequate Remedy at Law

Defendants argue, "Plaintiffs' claims for injunctive relief fail because they cannot show an inadequate legal remedy." (Doc. #25, p. 6). Defendants argue that Plaintiffs should bring an appellate remedy under Mo. Stat. Rev. § 217.670.3, which provides for review of Parole Board orders "as to compliance with the terms of sections 217.650 to 217.810 or any rules promulgated pursuant to each section." (Doc. #25, p. 7) (citing Mo. Stat. Rev. § 217.670.3). Specifically, Defendants argue that "[t]he types of violations asserted in this case here – parolee's rights to speak in her own behalf, present evidence, and cross-examine adverse

Case 2:17-cv-04149-SRB   Document 50   Filed 12/15/17   Page 9 of 14
Appellate Case: 20-3447      Page: 66      Date Filed: 02/26/2020 Entry ID: 4883819   November 19 2020 p66

witnesses – are the procedural due process matters that can be reviewed under this standard."

(Doc. #25, p. 7). Plaintiffs argue that Mo. Stat. Rev. § 217.670.3—by its terms—only allows

for a limited review. Mo. Stat. Rev. § 217.670.3 ("The orders of the [Parole] Board shall not be

reviewable *except* as to compliance with the terms of sections 217.650 to 217.810 or any rules

promulgated pursuant to such section.") (emphasis added).

      Lack of an adequate legal remedy is an indispensable prerequisite to equitable relief.

*Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1989). Here, Plaintiffs demonstrate a lack of an

adequate legal remedy. Contrary to Defendants' implication that Plaintiffs could seek appellate

remedies under Missouri law for all their violations, Plaintiffs allege more than just a violation

of "a parolee's rights to speak in her own behalf, present evidence, and cross-examine adverse

witnesses." (Doc. #25, p. 7). Instead, Plaintiffs complain of federal constitutional deficiencies

and violations, namely the refusal to provide counsel when required by Supreme Court

precedent. Because such violations are not fit for review under the Missouri statute, this Court

finds no adequate remedy at law for Plaintiffs' allegations.

      Defendants also argue Plaintiffs' request for declaratory relief fails. While declaratory

relief is discretionary, "an important factor in exercising that discretion is whether the

declaratory judgment plaintiff has another, more appropriate remedy." *Glover v. State Farm

Fire & Casualty Co.*, 984 F.2d 259, 261 (8th Cir. 1993). Defendants assert, "[a]n appeal [under

§ 217.670.3] by parolees who claim they were denied rights during the revocation process

would allow the court in each such appeal to assess the unique circumstances of the particular

process followed in the particular revocation at issue." (Doc. #25, p. 7). Because Plaintiffs

cannot bring their right to counsel claim under the Missouri statute, this Court finds Plaintiffs do

not have another, more appropriate remedy.

Add. 76

### e. *Younger* Abstention

Defendants argue this Court should abstain from exercising jurisdiction under *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37 (1971). *Younger* abstention doctrine applies "only if state proceedings: (1) are pending at the time of the federal action; (2) implicate important state interests; and (3) provide an adequate opportunity for raising federal constitutional questions." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). All three factors must be present for this Court to abstain. Defendants argue abstention is appropriate here because: (1) "the parole proceedings plaintiffs allege in their complaint are pending;" (2) "this case implicates an important state interest – ensuring prisoners released from incarceration subject to certain terms of release abide by those terms;" and (3) "plaintiffs here have an adequate opportunity to raise their federal procedural due process issues by review under § 217.670.3." (Doc. #25, pp. 8-9). Plaintiffs do not challenge the presence of the second factor in this case. Plaintiffs argue that the other two *Younger* factors are "entirely absent here." (Doc. #33, p. 16).

This Court begins with the third factor. "[T]he plaintiff has the burden to show that the state proceeding will not provide him an adequate remedy for his federal claim." *Hale v. Pate*, 694 Fed. Appx. 682, 684 (11th Cir. 2017). "A plaintiff has an adequate remedy for his constitutional claim . . . if he can raise his constitutional claim during the state court's review of an administrative proceeding." *Id.* (internal citations omitted). This Court finds Plaintiffs satisfied their burden. Simply put, § 217.670.3 does not allow for adequate review of Plaintiffs' complaints regarding failure to provide counsel because such a practice is not permitted to be reviewed under § 217.670.3, as explained above. Because all three factors must be present to

Case 2:17-cv-04149-SRB   Document 50   Filed 12/15/17   Page 11 of 14
Appellate Case: 20-3447   Page: 79   Date Filed: 02/26/2020 Entry ID: 4883119  November 19 2020 p68

apply *Younger* abstention, this Court does not find it necessary to address whether the first factor is present in the instant case.

To support its position, Defendants cite to *Hale v. Pate*, 694 Fed. Appx. 682 (11th Cir. 2017), which is not binding on this Court. Regardless, the case is also inapposite to the present case. Critically, plaintiff Hale brought a 42 U.S.C. § 1983 action, alleging both a violation of his Sixth Amendment right to counsel during his revocation hearing *and* the imposition of an illegal sentence on him upon revocation of his conditional release. *Id.* at 683. In the present case Plaintiffs *do not* collaterally attack their sentences; rather, their § 1983 claims are limited to certain procedural and substantive violations committed during their parole revocation hearings. This distinction is important because "a § 1983 action will not lie when a state prisoner challenges 'the fact or duration of his confinement,' and seeks either 'immediate release from prison,' or the 'shortening' of his term of confinement." *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (internal citations omitted). For this reason this Court is persuaded that the analysis in *Hale*, even though framed in abstention doctrine, is inapplicable to the present case. Additionally, unlike here, plaintiff Hale did "not claim[] that he would be unable to vindicate his claims that he is improperly incarcerated or that he did not receive the counsel that he merited in a state court forum." *Hale*, 694 Fed. Appx. at 684. Plaintiffs have demonstrated why the limited review provided under § 217.670.3 is insufficient. For the reasons stated above, the Court declines to exercise *Younger* abstention.

### f. Eleventh Amendment and Damages

Defendants argue that the Eleventh Amendment bars suits for damages against state officials in their official capacities. This Court agrees. However, here, Plaintiffs do not ask for damages. Instead, they request injunctive and declaratory relief. While Plaintiffs seek any

Case 2:17-cv-04149-SRB   Document 50   Filed 12/15/17   Page 12 of 14
Appellate Case: 20-3447   Page: 80   Date Filed: 02/26/2020 Entry ID: 4879319   November 2019 p69

other relief the Court deems proper, they have confirmed in their response that they are not seeking any money damages. (Doc. #33, p. 20). Therefore, the Court disposes of Defendants' argument as moot.

### g. Quasi-Judicial Immunity and Damages

Because Plaintiffs are not seeking any damages in this case, as stated in § f, Defendants' argument that quasi-judicial immunity bars any claims for damages is moot.

### h. Defendants No Longer Serving as State Officials

Defendants argue that because Plaintiffs sue two Defendants (Mr. Ruzucka and Mr. McSwain) only in their official capacity and these Defendants "are no longer members of the Parole Board[,] the claims against them should be dismissed." (Doc. #25, p. 10). This argument misunderstands the operation of Rule 25(d), which states:

> An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

Fed. R. Civ. P. 25(d). Because substitution is automatic, Mr. Paul Fitzwater, Mr. Ruzucka's successor, is substituted for Mr. Ruzicka. When a replacement is appointed for Mr. McSwain, the successor's name will be substituted automatically as well.

13

Add. 79

## IV.    Conclusion

Accordingly, Defendants' Motion to Dismiss Amended Class Action Complaint (Doc. #25) is **DENIED**.  Further, the Clerk of the Court is directed to substitute Mr. Paul Fitzwater for Mr. Ruzicka.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
JUDGE STEPHEN R. BOUGH
UNITED STATES DISTRICT COURT

DATED: <u>December 15, 2017</u>

14

Add. 80

Case 2:17-cv-04149-SRB   Document 50   Filed 12/15/17   Page 14 of 14
Appellate Case: 20-3447     Page: 82     Date Filed: 02/26/2020 Entry ID: 4878059 November 19 2020 p71

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| STEPHANIE GASCA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-04149-SRB |
| | ) | |
| ANNE PRECYTHE, Director of the Missouri, | ) | |
| Department of Corrections, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Plaintiffs' Renewed Motion for Class Certification.  (Doc. #111).  For the following reasons the motion is GRANTED.

## I.      Background

This lawsuit challenges the parole revocation policies and procedures of the Missouri Department of Corrections and its Division of Probation and Parole.  Plaintiffs allege the revocation policies and procedures violate their rights "under the Due Process Clause of the Fourteenth Amendment . . . as articulated in *Gagnon v. Scarpelli*, 411 U.S. 778 (1973) and *Morissey v. Brewer*, 408 U.S. 471 (1972)."  (Doc. #113, p. 5).  Plaintiffs seek prospective relief and request certification of the following class: "all adult parolees in the state of Missouri who currently face, or who in the future will face, parole revocation proceedings."  (Doc. #113, p. 6). Defendants consent to certification of the proposed class.

## II.      Legal Standard

Class certification is governed by Federal Rule of Civil Procedure 23 ("Rule 23").  Rule 23 requires that the proposed class satisfy all four prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b) to be certified.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 32 (2013);

Add. 81

*Blades v. Monsanto Co.*, 400 F.3d 562, 568–69 (8th Cir. 2005).  Rule 23(a) contains four requirements applicable to all proposed classes: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the absent class members (adequacy).  Fed. R. Civ. P. 23(a).  District courts must engage in a rigorous analysis to determine whether the prerequisites of Rule 23 have been satisfied.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

Plaintiffs seek certification under Rules 23(b)(1)(A) and (b)(2).  A class may be certified under Rule 23(b)(1)(A) if "prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class[.]"  Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"

## III.    Discussion

The Court has conducted a rigorous analysis and finds that the proposed class satisfies the Rule 23(a) requirements of numeorsity, commonality, typicality, and adequacy.  The Court further finds that litigating class members' claims individually would "create a risk of inconsistent or varying adjudications . . . that would establish incompatible standards of conduct" for Defendants' parole revocation proceedings.  Fed. R. Civ. P. 23(b)(1)(A).  Moreover, Defendants' parole revocation policies and procedures "apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a

2

Add. 82

whole." Fed. R. Civ. P. 23(b)(2).  The Court also notes that Defendants filed no opposition to Plaintiffs' Renewed Motion for Class Certification, and Defendants consent to class certification.

## IV.    Conclusion

Accordingly, Plaintiffs' Renewed Motion for Class Certification (Doc. #111) is GRANTED.  It is hereby

**ORDERED** that pursuant to Federal Rules of Civil Procedure 23(a), (b)(1)(A), and (b)(2), the Court certifies this matter as a class action.  The class is defined as follows:

> All adult parolees in the state of Missouri who currently face, or who in the future will face, parole revocation proceedings.

**IT IS FURTHER ORDERED** that Mildred Curren, Timothy Gallagher, Stephanie Gasca, Kenneth Hemphill, Jesse Neely, Soloman Warren, and Amber Wyse are designated as the Class Representatives.

**IT IS FURTHER ORDERED** that Locke E. Bowman, Sheila A. Bedi, and Amy E. Breihan will serve as Class Counsel.

**IT IS FURTHER ORDERED** that the parties meet and confer within fourteen (14) days to arrange a court hearing on how to proceed with the timing of class notifications.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
JUDGE STEPHEN R. BOUGH
UNITED STATES DISTRICT COURT

DATED: January 4, 2019

3

Add. 83

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| STEPHANIE GASCA, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-04149-SRB |
| | ) | |
| ANNE PRECYTHE, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Before the Court is Defendants' Motion to Strike Plaintiffs' Expert Designation and

Exclude Testimony of that Expert at Trial. (Doc. #128). For the following reasons, the motion

is GRANTED IN PART and DENIED IN PART.

### I.     Background

This suit challenges the parole revocation policies and procedures of the Missouri

Department of Corrections ("MDOC") and its Division of Probation and Parole ("DOPP")

(collectively "Defendants"). Plaintiffs, a class comprised of "all adult parolees in the state of

Missouri who currently face, or who in the future will face, parole revocation proceedings,"

allege Defendants' parole revocation process violates parolees' rights "under the Due Process

Clause of the Fourteenth Amendment . . . ." (Doc. #113, p. 5). Plaintiffs seek prospective relief

only. Plaintiffs retained David Muhammad, Executive Director of the National Institute for

Criminal Justice Reform, to provide an expert opinion regarding the parole revocation process in

Missouri. Defendants now move the Court to exclude Muhammad's report and testimony,

arguing his opinion "will not help the Court to understand the evidence or to determine any fact

in issue, is not the product of reliable principles and methods, and is not admissible." (Doc.

#128, p. 3).

Add. 84

## II.    Legal Standard

The admission of expert testimony is governed by Federal Rule Evidence (FRE) 702. *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006). FRE 702 permits expert testimony "if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the witness has applied the principles and methods reliably to the facts of the case." In fulfilling its "gatekeeping" role, a trial court faced with a proffer of expert testimony must determine at the outset whether the evidence "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). "However, *Daubert* is meant to 'protect *juries* from being swayed by dubious scientific testimony." *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012) (emphasis in original) (quoting *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011)). "Thus, we relax Daubert's application for bench trials." *Id.*

The Eighth Circuit has held that expert testimony should be liberally admitted. *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (expert testimony should be admitted if it advances the trier of fact's understanding "to any degree"); *Lauzon v. Senco Prod., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (FRE 702 "clearly is one of admissibility rather than exclusion") (quotations omitted). As long as the expert testimony rests upon "good grounds, based on what is known," it should be tested by the adversary process with competing expert testimony and cross-examination rather than excluded at the outset. *Id.* (citing *Daubert*, 509 U.S. at 596).

Case 2:17-cv-04149-SRB    Document 139    Filed 01/24/19    Page 2 of 5
Appellate Case: 20-3447    Page: 87    Date Filed: 02/26/2020 Entry ID: 4888619   November 2019 2020 p76

## III. Discussion

Defendants argue Muhammad is not qualified as an expert due to his "lack of formal legal education or training." (Doc. #128, p. 5). Defendants argue that Muhammad's opinion "invades this Court's distinct and exclusive province to resolve questions of law" because it embraces the ultimate issue of whether Defendants' parole revocation policies and procedures are unconstitutional. (Doc. #128, p. 4). Defendants further argue that Muhammad's opinion is unreliable because it is based on a comparison of Missouri's parole revocation practices and "best practices" utilized in other states, and "is not based upon any constitutional standard[.]" (Doc. #128, p. 6).

Plaintiffs contend that Muhammad is well qualified to serve as an expert on this matter based on his "extensive experience with direct supervision and managing probation and parole systems." (Doc. #133, p. 2). Plaintiffs argue that Muhammad's expert testimony is relevant because it sheds light on the "various deficiencies within the Missouri parole revocation process" and offers standard practices for implementing constitutionally-compliant parole revocation procedures. (Doc. #133, pp. 3, 6). Plaintiffs further argue that Muhammad's testimony is reliable because it is "based on his knowledge and experience working on parole in various states, policies he has reviewed, systems he has observed directly, and his knowledge of applicable court precedent." (Doc. #133, pp. 5–7).

Defendants acknowledge that Muhammad has two decades of experience in parole supervision, but argue that Muhammad's "lack of formal legal education or training[] precludes a finding that Muhammad is qualified as an expert on this issue." (Doc. #128, p. 5). However, "Rule 702 does not rank academic training over demonstrated practical experience." *United States v. Roach*, 644, F.3d 763, 764 (8th Cir. 2011) (internal citations omitted). Muhammad

3

Add. 86

Case 2:17-cv-04149-SRB   Document 139   Filed 01/24/19   Page 3 of 5
Appellate Case: 20-3447   Page: 88   Date Filed: 02/26/2020 Entry ID: 4879019 November 2019 2020 p77

previously supervised the equivalent of a juvenile parole system in Washington, D.C., served as

the Deputy Commissioner for the New York City Department of Probation, and served as the

Chief Probation Officer in Alameda County.  Muhammad currently serves as the federal court-

appointed monitor overseeing reforms in the Illinois juvenile justice system and in that role

reports to the Illinois Department of Justice and Parole Review Board.  Muhammad also

currently serves as the federal monitor overseeing the reform of the Illinois Parole Review Board

and Department of Corrections' parole system.  These experiences, among others listed in the

Expert Witness Qualifications section of Muhammad's expert report (Doc. #128-1, pp. 13-15),

qualify Muhammad to testify as an expert in the field of parole revocation systems.

 Further, the Court finds Muhammad's expert opinion to be both reliable and relevant.  In

preparation for writing his expert report, Muhammad reviewed the Complaint and corresponding

exhibits, parole files of the named plaintiffs, parole revocation hearing videos, the MDOC 2016

Annual Report, the deposition transcript of Missouri Lead Parole Analyst Steve Mueller and the

exhibits thereto, the MDOC BOPP's Policy and Procedure Manual, a data chart of lengths of

time the named plaintiffs in this case spent in custody awaiting revocation proceedings, and

reports on parole revocation processes in states across the country.  Muhammad's knowledge of

the Missouri parole revocation process, combined with his experiences with and knowledge of

parole systems in various states will "advance [the Court's] understanding" of the existing

Missouri parole revocation process and of what Muhammad believes to be a constitutionally-

compliant parole revocation process.  *Robinson*, 447 F.3d at 110.  Moreover, while "courts must

not confuse professional standards with constitutional requirements[,] . . . expert opinion may be

relevant when determining what is obtainable and what is acceptable in corrections philosophy."

*Brown v. Plata*, 563 U.S. 493, 540 (2011).  Defendants are encouraged to further educate the

Court by cross-examining Plaintiffs' expert at trial and by offering their own competing expert testimony.

The Court agrees, however, that Muhammad's conclusion that Defendants are not affording "sufficient due process rights . . . to parolees suspected of violating the terms of their parole" is outside the scope of admissible expert testimony.  (Doc. #128-1, p. 1).  *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) ("[E]xpert testimony on legal matters is not admissible.").  Accordingly, the Court will not permit Plaintiffs' expert, or any expert in this matter, to testify at trial as to the ultimate issue of whether Missouri's parole revocation process is unconstitutional.

## IV.    Conclusion

Accordingly, Defendants' Motion to Strike Plaintiffs' Expert Designation and Exclude Testimony of That Expert at Trial (Doc. #128) is GRANTED IN PART and DENIED IN PART. David Muhammad is permitted to serve as Plaintiffs' expert and testify as to his opinions about alleged deficiencies in Defendants' current parole revocation process and the characteristics of a constitutionally-compliant parole revocation process.  Muhammad is not, however, permitted to testify as to the ultimate issue of whether Defendants' current parole revocation process is unconstitutional.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
JUDGE STEPHEN R. BOUGH
UNITED STATES DISTRICT COURT

DATED: January 24, 2019

5

Add. 88

Case 2:17-cv-04149-SRB   Document 139   Filed 01/24/19   Page 5 of 5
Appellate Case: 20-3447      Page: 90      Date Filed: 02/26/2020 Entry ID: 4879319  November 2020 p79

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### SOUTHERN DIVISION

| | |
|---|---|
| STEPHANIE GASCA, et al.,        ) | |
| ) | |
| on behalf of themselves and all similarly     ) | |
| situated individuals     ) | |
| ) | |
|       Plaintiffs,     ) | |
| ) | |
| v.     ) | Case No. 17-cv-04149-SRB |
| ) | |
| ANNE PRECYTHE, Director of the Missouri,     ) | |
| Department of Corrections, et al.,     ) | |
| ) | |
|       Defendants.     ) | |

## <u>ORDER</u>

Before the Court is Plaintiffs' Motion for Summary Judgment. (Doc. #129). The motion is GRANTED.

This lawsuit challenges the parole revocation policies and procedures of the Missouri Department of Corrections and its Division of Probation and Parole. Plaintiffs argue there is no genuine dispute as to the material facts underlying Plaintiffs' claim that Defendants' revocation policies and procedures violate their rights "under the Due Process Clause of the Fourteenth Amendment . . . as articulated in *Gagnon v. Scarpelli*, <u>411 U.S. 778</u> (1973) and *Morissey v. Brewer*, <u>408 U.S. 471</u> (1972)." (Doc. #113, p. 5). Plaintiffs seek prospective relief on behalf of a class of "all adult parolees in the state of Missouri who currently face, or who in the future will face, parole revocation proceedings." (Doc. #113, p. 6). Defendants concede that "the policies that existed at the time Plaintiffs filed their Amended Class Action complaint did not satisfy [Due Process requirements]" and that Defendants have taken "substantial corrective measures to remedy these shortcomings." (Doc. #140, p. 1).

Add. 89

The Court finds no genuine dispute of material fact and Plaintiffs are entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(a). Accordingly, Plaintiffs' Motion for Summary Judgment (Doc. #129) is **GRANTED**.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
JUDGE STEPHEN R. BOUGH
UNITED STATES DISTRICT COURT

DATED: February 27, 2019

2

Add. 90

Case 2:17-cv-04149-SRB   Document 146   Filed 02/27/19   Page 2 of 2
Appellate Case: 20-3447   Page: 92   Date Filed: 02/26/2020 Entry ID: November 19 2020 p81

```
MIME-Version:1.0
From:ecfMOW.notification@mow.uscourts.gov
To:cmecf_atynotifications@mow.uscourts.gov
Bcc:
--Case Participants: Locke E Bowman (anissa.torres1@law.northwestern.edu,
czarina.morgan@law.northwestern.edu, eraena-hart@law.northwestern.edu,
l-bowman@law.northwestern.edu), Amy Elizabeth Breihan (amy.breihan@macarthurjustice.org,
carlita.tolbert@macarthurjustice.org, felicia.thompson@macarthurjustice.org,
megan.crane@macarthurjustice.org), Megan G Crane (megan.crane@macarthurjustice.org),
Anthony Gonzalez (tony.gonzalez@ago.mo.gov), Matthew G. Kimminau (jc.li@ago.mo.gov,
matthew.kimminau@ago.mo.gov, sue.kohler@ago.mo.gov), William P. Mobley
(pat.mobley@macarthurjustice.org), Justin Moore (justin.moore@ago.mo.gov,
stephanie.rawlins@ago.mo.gov), Jeremiah Joseph Morgan, Sr (jeremiah.morgan@ago.mo.gov,
kimberly.williams@ago.mo.gov), Michael Pritchett (jcli@ago.mo.gov,
jennifer.gordon@ago.mo.gov, johnathan.cunningham@ago.mo.gov, michael.pritchett@ago.mo.gov,
zach.foster@ago.mo.gov), District Judge Stephen R. Bough
(anne_casehalferty@mow.uscourts.gov, grace_colato@mow.uscourts.gov,
joselyn_verschelden@mow.uscourts.gov, tracy_diefenbach@mow.uscourts.gov)
--Non Case Participants: Daniel S. Margolies (margoliesd@kcur.org)
--No Notice Sent:

Message-Id:7024433@mow.uscourts.gov
Subject:Activity in Case 2:17-cv-04149-SRB Gasca, et al v. Precythe, et al Order on Motion
to Strike
Content-Type: text/html
```

**U.S. District Court**

**Western District of Missouri**

**Notice of Electronic Filing**


The following transaction was entered on 6/10/2020 at 10:03 AM CDT and filed on 6/10/2020

| | |
|---|---|
| **Case Name:** | Gasca, et al v. Precythe, et al |
| **Case Number:** | 2:17–cv–04149–SRB |
| **Filer:** | |
| **Document Number:** | 299(No document attached) |

**Docket Text:**
 **Before the Court is a Motion to Strike Inadmissible Exhibits Attached to Plaintiffs' Pretrial Brief. (Doc. #296). For the reasons stated on the record at the evidentiary hearing on June 10, 2020, the motion to strike Plaintiffs' expert's report is DENIED and the motion to strike transcripts of revocation hearings is DENIED. The Court will take under advisement the motion to strike declarations of offenders who are not listed as witnesses. Signed on 6/10/20 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Diefenbach, Tracy)**


**2:17–cv–04149–SRB Notice has been electronically mailed to:**

Michael Pritchett    Michael.Pritchett@ago.mo.gov, jcli@ago.mo.gov, jennifer.gordon@ago.mo.gov, johnathan.cunningham@ago.mo.gov, zach.foster@ago.mo.gov

Jeremiah Joseph Morgan, Sr    jeremiah.morgan@ago.mo.gov, kimberly.williams@ago.mo.gov

Add. 91

Amy Elizabeth Breihan     amy.breihan@macarthurjustice.org, carlita.tolbert@macarthurjustice.org, felicia.thompson@macarthurjustice.org, megan.crane@macarthurjustice.org

Justin Moore     justin.moore@ago.mo.gov, stephanie.rawlins@ago.mo.gov

Locke E Bowman     l–bowman@law.northwestern.edu, anissa.torres1@law.northwestern.edu, czarina.morgan@law.northwestern.edu, eraena–hart@law.northwestern.edu

Anthony Gonzalez     tony.gonzalez@ago.mo.gov

Megan G Crane     megan.crane@macarthurjustice.org

Matthew G. Kimminau     matthew.kimminau@ago.mo.gov, jc.li@ago.mo.gov, sue.kohler@ago.mo.gov

William P. Mobley     pat.mobley@macarthurjustice.org

**2:17–cv–04149–SRB It is the filer's responsibility for noticing the following parties by other means:**

```
MIME-Version:1.0
From:ecfMOW.notification@mow.uscourts.gov
To:cmecf_atynotifications@mow.uscourts.gov
Bcc:
--Case Participants: Locke E Bowman (anissa.torres1@law.northwestern.edu,
czarina.morgan@law.northwestern.edu, eraena-hart@law.northwestern.edu,
l-bowman@law.northwestern.edu), Amy Elizabeth Breihan (amy.breihan@macarthurjustice.org,
carlita.tolbert@macarthurjustice.org, felicia.thompson@macarthurjustice.org,
megan.crane@macarthurjustice.org), Megan G Crane (megan.crane@macarthurjustice.org),
Anthony Gonzalez (tony.gonzalez@ago.mo.gov), Matthew G. Kimminau (jc.li@ago.mo.gov,
matthew.kimminau@ago.mo.gov, sue.kohler@ago.mo.gov), William P. Mobley
(pat.mobley@macarthurjustice.org), Justin Moore (justin.moore@ago.mo.gov,
stephanie.rawlins@ago.mo.gov), Jeremiah Joseph Morgan, Sr (jeremiah.morgan@ago.mo.gov,
kimberly.williams@ago.mo.gov), Michael Pritchett (jcli@ago.mo.gov,
jennifer.gordon@ago.mo.gov, johnathan.cunningham@ago.mo.gov, michael.pritchett@ago.mo.gov,
zach.foster@ago.mo.gov), District Judge Stephen R. Bough
(anne_casehalferty@mow.uscourts.gov, grace_colato@mow.uscourts.gov,
joselyn_verschelden@mow.uscourts.gov, tracy_diefenbach@mow.uscourts.gov)
--Non Case Participants: Daniel S. Margolies (margoliesd@kcur.org)
--No Notice Sent:

Message-Id:7024443@mow.uscourts.gov
Subject:Activity in Case 2:17-cv-04149-SRB Gasca, et al v. Precythe, et al Order on Motion
to Strike
Content-Type: text/html
```

**U.S. District Court**

**Western District of Missouri**

**Notice of Electronic Filing**

The following transaction was entered on 6/10/2020 at 10:05 AM CDT and filed on 6/10/2020

| | |
|---|---|
| **Case Name:** | Gasca, et al v. Precythe, et al |
| **Case Number:** | <u>2:17–cv–04149–SRB</u> |
| **Filer:** | |
| **Document Number:** | 300(No document attached) |

**Docket Text:**
 **Before the Court is Defendants' Renewed Motion to Strike Plaintiffs' Expert Designation and Exclude Testimony of That Expert at Trial. (Doc. #298). For the reasons stated on the record at the evidentiary hearing on June 10, 2020, and for the same reasons discussed by the Court in its Order issued on January 24, 2019, (Doc. #139) the Motion is DENIED. David Muhammad is permitted to serve as Plaintiffs' expert and testify as to his opinions about alleged deficiencies in Defendants' current parole revocation process and the characteristics of a constitutionally–compliant parole revocation process. Mr. Muhammad is not, however, permitted to testify as to the ultimate issue of whether Defendants' current parole revocation process is unconstitutional. Signed on 6/10/20 by District Judge Stephen R. Bough.  This is a TEXT ONLY ENTRY. No document is attached. (Diefenbach, Tracy)**

**2:17–cv–04149–SRB Notice has been electronically mailed to:**

Michael Pritchett    Michael.Pritchett@ago.mo.gov, jcli@ago.mo.gov, jennifer.gordon@ago.mo.gov,

johnathan.cunningham@ago.mo.gov, zach.foster@ago.mo.gov

Jeremiah Joseph Morgan, Sr    jeremiah.morgan@ago.mo.gov, kimberly.williams@ago.mo.gov

Amy Elizabeth Breihan    amy.breihan@macarthurjustice.org, carlita.tolbert@macarthurjustice.org,
felicia.thompson@macarthurjustice.org, megan.crane@macarthurjustice.org

Justin Moore    justin.moore@ago.mo.gov, stephanie.rawlins@ago.mo.gov

Locke E Bowman    l–bowman@law.northwestern.edu, anissa.torres1@law.northwestern.edu,
czarina.morgan@law.northwestern.edu, eraena–hart@law.northwestern.edu

Anthony Gonzalez    tony.gonzalez@ago.mo.gov

Megan G Crane    megan.crane@macarthurjustice.org

Matthew G. Kimminau    matthew.kimminau@ago.mo.gov, jc.li@ago.mo.gov, sue.kohler@ago.mo.gov

William P. Mobley    pat.mobley@macarthurjustice.org

**2:17–cv–04149–SRB It is the filer's responsibility for noticing the following parties by other means:**

Add. 94