No. 20-3447

_____

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

_____

STEPHANIE GASCA, et al.,
Plaintiffs-Appellees,

v.

ANNE L. PRECYTHE, in her official capacity as Director of the Missouri
Department of Corrections, et al.,
Defendants-Appellants.

_____

Appeal from the United States District Court
Western District of Missouri, Jefferson City
The Honorable Stephen R. Bough, United States District Judge

_____

**APPELLEES' BRIEF**

_____

Amy E. Breihan
W. Patrick Mobley
Omri Praiss
Roderick & Solange MacArthur Justice Center
3115 South Grand Boulevard, Suite 300
St. Louis, MO 63118
Phone: (314) 254-8540

*Counsel for Plaintiffs-Appellees*

# Summary of the Case

In two seminal 1970s-era cases, the U.S. Supreme Court clearly and explicitly set forth the minimum due process requirements that must be afforded to individuals on parole supervision facing revocation of their parole: *Morrissey v. Brewer*, 408 U.S. 471 (1972) and *Gagnon v. Scarpelli, 411 U.S.* 778 (1973). Nevertheless, for 45 years, the Missouri Department of Corrections ("MDOC") and its Parole Board have violated these requirements. Notably, Defendants concede this point. Yet, Defendants claim that they have recently undertaken corrective measures to remedy these constitutional deficiencies.

Based on substantial evidence, the district court found that constitutional violations remain in the current parole revocation process. Therefore, the district court properly exercised its discretion by issuing an order that narrowly mandates Defendants to undertake specific actions to remedy their ongoing constitutional violations. Furthermore, the district court correctly denied Defendants' untimely Rule 19 motion. The Missouri Public Defender Commission is not a necessary party to this litigation, since the district court could accord complete relief among the existing parties: the MDOC could exercise its authority to hire attorneys to represent parolees when constitutionally required or refrain from proceeding with revocation hearings when parolees are not represented by state-funded counsel when minimum due process so requires.

i

# Table of Contents

Summary of the Case ................................................................. i

Table of Contents ...................................................................... ii

Table of Authorities ................................................................ iv

Statement of the Issues ............................................................1

Statement of the Case .............................................................2

    A.  The Plaintiff-Class's Complaint ..........................................2

    B.  Parolee Class's Motion for Summary Judgment ..........................3

    C.  Defendants' Motion to Dismiss ..........................................5

    D.  The Hearing on Remedy ...................................................8

Standard of Review ...................................................................9

Summary of the Argument .....................................................10

Argument ...............................................................................14

I.     This Court should affirm the Remedy Order because the district court did not abuse its discretion in mandating Defendants to undertake specific actions to remedy their ongoing constitutional violations. ...........................14

    A.  The district court properly exercised its discretion by requiring Defendants to comply and adhere to certain policies that are not consistently applied. .....20

        1.   Notice of Alleged Violations .................................................21

        2.   Notice of Rights ...................................................................22

        3.   Explanation of Rights .........................................................24

        4.   Timely Provision of Revocation Decisions ...........................24

        5.   Determination of Qualification for Counsel ........................26

    B.  The district court properly exercised its discretion by requiring Defendants to adopt and implement certain reforms to bring the revocation system into compliance with what due process demands. ...................................27

        1.   Written Statement of Revocation Decisions .........................27

        2.   Disclosure of Evidence .......................................................29

        3.   Pressure to Waive Hearings .................................................30

        4.   Denial of Counsel ...............................................................30

        5.   Provision of Counsel ..........................................................31

Appellate Case: 20-3447    Page: 3    Date Filed: 04/02/2021 Entry ID: 5021520

      6.    Appeals from Revocation Decisions......................................................35

   C.  The district court properly exercised its discretion by requiring Defendants to amend certain forms...........................................................................37

      1.    Revocation Hearing Form..................................................................37

      2.    Screening Instrument ........................................................................38

**II.    This Court should affirm the district court's ruling denying Defendants' Rule 19 motion, because the motion was untimely and the Commission is not a necessary party to this litigation. ....................................41**

   A. Defendants' Rule 19 motion was untimely. ................................................41

   B. The district court correctly held that the Commission is not a necessary party under Rule 19(a). ................................................................................44

      1.    Defendants have the authority to enter into a contract for the provision of necessary legal services.............................................................46

      2.    Section 600.042.4(4) does not grant the Commission exclusive authority to provide or appoint attorneys for indigent parolees. ...................47

   C. The district court did not abuse its discretion by not considering Rule 19(b). ................................................................................................52

**Conclusion.................................................................................................54**

Appellate Case: 20-3447    Page: 4    Date Filed: 04/02/2021 Entry ID: 5021520

# Table of Authorities

**Cases**

*Ahrens v. Thomas*, 570 F.2d 286 (8th Cir. 1978) ........................................... 1, 9, 16

*Belk v. Purkett*, 15 F.3d 803 (8th Cir. 1994)...........................................................21

*Bounds v. Smith*, 430 U.S. 817 (1977).....................................................................15

*Brandon v. Holt,* 469 U.S. 464 (1985).....................................................................51

*Brown v. Plata*, 563 U.S. 493 (2011).............................................................. passim

*Cedar Rapids Bank and Trust Co. v. Mako One Corp.*, 919 F.3d 529 (8th Cir. 2019)................................................................................................................ 10, 44

*Creech v. U.S. Bd. of Parole*, 538 F.2d 205 (8th Cir. 1976)...................................25

*CRST Expedited, Inc. v. TransAm Trucking, Inc.*, 960 F.3d 499 (8th Cir. 2020)....10

*Daniels v. Woodbury County, Iowa*, 742 F.2d 1128 (8th Cir. 1984)...... 1, 16, 18, 20

*Edelman v. Jordan*, 415 U.S. 651 (1974) .................................................................47

*Edwards v. Arizona*, 451 U.S. 477 (1981) ........................................................ 23, 24

*Gagnon v. Scarpelli*, 411 U.S. 778 (1973)....................................................... passim

*Gluth v. Kangas*, 951 F.2d 1504 (9th Cir. 1991) ....................................................19

*Hafer v. Melo*, 502 U.S. 21 (1991) ..........................................................................51

*Hayes v. Metropolitan Property and Casualty Ins. Co.*, 908 F.3d 370 (8th Cir. 2018)..................................................................................................................... 9, 14

*JPMorgan Chase Bank, N.A. v. Johnson*, 719 F.3d 1010 (8th Cir. 2013) ......... 1, 48

*Judwin Properties, Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432 (5th Cir.) ...................42

*Lewis v. Casey*, 518 U.S. 343 (1996)................................................................. 1, 15

*Livingston v. Adams*, 469 Fed.Appx. 481 (8th Cir. 2012) .......................................14

Appellate Case: 20-3447     Page: 5     Date Filed: 04/02/2021 Entry ID: 5021520

*Maxwell v. Talley*, 419 Fed.Appx. 697 (2011) .......................................................14

*Missouri State Conference of the NAACP v. Ferguson-Florissant School Dist.*, 219 F.Supp. 3d 949 (E.D. Mo. 2016), *aff'd*, 894 F.3d 924 (8th Cir. 2018) ...............16

*Morrissey v. Brewer*, 408 U.S. 471 (1972).............................................. i, 5, 22, 36

*Papasan v. Allain*, 478 U.S. 265 (1986) ..................................................................47

*Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968) ... 1, 42

*Randolph v. Rodgers*, 253 F.3d 342 (8th Cir. 2001).................................................47

*Schroeder v. City of New York*, 371 U.S. 208 (1962)...............................................23

*Shafer v. Bowersox*, 329 F.3d 637 (8th Cir. 2003) ..................................................23

*Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1 (1971) ............................16

*Tillery v. Owens*, 907 F.2d 418 (3d Cir. 1990) ........................................................19

*Triple Five of Minnesota, Inc. v. Simon*, 404 F.3d 1088 (8th Cir. 2005) .......... 9, 14

*U.S. Bank Nat'l Assoc. v. Richardson*, 2019 WL 1115059 (N.D. Tex. March 11, 2019)........................................................................................................................43

*United States v. Paradise*, 480 U.S. 149 (1987)............................................... 16, 20

*United States v. Taylor*, 747 F.3d 516 (8th Cir. 2014) ............................................23

*Vigilant Ins. Co. v. Behrenhausen*, 889 F. Supp.1130 (W.D. Mo. 1995)...............46

*Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) ....................................50

**Statutes**

42 U.S.C. § 1983 .........................................................................................................2

RSMo. § 217.035 ................................................................................. 1, 13, 35, 46

RSMo. § 340.250 .......................................................................................................48

RSMo. § 56.640 .........................................................................................................47

RSMo. § 600.042.4 ............................................................................................. 1, 47

v

RSMo. § 600.042.4(3) (2008)......................................................................49

RSMo. § 67.2679 ......................................................................................48

RSMo. § 82.340 ........................................................................................48

RSMo. § 87.260 ........................................................................................48

**Other Authorities**

H.B. 215, 97th Gen. Assemb., 1st Reg. Sess. (Mo. 2013).......................49

**Rules**

FED. R. CIV. P. 12 ............................................................... passim

FED. R. CIV. P. 14 ......................................................................44

FED. R. CIV. P. 19 ............................................................... passim

FED. R. CIV. P. 19 ............................................................... passim

Appellate Case: 20-3447     Page: 7     Date Filed: 04/02/2021 Entry ID: 5021520

## Statement of the Issues

1. Whether the district court abused its discretion by mandating Defendants to undertake specific actions to remedy their ongoing constitutional violations?

   *Brown v. Plata*, 563 U.S. 493 (2011)

   *Lewis v. Casey*, 518 U.S. 343 (1996)

   *Daniels v. Woodbury County, Iowa*, 742 F.2d 1128 (8th Cir. 1984)

   *Ahrens v. Thomas*, 570 F.2d 286 (8th Cir. 1978)

2. Whether the district court correctly denied Defendants' untimely Rule 19 motion, because the court could accord complete relief among the existing parties: the MDOC could exercise its authority to hire attorneys to represent parolees when constitutionally required or refrain from proceeding with revocation hearings when parolees are not represented by state-funded counsel when minimum due process so requires?

   *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968)

   *JPMorgan Chase Bank, N.A. v. Johnson*, 719 F.3d 1010 (8th Cir. 2013)

   Fed. R. Civ. P. 19

   RSMo. § 217.035(4)

   RSMo. § 600.042.4(5)

1

## Statement of the Case

### A.    The Plaintiff-Class's Complaint

On August 14, 2017, Parolees filed their original Complaint in this case. JA15. Shortly thereafter, on October 12, 2017, Plaintiffs filed their Amended Complaint ("Complaint"), which is the operative Complaint. JA62.

The Complaint was filed on behalf of a plaintiff-class referred to herein as the "Parolee Class": people "in custody, or under supervision, of the Missouri Department of Corrections ("MDOC"), and who are at risk of imprisonment without adequate due process as a result of unconstitutional practices, procedures, and customs of both the MDOC and its Division of Probation and Parole ("Parole Board") with respect to parole revocation proceedings." JA63.

The Complaint includes a single count for violation of Parolee Class's right to due process under 42 U.S.C. § 1983. JA97. In support of this count, the Parolee Class alleged as follows:

155.    Plaintiffs seek injunctive and declaratory relief against all Defendants to prevent the continuing violation of the rights of Plaintiffs and the class they represent.

156.    As a matter of policy, practice, and custom, the Defendants systematically fail to screen parolees to determine whether they are eligible for counsel, at cost to the State, as required under *Gagnon v.*

2

*Scarpelli*. They fail to appoint counsel to those parolees who do qualify.

157.  The Defendant also fail to ensure that parolees receive adequate notice of the rights to which they are entitled in the parole revocation process. As a result of the Defendants' policies, practices and customs, parolees are unable to speak on their own behalf, present evidence, and cross-examine adverse witnesses.

158.  Consequently, the Defendants are in continuous violation of Plaintiffs' rights and the rights of the members of the class under the Fourteenth Amendment to the United States Constitution.

JA97-98.

### B.  Parolee Class's Motion for Summary Judgment

After conducting extensive discovery, on December 27, 2018, the Parolee Class filed a motion for summary judgment. JA284. In support, the Parolee Class set forth ninety-one (91) uncontroverted material facts that provide a detailed summary of Missouri's parole revocation process. JA291-308.

Most importantly, the Parolee Class's statement of uncontroverted facts conclusively established the multitude ways in which Defendants are violating the Parolee Class's due process constitutional rights. *Id*. Specifically, the Parolee Class established each of the following key points:

3

1) Defendants are not screening for or providing state-funded counsel in compliance with *Gagnon*.

2) Defendants systematically fail to meet other minimum due process requirements set forth in United States Supreme Court precedent, including:

   a. Defendants violate the Parolee Class's due process rights by failing to provide adequate notice of alleged parole violations and the basis for the Board's revocation decisions.

   b. Defendants deny the Parolee Class due process by failing to advise them of their rights during revocation proceedings.

   c. Defendants deny the Parolee Class due process by securing waivers of preliminary hearings and final revocations hearings that are not knowing, voluntary and intelligent.

   d. Defendants violate the Parolee Class's due process rights by refusing to disclose to a parolee evidence against them and denying them the opportunity to present witnesses or confront adverse witnesses at both the preliminary hearing and revocation hearing.

   e. Defendants fail to conduct revocation hearings within a reasonable time after a parolee is taken into custody, in violation of the Fourteenth Amendment.

Appellate Case: 20-3447    Page: 11    Date Filed: 04/02/2021 Entry ID: 5021520

JA291-308, 1205-06.

Defendants did not dispute *any* of the uncontroverted facts set forth in the Parolee Class's motion for summary judgment. JA1203. Moreover, Defendants did not object to any of the proposed relief requested by the Parolee Class. *Id*. Instead, Defendants simply stated that "they have no objection to the granting of Plaintiffs' Motion for Summary Judgment because the policies that existed at the time Plaintiffs filed their Amended Class Action complaint did not satisfy the requirements of *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), and *Morrissey v. Brewer*, 408 U.S. 471 (1972)." *Id*. At the same time, Defendants stated that they "independently undertook substantial corrective measures to remedy these shortcomings," and asked that the district court delay entry of an order for 30 days. *Id*.

On February 27, 2019, the district court found no genuine dispute of material fact and, therefore, granted the Parolee Class's motion for summary judgment. JA1209-1210.

### C.    Defendants' Motion to Dismiss

Approximately eight months later, on November 1, 2019, Defendants filed a motion to dismiss the Parolee Class's Complaint as moot and for failure to join an indispensable party. JA1245. Pursuant to Rule 12(b)(1), Defendants argued that the Parolee Class's claims should be dismissed as moot because Defendants had taken

5

voluntary action to address the alleged violations. JA1250-1257. In addition, pursuant to Rule 12(b)(7) (which is predicated on Rule 19), Defendants argued that the Complaint should be dismissed for failure to join the Missouri Public Defender Commission ("Commission") as an indispensable party. JA1257-1261. Specifically, Defendants argued that the Commission is an indispensable party because the authority to provide state-funded counsel for indigent probationers and parolees rests exclusively with the Commission. JA1258-60.

In response, the Parolee Class argued that Defendants' voluntary policy changes did not warrant dismissal, especially because the new policies continued to fail to address or cure all constitutional deficiencies. JA1374-77. In support, the Parolee Class stated that:

> The remedial steps taken by Defendants since summary judgment was granted do not address or resolve all the constitutional violations found by this Court, and there is no guarantee that such violations 'could not reasonably be expected to recur' in the future. Indeed, Plaintiffs plan to present evidence at the upcoming evidentiary hearing that the constitutional violations complained of in this case persist to this day.

JA1374.

Furthermore, with respect to Defendants' Rule 19 motion, the Parolee Class emphasized that: (1) the motion was untimely; and (2) that the Commission is not an indispensable party. JA1372-74, 1377-85. On December 19, 2019, the district court denied Defendants' motion to dismiss ("Dismissal Order"). JA1416. First, with respect to Defendants' mootness argument, the district court concluded:

6

The record supports Plaintiffs' assertion, as detailed in their suggestions in opposition to the instant motion to dismiss and in oral argument, that Defendants' revisions do not address or remedy all constitutional deficiencies in the parole revocation process…. The Court looks forward to the parties' presentation of evidence related to Defendants' voluntary revisions of their parole revocation policies and procedures at the upcoming evidentiary hearing regarding remedy.

JA1418.

Second, with respect to Defendants' Rule 19 motion, the district court noted that Defendants' assertion that the Commission was an indispensable party was inconsistent with Defendants' prior admission of liability. In support, the district court emphasized that in both the Complaint and motion for summary judgment, the Parolee Class alleged and established, respectively, that Defendants were not screening for or providing state-funded counsel in compliance with *Gagnon*. JA1419. Moreover, in response to the motion for summary judgment, "Defendants conceded liability for the alleged constitutional violations." *Id*. Yet, the district court observed that "[n]ow, Defendants seem to argue they are not in fact liable for all constitutional policy violations for which they formerly admitted liability." *Id*.

Notwithstanding Defendants' apparent effort to withdraw their "concession on liability," the district court held that under Rule 19(a), "the Commission is not a necessary party to this litigation," noting that the Defendants failed to cite any authority "demonstrating that the appointment of state-funded counsel is within the exclusive purview of the Commission." JA1419-20 (internal citations omitted).

7

### D. The Hearing on Remedy

On June 10-11, 2020, the district court conducted a two-day evidentiary hearing ("Hearing") to determine whether Defendants' revised policies, procedures, and practices satisfy constitutional due process requirements. The court considered documentary evidence along with testimony from multiple parole staff members, multiple class members, and the Parolee Class's expert witness, David Muhammad.

Based on the evidence presented at the Hearing and subsequent briefing, on November 12, 2020, the district court issued an extensive, 55-page order wherein it set forth those areas where "constitutional deficiencies in the current parole revocation process remain" and, therefore, mandated specific actions necessary to remedy such violations ("Remedy Order"). JA1797. In so doing, the district court observed:

> The Supreme Court has noted that it has not and could not 'write a code of procedure' for parole revocation hearings. Instead, '[m]ost States have done so by legislation, *others by judicial decision* usually on due process grounds.' **Thus, what follows is the Court's careful examination of each of the current policies, procedures, and practices at issue, considered individually and as components of the parole revocation process as a whole, and corresponding determinations as to whether due process is being met or violated.** The Court will endeavor to identify mandated relief to remedy due process violations and suggested changes to avoid prolong litigation.

JA1801 (internal citations omitted) (italics in original) (emphasis added).

8

At the conclusion of the Remedy Order, the district court "[m]andated" that Defendants undertake specific actions to remedy twenty-one (21) "minimum due process violations." JA1848-49. In addition, the district court provided numerous "suggested" changes to avoid prolonged litigation. JA1849-50.

## Standard of Review

This Court reviews the district court's findings of fact for clear error and its legal conclusions de novo. *See*, *e.g.*, *Hayes v. Metropolitan Property and Casualty Ins. Co.*, 908 F.3d 370, 374 (8th Cir. 2018) ("We review the district court's findings of fact in the bench trial for clear error and its legal conclusions de novo, overturning the factual findings only if they are not supported by substantial evidence, based upon an erroneous view of the law, or we are left with the definite and firm conviction that an error has been made.").

The district court's equitable remedy is reviewed under an abuse of discretion standard. *See*, *e.g.*, *Triple Five of Minnesota, Inc. v. Simon*, 404 F.3d 1088, 1095 (8th Cir. 2005) ("We review the district court's equitable remedies for an abuse of discretion."); *Ahrens v. Thomas*, 570 F.2d 286, 289 (8th Cir. 1978) (holding that mandated remedy prescribed by district court relating to prison conditions did not amount to an abuse of discretion).

Finally, this Court applies de novo review with respect to the conclusions of law underlying a district court's Rule 19(a) determination. *See*, *e.g.*, *Cedar Rapids*

9

*Bank and Trust Co. v. Mako One Corp.*, 919 F.3d 529, 534 (8th Cir. 2019).

However, Rule 19(b) determinations are reviewed for abuse of discretion. *See*, *e.g.*, *CRST Expedited, Inc. v. TransAm Trucking, Inc.*, 960 F.3d 499, 509 (8th Cir. 2020).

## <u>Summary of the Argument</u>

This appeal presents two discrete issues.

*First*, this Court should hold that the district court did not abuse its discretion in mandating Defendants to undertake specific actions to remedy their *ongoing* constitutional violations. The word "ongoing" is italicized because it is critically important here.

After conducting extensive discovery, the Parolee Class established that the MDOC and its Parole Board routinely deny thousands of alleged parole violators even the most basic due process rights. Defendants fail to provide alleged parole violators with adequate notice of their alleged parole violations, the basis for the Board's decisions, or the parolee's rights during the revocation process. Defendants routinely secure waivers of preliminary hearings and revocation hearings which are not knowing, voluntary, and intelligent. Defendants withhold from parolees the evidence against them, and constructively deny them the opportunity to present witnesses or confront adverse witnesses at their hearings.

Appellate Case: 20-3447    Page: 17    Date Filed: 04/02/2021 Entry ID: 5021520

And Defendants fail to conduct revocation hearings within a reasonable time after the parolee is taken into custody.

But perhaps the gravest violation is Defendants' utter failure to screen for or provide state-funded counsel in compliance with United States Supreme Court precedent. As a result, alleged parole violators—who evidence shows suffer from disproportionately high rates of mental health and substance abuse issues, and generally have lower literacy rates than the general population—are forced to navigate a confusing and opaque revocation process that puts their life and liberty at risk without the aid of counsel.

Significantly, Defendants admitted each of the foregoing violations. As a result, the district court granted summary judgment in favor of Plaintiffs. However, months later, Defendants argued that the Parolee Class's claims were moot because Defendants had allegedly undertaken corrective measures which remedied their constitutional violations. The district court, after hearing two days'-worth of evidence on the subject, rejected Defendants' assertion.

Based on substantial evidence presented during the Hearing, the district court entered specific findings of fact that established Defendants' *ongoing* constitutional violations. Among other things, the district court found that Defendants fail to consistently apply and/or adhere to their revised policies or lack specific policies necessary to satisfy minimum due process constitutional

11

requirements. In each instance, the nature and scope of the specific remedy mandated by the district court was directly related to the underlying constitutional violation. As a result, the district court properly exercised its broad and flexible equitable powers to remedy Defendants' *ongoing* constitutional violations.

*Second*, this Court should hold that the district court correctly denied Defendants' untimely Rule 19 motion, because the Commission is not an indispensable party to this case.

Almost a year after the district court granted summary judgment in favor of the Parolee Class (consistent with Defendants' admission of liability), Defendants argued – for the very first time – that the Commission is allegedly an indispensable party because the authority to provide state-funded counsel for indigent probationers and parolees rests with the Commission. Defendants' motion was both procedurally and substantively defective.

On a procedural level, Defendants' motion was not timely because Defendants waited to raise their Rule 12(b)(7) motion (which is predicated on Rule 19) until months *after* the district court had ruled on liability by granting summary judgment in favor of Plaintiffs.

On a substantive level, Defendants' motion was based on two erroneous premises. First, Defendants incorrectly argued that the Commission has exclusive authority to appoint counsel when the Constitution requires it. This argument

12

ignores the legislative history of Section 600.042.4(5) and the fact that the phrase "exclusive authority" is nowhere to be found in the statute (in contrast to numerous other statutes where the Missouri legislature included such qualifying language). Second, Defendants argued that MDOC has no authority to appoint counsel. However, this argument overlooks the fact that Section 217.035(4) grants MDOC broad authority to procure "contractual services," including contracting with private attorneys to provide legal services to qualifying parolees.

Thus, the district court correctly held that it could accord complete relief among the existing parties: the MDOC could exercise its authority to hire attorneys to represent parolees when constitutionally required or refrain from proceeding with revocation hearings when parolees are not represented by state-funded counsel when minimum due process so requires.

13

## <u>Argument</u>

**I.  This Court should affirm the Remedy Order because the district court did not abuse its discretion in mandating Defendants to undertake specific actions to remedy their ongoing constitutional violations.**

This Court reviews the district court's equitable remedy under an abuse of discretion standard. *See*, *e.g.*, *Triple Five of Minnesota, Inc. v. Simon*, 404 F.3d 1088, 1095 (8th Cir. 2005). Factual determinations underpinning the Remedy Order are reviewed for clear error. *Livingston v. Adams*, 469 Fed.Appx. 481 (8th Cir. 2012) (factual determinations made following evidentiary hearing reviewed for clear error); *Maxwell v. Talley*, 419 Fed.Appx. 697 (2011) (same); *see also Hayes*, 908 F.3d at 374.

Contrary to Defendants' argument (Br. at 25-44), the district court did not abuse its discretion by mandating that Defendants undertake specific actions to remedy their ongoing constitutional violations.[1] Indeed, based on substantial evidence presented at the Hearing, including expert testimony and testimony from several class members, the district court found that Defendants were still violating the constitutional rights of Plaintiffs. Where Defendants failed to correct these due process deficiencies and constitutional violations persisted, the district court was

---

[1] Notably, Defendants do not use the phrase "abuse of discretion," and appear to (erroneously) argue that the de novo standard applies to this Court's review of the district court's remedial order.

Appellate Case: 20-3447     Page: 21     Date Filed: 04/02/2021 Entry ID: 5021520

obligated to protect and enforce the Parolee Class's constitutional rights by entering appropriate injunctive relief.

First, the district court gave the Defendants the opportunity to cure the constitutional deficiencies in the parole revocation process when it deferred entry of a remedial order following summary judgment at Defendants' request. Generally speaking, when a federal court finds a constitutional violation in the administration of carceral systems, Supreme Court precedent dictates that states have "the first opportunity to correct the errors made in the internal administration of their prisons." *Lewis v. Casey*, 518 U.S. 343, 362 (1996); *see also Bounds v. Smith*, 430 U.S. 817, 818-20 (1977). That effectively occurred here.

Defendants had over a year to implement a remedial plan to address the constitutional deficiencies that they conceded infected the revocation process. They made a number of changes to their written policies.[2] But, weighing the evidence presented at the Remedy Hearing, the district court found that Defendants' remedial-plan-in-action did not adequately address the due process

_____

[2] Indeed, over the course of litigation, Defendants made over 20 changes to their parole revocation policies and related forms. *See* JA1272, 1278, 1281, 1284, 1286, 1303, 1313, 1322, 1327, 1335, 1349, 1351, 1358, 1406. They made the vast majority of these changes *after* conceding to summary judgment in the Parole Class's favor. *Id*. And although Defendants characterize these changes as "voluntary," it is doubtful these changes would have been made absent this litigation, especially in light of Defendants' blatant failure to comply with long-standing Supreme Court precedent.

15

violations occurring across the system. Under these circumstances, where "the defendant fails to respond or responds with a legally unacceptable remedy, the court must fashion its own remedy or adopt a remedial plan proposed by the plaintiffs." *Missouri State Conference of the NAACP v. Ferguson-Florissant School Dist.*, 219 F.Supp. 3d 949, 953 (E.D. Mo. 2016), *aff'd*, 894 F.3d 924 (8th Cir. 2018), *cert. denied,* 139 S.Ct. 826 (2019).

At the end of the day, it is the district court's responsibility to order relief that cures a constitutional violation. And "[o]nce a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *United States v. Paradise*, 480 U.S. 149, 183–184 (1987) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15 (1971)). As to the appropriate scope of remedy, three cases are particularly instructive: *Brown v. Plata*, 563 U.S. 493 (2011), *Ahrens v. Thomas*, 570 F.2d 286 (8th Cir. 1978), and *Daniels v. Woodbury County, Iowa*, 742 F.2d 1128 (8th Cir. 1984).

In *Plata*, the Supreme Court upheld the lower court's remedial order in two statewide class actions, one challenging prison medical care and one challenging prison mental health care. In doing so, the Court emphasized that courts have the responsibility to remedy violations of prisoners' rights under the Eighth Amendment:

16

A prison that deprives prisoners of basic sustenance, including adequate medical care, is incompatible with the concept of human dignity and has no place in civilized society.

If government fails to fulfill this obligation, the courts have a responsibility to remedy the resulting Eighth Amendment violation. Courts must be sensitive to the State's interest in punishment, deterrence, and rehabilitation, as well as the need for deference to experienced and expert prison administrators faced with the difficult and dangerous task of housing large numbers of convicted criminals. *Courts nevertheless must not shrink from their obligation to "enforce the constitutional rights of all 'persons,' including prisoners." Courts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration.*

563 U.S. at 511 (emphasis added) (internal citation omitted).

The Eighth Circuit recognized this critical "obligation" years ago. In *Ahrens*, a pretrial detainee filed suit challenging the conditions of confinement under which he was detained. *Id*. at 288. After certifying a class of all present and future pretrial detainees, the district court entered judgment for plaintiff. *Id*. On appeal, the defendants argued that "in prescribing a remedy[,] the district court exceeded its authority." *Id*. at 289.

This Court noted that "[i]n prescribing specific standards for future construction" of a new prison, the district court "impermissibly intruded into the affairs of state prison administration." *Id*. at 289. However, based on the district court's finding of "numerous constitutional violations in the conditions of confinement for detainees," this Court held that the district court properly discharged its "duty by compelling the local authorities to operate the existing

17

Platte County Jail in a constitutional manner." *Id*. at 289-290. In support, this Court

emphasized that the defendants could not hide behind a federalism argument when

violating the plaintiffs' constitutional rights:

> In substance, the district court ordered that the present jail facility could be used only as a pretrial hold facility for persons charged with criminal offenses. In addition, no person may be confined in the present facility for longer than seven days. Finally, the district court ordered that the present facility be thoroughly cleansed, inspected and supervised and that detainees be given pre-detention physical examinations. *In light of the uncontested findings, we are not persuaded that these requirements ordered by the district court amounted to an abuse of discretion.*

*Id*. at 289 (emphasis added).

Finally, in *Daniels*, plaintiffs alleged that the administration of Woodbury

County's general relief program violated their procedural due process rights. 742

F.2d at 1130. On appeal, this Court stated:

> What is certain is that the trial court did hold that the general relief program, as administered by the defendants, violated plaintiffs' due process rights. This finding is fully supported by the record and will not be disturbed. However, before deciding the validity of plaintiffs' suggested additional procedures, an initial determination must be made as to whether the current rules are constitutionally sufficient. *We believe the district court is in a much better position to tailor the necessary safeguards in light of the particular circumstances of this case.* Since the trial court had the first-hand opportunity to assess the evidence and listen to witnesses, the court should initially decide whether the County's rules are an insufficient check against arbitrary decision making.

*Id*. at 1133-34 (emphasis added).

Consistent with *Plata*, *Ahrens*, and *Daniels*, the district court's prescribed remedy does not challenge any established principles of federalism.[3] The conclusion that the district court did not exceed its authority when it issued its Remedy Order is bolstered by two significant and undisputed facts in this case. First, for over forty-five years, Defendants admittedly failed in their affirmative obligation to comply with the Supreme Court's holdings in *Morrissey* and *Gagnon*. Second, even after the district court provided Defendants with the opportunity to implement corrective measures to cure their constitutional deficiencies, they failed to do so. Indeed, based on substantial evidence presented at the Hearing, the district court found that Defendants continue to violate the Constitution. Because the Defendants failed to demonstrate their corrective measures cured the constitutional deficiencies in the revocation process, the district court was required to "fashion its own remedy or adopt a remedial plan proposed by the plaintiffs." *Ferguson-Florissant School Dist.*, 219 F.Supp. 3d at 953. And the scope of its authority in crafting that remedy is broad: "[o]nce a right and a violation have been

---

[3] *See also Gluth v. Kangas*, 951 F.2d 1504, 1509-1511 (9th Cir. 1991) (holding that district court did not exceed its authority, but rather, consistent with the evidentiary record, acted within its discretion by mandating department of corrections to adopt new policies); *Tillery v. Owens*, 907 F.2d 418, 429 (3d Cir. 1990) ("Once it was established, however, that the practice of double-celling violates contemporary norms of decency in light of the conditions currently extant at SCIP, the district court's order prohibiting the practice of double-celling was well within its equitable powers.").

19

shown, the scope of a district court's equitable powers to remedy past wrongs is broad." *Daniels*, 742 F.2d at 1135 (citation omitted) ; *see also Paradise*, 480 U.S. at 183–184 (quoting *Swann*, 402 U.S. at 15 (1971)).

### A. The district court properly exercised its discretion by requiring Defendants to comply and adhere to certain policies that are not consistently applied.

In six instances, the district court mandated that Defendants "comply" and "adhere" to certain written policies. *See* JA1848-49 (Doc. 323 at 52-53, ¶¶ 1, 2, 5, 9, 10 and 16). The district court did so because while the underlying policies (as-written) satisfy due process, the evidence established that Defendants fail to consistently comply with the policies.

Significantly, just as they failed to do below, Defendants do not present this Court with any evidence refuting the district court's finding that Defendants do not consistently comply with their policies. Br. at 33-34. Instead, Defendants argue that "Plaintiffs' sole count in the amended complaint pleaded that the Department's *omissions* violated due process, and not that its policies were *inadequate*." Br. at 33 (italics in original). This argument misses the mark.

The district court properly provided Defendants with an opportunity to cure the constitutional deficiencies in their policies and practices. However, as set forth in detail below, while some of the new policies facially satisfied constitutional requirements, the evidence established that Defendants failed to adhere to these

policies. This case has always been about not just policies and procedures, but practices and customs. *See* JA63 and 70-71 (describing the case as a complaint on behalf of people "who are at risk of imprisonment without adequate due process as a result of unconstitutional *practices*, procedures, and *customs* of both MDOC and its Division of Probation and Parole…") (emphasis added); JA72 (Defendants' "policies, procedures, practices, acts, and omissions have affected all class members."). Put another way, it matters not just what Defendants *say* they are doing, but what they are *actually doing*. A policy that is facially adequate, but practically deficient, renders the other protections of *Morrissey* and *Gagnon* "of little benefit." *Belk v. Purkett*, 15 F.3d 803, 806 (8th Cir. 1994). Because Defendants' constitutional violations were ongoing, despite what some of their written procedures required, the district court properly mandated compliance.

### 1. Notice of Alleged Violations

The district court held that the relevant policies governing notice of alleged violations, "as written," satisfy minimum due process requirements. JA1804. However, the district court observed that Defendants did "not address in their briefing the concern that they fail to consistently comply with such policies." *Id*.

The district court found that policies "are not consistently implemented." JA1805. In support, the district court cited to substantial evidence, including testimony by the Parolee Class's expert witness, testimony from five class

members, and declarations by other absent class members. JA1805-06.[4] In light of this evidence, the district court's conclusion that Defendants fail to provide adequate notice of alleged violations cannot be said to be clear error. And in ordering a remedy to cure this violation, the district court did not abuse its discretion by mandating that "Defendants…comply with the policies governing notice to parolees of their alleged violations and keep documentation of their compliance." JA1806. This is a bare minimum due process requirement. *Morrissey*, 408 U.S. at 488-89.

### 2.    Notice of Rights

In order for any of the due process rights created by *Morrissey* and *Gagnon* to be meaningful and effective, parolees must be aware of those rights. It is thus critical to fundamental fairness and due process that parolees be adequately informed of their rights during the revocation process. *See Morrissey*, 408 U.S. at 481 ("due process is flexible and calls for such procedural protections as the particular situation demands") and 484 (discussing society's interest in treating

_____

[4] Defendants incorrectly state that "all five of Plaintiffs' witnesses admitted to having notice of their alleged parole violations." Br. at 37. A review of the Parolee Class's actual testimony from the Hearing proves otherwise. Amy Campbell, for example, did not receive any Field Violation Reports until after waiving her hearings and receiving a revocation decision. Hearing Tr. at 230. Similarly, Charles Braxton only received his Field Violation Report after he was misled into signing a revocation hearing waiver form. *Id.* at 149. An additional seven declarants did not receive a Field Violation Report at their first interview with a parole officer after their arrest for an alleged parole violation. *See* JA1497.

22

parolee with basic fairness); *Schroeder v. City of New York*, 371 U.S. 208, 212 (1962) ("the requirement that parties be notified of proceedings affecting their legally protected interests is obviously a vital corolary [*sic*] to one of the most fundamental requisites of due process—the right to be heard."); *United States v. Taylor*, 747 F.3d 516, 519 (8th Cir. 2014) (waivers must be knowingly and voluntarily made); *Shafer v. Bowersox*, 329 F.3d 637, 650 (8th Cir. 2003) (quoting *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)) (same). This means that parolees must be informed of their rights in the revocation process, and must receive notice of those rights (including the right to counsel) in a timely fashion.

The district court held that the "policy governing the timely provision of the Notice of Rights form to parolees satisfies due process requirements." JA1811. However, the district court noted that Defendants did "not address Plaintiffs' argument that Defendants fail to consistently provide timely notice of rights." *Id*.

The district court found that "the evidence shows that the policy is not being applied in practice." *Id*. In support, the district court cited to substantial evidence, including testimony by the Parolee Class's expert witness and many parolees. *Id*. Thus, the district court did not abuse its discretion by mandating that "Defendants are ordered to comply with their policy governing the timely provision of the Notice of Rights form to parolees and keep documentation of their compliance." *Id*.

23

### 3. Explanation of Rights

The district court held that "Defendants' policies requiring parole officers to explain the parole revocation process and parolee's rights therein conform to due process requirements." JA1818. However, the district court found that the "[e]vidence indicates that parole officers are not complying with these written procedures." JA1817. In support, the district court cited to substantial evidence, including testimony by parolees and survey results. JA1817-18. As a result, the district court concluded that Defendants' "failure to abide by such policies render them meaningless." JA1818.

Thus, the district court did not abuse its discretion by mandating that Defendants "comply with their policies requiring parole officers to explain the content of the Notice of Rights, Preliminary Hearing, and Revocation Hearing forms and the parole revocation process to parolees at the violation interviews," and further "ordered to orally offer to read to the Notice of Rights form to parolees and to amend their policies to reflect this requirement." *Id*. Such a practice is required in order to ensure that *Morrissey*'s notice requirement is satisfied.

### 4. Timely Provision of Revocation Decisions

Defendants argued that the written statements that they provide to parolees are timely and provide constitutionally adequate notice of revocation decisions.

24

JA1826.[5] But the district court found, and Defendants did "not dispute, that at least two testifying parolees did not receive their Notification of Board Action at all or received it weeks after the revocation decision was made." JA1827.[6]

Thus, based on this evidence, the district court did not abuse its discretion by ordering Defendants "to comply with the policy requiring parolees be given the Notification of Board Action within 10 business days of the date on the Notification," and "maintain careful documentation of the delivery of the Notification of Board Action to parolees." JA1828. Indeed, such reforms are necessary to effectuate the decision notice requirement set forth in *Morrissey*.[7]

---

[5] The substance of such notices is discussed in Section I(B)(1), below.

[6] This compared to Illinois, for example, where individuals are informed of their parole revocation decisions at the revocation hearings themselves or within 48 hours, even with a high volume of hearings. JA1859-60; Hearing Tr. at 60 (Plaintiffs' expert testifying that Illinois conducts approximately 1,200 revocation hearings every month).

[7] With respect to the timing of hearings themselves, the district court held that Defendants' procedure requiring revocation hearings be conducted within 30 days of a parolee's return to MDOC custody is "reasonable." JA1825. Indeed, this is within the timeframe endorsed by this Court, *Creech v. U.S. Bd. of Parole*, 538 F.2d 205, 208 (8th Cir. 1976) (collecting cases), and at the outer limit of what Plaintiffs' expert testified was best practice, Hearing Tr. at 121. But the Defendants "fail to address" the fact that the revocation hearings are not consistently conducted in a timely manner under their policy. JA1824. According to Defendants' own data, the average time from return to custody to revocation hearing was 74 days. Hearing Tr. at 90; JA1825. In many instances, hearings are happening well beyond that. Hearing Tr. at 43-44, 89-91. Plaintiffs concede that, in this one instance only, by setting the purported deadline to conduct hearings within 30 days, the district court improperly exercised its discretion and should instead have ordered Defendants to conduct hearings within no later than 90 days.

Appellate Case: 20-3447    Page: 32    Date Filed: 04/02/2021 Entry ID: 5021520

## 5. Determination of Qualification for Counsel

The district court observed that Defendants' procedures properly "reflect Defendants' understanding that the Division of Probation and Parole is charged with the responsibility of determining eligibility for state-funded counsel." JA1840. However, the district court found that "[t]he evidence shows this policy is not consistently understood or implemented." *Id*.[8] In support, the district court cited to testimony by several parole supervisors as well as the Assistant Division Director. JA1840-41.[9]

Thus, based on this evidence, the district court did not abuse its discretion by ordering Defendants "to adhere to their policies and, as mandated by *Gagnon*, require parole officers and other employees of the Division of Probation and Parole

---

[8] Because the district court made a finding that Defendants' screening instrument and process was not understood by parole staff responsible for conducting the screening, it was well within its discretion to require training for parole staff involved in the screening process on when someone is eligible for counsel under *Gagnon*. JA1838.

[9] Class member testimony bolsters this conclusion that Defendants were not properly screening for counsel, if they were screening at all. Hearing Tr. at 147 (Charles Braxton testifying he was not asked counsel screening questions), 190-91 (Oscar Glover testifying parole staff told him he had to have "some kind of mental handicap or not be able to speak English in order to be given an attorney"), 194, 215-17 (Dammeon Binion testifying he asked to be screened for counsel but was not), 228-29 (Amy Campbell testifying she was not asked counsel screening questions, and 250-53 (Darius Hunt testifying he was not asked counsel screening questions).

26

responsible for the counsel eligibility screening process to administer the Screening Instrument and make counsel eligibility determinations." JA1841.

**B.** **The district court properly exercised its discretion by requiring Defendants to adopt and implement certain reforms to bring the revocation system into compliance with what due process demands.**

In six instances, the district court mandated that Defendants "[c]onstruct and implement" certain reforms, some in the form of additional policies. *See* JA1848-49 (Doc. 323 at 52-53, ¶¶ 7, 8, 11, 12, 17, 19, 20, 21). The district court properly did so because Defendants do not currently have policies in place to ensure constitutional compliance, and their customary practices do not satisfy due process. *See*, *e.g.*, *Ferguson-Florissant School Dist.*, 219 F.Supp. 3d at 953 ("If the defendant fails to respond or responds with a legally unacceptable remedy, the court must fashion its own remedy or adopt a remedial plan proposed by the plaintiffs.").

### 1. Written Statement of Revocation Decisions

The district court noted that Defendants' policies require the hearing panel to "(1) determine whether the parolee has violated a condition(s) of parole and (2) consider whether revocation is warranted based on the violation(s) and aggravating circumstances." *See* JA1828. However, the district court found that Defendants "have *no policy* that requires parolees be given 'a written statement by the factfinders as to the evidence relied on and the reasons for revoking parole.'"

27

*Id.* (citing to *Morrissey*, 408 U.S. at 489) (emphasis added). *Morrissey* requires such decision notices in every single case. But, class members *only* receive a written explanation for a revocation decision if they have a revocation hearing—an event that occurs only approximately 2% of the time. JA1820.

Having determined that Defendants' practice and policies fail to meet minimum due process standards, the district court properly mandated that Defendants adopt one: "Defendants are ordered to construct and implement a policy mandating that, when a decision to revoke parole is made—regardless of whether a hearing was conducted—the Notice of Board Action must provide to the parolee a written decision outlining the evidence relied on to determine whether the parolee violated a condition(s) of parole, the mitigating circumstances considered, and reasons for revoking." *See* JA1829. This is a bare minimum due process requirement. *Morrissey*, 408 U.S. at 488-89 (minimum requirements of due process include "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole").

Similarly, the district court found that "Defendants have *no policy* dictating how long after a revocation hearing or waiver of revocation hearing that a revocation decision must be made and the associated Notification of Board Action completed." *Id.* (emphasis added). The district court noted that such a policy "is necessary in order to give meaning to the policies governing parolees' receipt of

28

revocation decisions and deadlines for filing appeals." *Id*. Thus, the district court properly mandated "Defendants to construct and implement a policy requiring revocation decisions be made and Notifications of Board Action completed within a reasonable amount of time after a revocation hearing or waiver thereof." *Id*.

### 2. Disclosure of Evidence

While Defendants have a policy requiring preparation of a Revocation Report, which is supposed to be provided to parolees prior to the revocation hearing, the district court concluded this policy is insufficient to comply with *Morrissey*'s mandate that parolees receive disclosure of the evidence against them. 408 U.S. at 489; *see also Belk*, 15 F.3d at 806, 812. This conclusion is soundly based on evidence demonstrating (1) Defendants' policy does not require the disclosure of evidence to parolees facing revocation, and (2) Defendants do not have a practice of providing such disclosure. For example, there was consistent testimony from multiple class members that parole staff never provided them with police reports. *See* Hearing Tr. at 188-89, 218-19, 230, 249.[10] Thus, the district court was obligated to order Defendants to cure this deficiency, and well within its discretion to order Defendants to implement a policy requiring disclosure of evidence at least five days before a revocation hearing. JA1823-24.

---

[10] As this Court has noted, receipt of a report summarizing evidence prepared by a parole officer is insufficient to comply with *Morrissey*. *Belk*, 15 F.3d at 812.

Appellate Case: 20-3447     Page: 36     Date Filed: 04/02/2021 Entry ID: 5021520

### 3. Pressure to Waive Hearings

Defendants do not rebut the evidence admitted at the Hearing which demonstrated Defendants' "troubling" practice of placing pressure "on parolees to waive preliminary and revocation hearings, sometimes based on false and misleading information." JA1821. As the court noted, testimony from the Parolee Class's expert and class members indicate that the hearing rate is so low (approximately 2%) "because parolees are often encouraged to waive their hearings." JA1820. What's more, they often sign waiver forms with inaccurate or incomplete information. JA1821. Such a waiver is not knowing and voluntary, and violates due process. JA1821-22. The district court thus properly prohibited the Defendants from encouraging and pressuring parolees to waive their hearings. *Id*. 1822.

### 4. Denial of Counsel

The district court noted that "[i]n every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record." *See* JA1841 (quoting *Gagnon*, 411 U.S. at 791). *Gagnon* requires this much. 411 U.S. at 791. However, the district court once again found that Defendants lack such a constitutionally required policy: "Defendants identify *no procedure* that governs recording or giving parolees notice of a denial of counsel. Indeed, a parole supervisor and the Assistant Division Director testified

that there are no written policies that state the requirements for written notice." *Id.* (emphasis added). Nor do Defendants have an *unwritten* policy of providing constitutionally-adequate written notices of denial. *See, e.g.,* Hearing Tr. at 191, 196 (Mr. Glover testifying that the counsel denial notice he received did not mention innocence or mitigating circumstances), 215-17 (Mr. Binion testifying he asked to be screened but was not, and never received a written notice as to whether he qualified for counsel).

Having determined that Defendants lack such a constitutionally required policy or practice, the district court properly ordered "Defendants to construct and implement a policy requiring that a finding that a parolee is ineligible for counsel must be recorded in the appropriate and relevant records and be given to parolee in writing within a reasonable amount of time. The decision must expressly state all grounds for refusal." *See* JA1842-43 (quoting *Gagnon*, 411 U.S. at 791).

### 5. Provision of Counsel

At summary judgment, Defendants conceded they were not providing counsel to eligible parolees as required by *Gagnon*. JA1203. Over 20 months later, the district court found that Defendants continued to "fail to provide counsel to parolees for whom state-funded counsel is constitutionally required pursuant to *Gagnon*." *See* JA1844. Accordingly, the district court: (1) enjoined Defendants from continuing to violate the Constitution with regard to the appointment of

31

counsel; and (2) provided Defendants with the opportunity to adopt and implement a new policy that would satisfy the Constitution.

Specifically, the district court ordered the following two remedies:

- "Because such practice [not appointing counsel when constitutionally required] violates *Gagnon*, Defendants are ordered to refrain from proceeding with revocation hearings and reincarcerating parolees who are not represented by state-funded counsel when minimum due process requires."

- "Defendants are ordered to adopt and implement a new policy for appointing state-funded counsel to eligible parolees. All forms should be updated to reflect his new policy."

JA1844-45.

In response, Defendants raise three arguments with respect to the appointment of counsel. *First*, Defendants argue that "Plaintiffs did not produce any evidence that any one of them had a case that *required* counsel." Br. at 34 (italics in original). This argument ignores the fact that in moving for summary judgment, the Parolee Class established that "Defendants have a widespread practice of not providing state-funded counsel to alleged parole violators," and Defendants admitted this point. *See* JA297-98 (Doc. 130 at 7-9, ¶¶ 34-40) ) (aside from a competency screening—which is conducted without any policies,

procedures, or forms to guide parole staff—Defendants do not screen for eligibility of counsel and do not provide state-funded counsel to eligible parolees); JA438-39 (MDOC admitting it has no policy or procedure for providing counsel where required under *Gagnon*); JA1203 (Defendants "have no objection to the granting of Plaintiffs' Motion for Summary Judgment"); *see also* FED. R. CIV. P. 56(e)(2) ("If a party … fails to properly address another party's assertion of fact as required by Rule 56(c), the court may (2) consider the fact undisputed for purposes of the motion"); *Hearst v. Progressive Foam Technologies, Inc.*, 641 F.3d 276, 281-82 (8th Cir. 2011) (district court properly granted summary judgment under Rule 56(e)(2) where party failed to properly oppose motion).[11]

     *Second*, Defendants argue that the district court improperly assumed that the "State is under a constitutional duty to provide counsel for all indigents in *all* probation or revocation cases." Br. at 33 (italics in original). However, Defendants fail to cite to any language in the district court's order that supports this bald assertion. In reality, the district court narrowly ordered Defendants to adopt and implement a new policy for appointing state-funded counsel when constitutionally required to "*eligible parolees*." *See* JA1845 (emphasis added). This is a straightforward application, not extension, of *Gagnon*'s mandate.

---

[11] This argument also ignores the fact that Defendants do not properly advise parolees of their right to counsel and do not properly screen for counsel.

*Third*, Defendants argue that the district court exceeded its authority by "prohibiting the Department from conducting *any* revocation hearings and reincarcerating *any* parolees *unless* it adopts and implements a policy for appointing counsel to eligible parolees." Br. at 35 (italics in original). Here, again, Defendants distort the language of the Remedy Order for the sake of their arguments on appeal. The district court did not prohibit Defendants from conducting *any* revocation hearings until it adopts a policy for providing counsel to eligible parolees. It prohibited the Defendants from proceeding with revocation in instances where due process demands that state-funded counsel be provided to the parolee but where counsel is *not* provided. JA1844. As Defendants note in their Brief, not every single class member will be deemed eligible for counsel under *Gagnon*. Thus, this portion of the remedy is not nearly as sweeping as Defendants make it out to be.

In any case, the district court's order directly comports with the Eighth Circuit's ruling in *Daniels* and *Casey*. Specifically, the district court did not simply enjoin the unconstitutional practice. Instead, the district proceeded to provide Defendants with the opportunity to adopt and implement a new policy that would satisfy the constitutional requirements set forth in *Gagnon*. And, as established

below, Defendants have several options for how they can choose to do so.[12]  But what they cannot do is proceed with revocations when they know they are falling well short of what *Gagnon* requires.

### 6.    Appeals from Revocation Decisions

The district court noted multiple issues that render Defendants' appeal process inaccessible, arbitrary, and meaningless for class members. For example, "[s]ome parolees encounter significant delay in obtaining an appeal form while others do not receive the form at all," despite the fact that parolees must file an appeal within 30 days of receiving an appealable decision. JA1846-47. Even when a parolee is able to timely appeal a revocation decision, the most they receive in response is a barebones decision devoid of any explanation as to why the appeal was denied. JA1847. As the district court rightly pointed out, requiring Defendants to provide an explanation as to the basis for denying appeals is necessary to avoid arbitrary decisions. JA1848 (citing *Morrissey*, 408 U.S. at 489).

---

[12] The district court's rulings with respect to the appointment of counsel is addressed in detail in the Rule 19 argument below. *See* Section II, *infra*. The analysis in that section establishes two key points: (1) the Commission does not have exclusive authority to appoint counsel for parolees when the Constitution so requires; and (2) Section 217.035(4)  grants MDOC broad authority to procure "contractual services," including contracting with private attorneys to provide legal services to qualifying parolees.

Appellate Case: 20-3447     Page: 42     Date Filed: 04/02/2021 Entry ID: 5021520

Defendants argue that neither *Morrissey* or *Gagnon* require an appeal process and, in any event, the need for reasoned appeal decisions is diminished here because of other procedural due process protections in place. Br. at 43. First, Defendants' argument that the need for reasoned appeal decisions is diminished is belied by the record which shows that Defendants continue to deprive class members of even the most basic due process rights. *See* Sections A-B, *supra*.

Second, although seminal, *Morrissey* and *Gagnon* are not the only two cases establishing what process is owed to someone facing revocation of their parole. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey*, 408 U.S. at 481. Even if *Morrissey* and *Gagnon* do not expressly mandate an appeal process, if the Defendants choose to implement one (as they have here), they must do so in a way that "comport[s] with the demands of the Due Process and Equal Protection Clauses of the Constitution." *Evitts v. Lucey*, 469 U.S. 387, 393 (1985); *see also Griffin v. Illinois*, 351 U.S. 12 (1956) (where a state creates an appellate review process, it cannot conduct appellate review in a discriminatory manner). Fundamental fairness, the backbone of due process, dictates that Defendants not preclude class members from accessing the appeal process they created. Thus, there is well-established legal precedent underscoring this portion of the District Court's order, and the record

Appellate Case: 20-3447     Page: 43     Date Filed: 04/02/2021 Entry ID: 5021520

supports the district court's conclusion that changes to the appeal process are warranted to ensure basic fairness.

**C.    The district court properly exercised its discretion by requiring Defendants to amend certain forms.**

In five instances, the district court ordered defendants to amend certain forms in order to ensure that the parole revocation process complies with due process. *See* JA1848-49 (Doc. 323 at 52-53, ¶¶ 3, 4, and 13(a), (b) and (c)). The district court did not abuse its discretion by doing so.

### 1.  Revocation Hearing Form

The district court noted that three forms – Preliminary Hearing form, Notice of Rights form, and Revocation Hearing form – are "administered at violation interviews and contribute to providing due process to parolees." *See* JA1812. For the "most part" the district court found that these forms satisfy due process. *Id*. However, the district court found that "certain portions of the forms violate due minimum due process requirements or are inconsistent with Defendants' policies." *Id*.

As a result, the district court properly ordered Defendants to make the minor changes to the Revocation Hearing form to ensure compliance with constitutional requirements:

- "Defendants are ordered to amend the Revocation Hearing form to add a space for the alleged violations to be listed, just as the

Preliminary Hearing form provides such space. *Morrissey* requires 'written notice of the claimed violations of parole' in connection with a revocation hearing. 408 U.S. at 489."

- "Defendants are ordered to amend the Revocation Hearing form to include an option for parolees to provide their own counsel at revocation hearings, as required by Defendants' Procedure P6-8.1."

These minor changes bring Defendants' forms in compliance with *Morrissey* and Defendants' own written procedures.

### 2. Screening Instrument

In *Gagnon*, the Supreme Court established a right to counsel for certain people facing revocation of their parole:

> Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself.

411 U.S. at 790. The district court properly applied these standards when it reviewed the forms used by Defendants to screen parolees for eligibility for appointment of counsel. *See* JA1832-35.

38

*First*, the district court noted that the Screening Instrument "contains no space for an explanation if the parolee denies violating a condition(s) of parole." *Id*. at 36. The form therefore did not fully and fairly reflect the criteria which *Gagnon* requires Defendants to consider when screening a parolee for counsel, namely whether they have a "timely and colorable claim…that [they have] not committed the alleged violation of the conditions." 411 U.S. at 790. To remedy this omission and comply with *Gagnon*, the district court ordered Defendants to amend the "Screening Questions to ask the Client" section of the Screening Instrument "to provide space in case a parolee wishes to explain the claim of innocence, which serves to aid the parole officer in determining whether the parolee qualifies for counsel based on a timely and colorable claim of innocence." *See* JA1832-33.

*Second*, the district court noted that the Screening Instrument "lacks" any "Screening Questions to ask the Client" that "correspond with the second ground – complex mitigating circumstances." *Id*. at 37. To remedy this omission and comply with *Gagnon*, the district court ordered Defendants to amend the "Screening Questions to ask the Client" section of the Screening Instrument "to add a screening question(s) to be asked of parolees related to potential complex mitigating circumstances, with space for parole officers to detail the alleged mitigating circumstances." *Id*.

39

*Third*, the district court noted that "[u]nlike the second and third grounds, the Screening Instrument contains no processing questions for the parole officer pertaining to the first ground—claim of innocence." *See* JA1835. To remedy this omission and comply with *Gagnon*, the district court ordered Defendants to amend the "Processing Questions for the PO – (Not to be Asked of the Client)" section of the Screening Instrument to "add a processing question(s) to aid the parole officers in determining whether appointment of counsel is warranted based on the parolee's timely and colorable claim that he has not committed the alleged violation." *Id*.

Contrary to Defendants' assertion (Br. at 35), each of the foregoing mandated amendments are necessary in order "to comply with the minimum due process demands as required by *Gagnon*." JA1836. Ensuring that the form provides space for consideration and documentation of these *Gagnon* criteria safeguards against improper screening processes and unreliable or improper eligibility determinations. Such assurances are necessary in light of testimony demonstrating Defendants were screening improperly, or not screening at all.

For all these reasons, the district court did not abuse its discretion in mandating Defendants to undertake specific actions to remedy their ongoing constitutional violations.

**II.    This Court should affirm the district court's ruling denying Defendants' Rule 19 motion, because the motion was untimely and the Commission is not a necessary party to this litigation.**

For two independent reasons, this Court should affirm the district court's ruling denying Defendants' Rule 19 motion. The first ground is procedural (this argument was raised below but not addressed by the district court); the second ground is substantive (this argument was raised below and addressed by the district court). *See United States v. Shavers*, 955 F.3d 685, 696 (8th Cir. 2020) ("[w]e may affirm a judgment on any ground supported by the record even if not relied upon by the district court"); *Adam and Eve Jonesboro, LLC v. Perrin*, 933 F.3d 951, 958 (8th Cir. 2019) (same).

### A. Defendants' Rule 19 motion was untimely.

This Court should affirm the district court's ruling denying Defendants' Rule 19 motion because the motion was untimely. In the eleventh hour, Defendants moved to dismiss this lawsuit pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(7). The Federal Rules state that any motion to dismiss pursuant to 12(b)(1) or 12(b)(7) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12 (b). Although Rule 12(h)(2) expands the timeframe within which a party can move to dismiss for failure to join a person required by Rule 19(b) (the basis for Defendants' 12(b)(7) motion here), it still requires that such a defense be raised at

41

trial—before liability is determined. FED. R. CIV. P. 12(h)(2)(C). Here, liability was

determined *nearly a year* before Defendants filed their motion.

The United States Supreme Court has said that if a claim is litigated to

judgment before the objection to the absence of "indispensable" parties is raised,

the balancing test under FED. R. CIV. P. 19(b) strongly disfavors dismissal.

*Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968)

("*Provident*"). In *Provident*, the defendant did not object to the absence of

indispensable parties until after the plaintiff obtained a judgment. 390 U.S. at 106.

The Supreme Court held that because the defendant failed to raise the objection

prior to judgment "it is quite proper to consider [the objection to failure to join

indispensable parties] foreclosed." *Provident*, 390 U.S. at 110.

Consistent with *Provident*, federal courts have exercised their discretion

denying untimely Rule 19 motions, especially when the motion is filed after the

entry of judgment. *See, e.g.*, *Amerada Hess Corp. v. Diamond Servs Corp.*, 69 F.3d

547, 1995 WL 631817 at *4 (10th Cir. 1995) (district court was entitled to take

into account party's "undue delay in raising its indispensable party defense as a

reason to deny the motion"); *Judwin Properties, Inc. v. U.S. Fire Ins. Co.*, 973 F.2d

432, 434-35 (5th Cir. 1992) (motion to dismiss for lack of subject matter

jurisdiction due to an absent indispensable party was impermissibly untimely when

not raised until after summary judgment was granted, despite the fact that it was

42

known and could have been raised at the pleading stage). *See also U.S. Bank Nat'l Assoc. v. Richardson*, 2019 WL 1115059, at \*4 (N.D. Tex. March 11, 2019) (holding that even if party is indispensable, "the court has discretion to bar any motion as untimely, at this late juncture" and stating: "Defendants provide no explanation for their delay in raising this issue, and their decision to delay until after they received an unfavorable ruling … is an 'offensive use' of Federal Rule of Civil Procedure 19").[13]

Here, Defendants never argued the absence of an indispensable party at the pleading stage, despite many opportunities and filings. Defendants did not assert absence of an indispensable party as a defense in their first motion to dismiss filed over two years ago. *See* AA1 (Doc. 25).[14] Nor did Defendants allege it as an affirmative defense. *See* AA13 (Doc. 51). Defendants did not raise it in response to the Parolee Class's motion for summary judgment or file their own summary judgment motion raising the argument. *See* JA1203 (Doc. 140). They never filed a

---

[13] In relevant part, the Advisory Committee Notes to Rule 19 state: "A person may be added as a party at any stage of action on motion or on the court's initiative (see Rule 21); and a motion to dismiss, on the ground that a person has not been joined and justice requires that the action should not proceed in his absence, *may be made as late as the trial on the merits* (see Rule 12(h)(2), as amended; cf. Rule 12(b)(7), as amended)." (emphasis added). Here, Defendants' Rule 19 motion was filed almost a year after the district granted judgment as a matter of law in favor of Plaintiffs.

[14] "AA" refers to Appellees' separate appendix, filed contemporaneously herewith.

Appellate Case: 20-3447     Page: 50     Date Filed: 04/02/2021 Entry ID: 5021520

motion under FED. R. CIV. P. 12 (c) for failure to join an indispensable party, nor did they ever move to join the Missouri Public Defender Commission as a defendant under FED. R. CIV. P. 14. In sum: Defendants had countless opportunities to raise this argument at the pleading stage and they did not do so.

Instead, the very first time Defendants argued that an indispensable party was absent from this lawsuit was in their second motion to dismiss—filed over 800 days after the lawsuit was initiated, well after the close of pleadings in the case, and, most importantly, 247 days after this court granted summary judgment in the Parolee Class's favor. Thus, Defendants' extreme delay in filing alone was grounds for the district court to deny their Rule 19 motion and, on that basis alone, the Court should affirm the district court's ruling.

## B. The district court correctly held that the Commission is not a necessary party under Rule 19(a).

In the alternative, this Court should affirm the district court's denial of Defendants' Rule 19 motion because the district court correctly held that the Commission is not a necessary party to this litigation. De novo review applies to this argument. *See*, *e.g.*, *Cedar Rapids Bank and Trust Co. v. Mako One Corp.*, 919 F.3d 529, 534 (8th Cir. 2019).

In relevant part, Rule 19(a)(1) provides as follows:

A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

Appellate Case: 20-3447     Page: 51     Date Filed: 04/02/2021 Entry ID: 5021520

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1).

Defendants do not argue that Rule 19(a)(1)(B) applies here. This is not surprising since the Commission has not claimed an interest relating to the subject of this lawsuit. To the contrary, the Commission through its Director Michael Barrett has expressly conveyed to Defendants that it does not have any interest in this litigation. *See* JA1360-61 (Commission Director telling MDOC Director Precythe that the Missouri State Public Defender will not provide legal services to indigent alleged parole violators); *see also* JA1362-66. Thus, the Commission is not a necessary party under Rule 19(a)(1)(B).

Nor is the Commission a necessary party under Rule 19(a)(1)(A). Defendants challenge the latter conclusion, arguing that the district court cannot afford complete relief with respect to one discrete aspect of the Remedy Order: the appointment of counsel. Specifically, Defendants argue that "[w]ithout the Commission, the district court could not provide complete relief among the

45

existing parties, since the Department has no authority to appoint counsel when the Constitution requires it." Br. at 51. This argument lacks merit for two reasons.

### 1. Defendants have the authority to enter into a contract for the provision of necessary legal services.

*First*, Defendants incorrectly argue that they do not have authority to provide attorneys for indigent parolees. Br. 46-49. This argument ignores that fact that Defendants could enter into contracts with private attorneys to provide legal services to qualifying parolees. Indeed, the Director of MDOC, who is a named defendant, has authority to enter into a contract to secure legal representation for alleged parole violators. Section 217.035 grants Director Precythe broad authority to "[p]rocure either through the division of purchasing or by other means authorized by law, supplies, material, equipment or *contractual services* for the department and each of its divisions." RSMo. § 217.035(4) (emphasis added).[15]

_____

[15] Without any supporting legal analysis or authority, Defendants argue that having MDOC hire counsel for a parolee "would undoubtedly raise a conflict of interest within the Department." Br. at 49. In reality, to the extent MDOC hired a private attorney to represent a parolee (consistent with the applicable minimum constitutional due process requirements), the attorney would have a duty to defend the interests only of the parolee, regardless of the fact that MDOC would be paying the attorney's fees. *See*, *e.g.*, *Vigilant Ins. Co. v. Behrenhausen*, 889 F. Supp.1130, 1135 (W.D. Mo. 1995) ("Although these unique circumstances seem to create a clear conflict of interest in defending the underlying action, the conflict of interest disappears upon recognition that although Vigilant is required under the terms of its policy to hire an attorney to defend Mr. Laws against defendant Courtney and Sarah Behrenhausen's wrongful death claim, this attorney has a duty to defend the interests of only its client, Mr. Laws. This duty does not shift based on who is paying the attorney's fees.").

46

The mere fact that entering into such contracts would cost Defendants money (so that they could comply with their obligations under the Constitution), is not an impediment. *See also Randolph v. Rodgers*, 253 F.3d 342, 348 (8th Cir. 2001) (a court can order a State and its officers to comply with constitutional obligations even where injunctive relief will have a "substantial ancillary effect on the state treasury"); *see also Edelman v. Jordan*, 415 U.S. 651, 662, 668 (1974); *Papasan v. Allain*, 478 U.S. 265, 278 (1986).

> **2.** **Section 600.042.4(4) does not grant the Commission exclusive authority to provide or appoint attorneys for indigent parolees.**

*Second*, Defendants incorrectly argue that Section 600.042.4(4) grants the Commission "exclusive authority" to provide or appoint attorneys for indigent parolees. Br. at 49-51. Both the Parolee Class and the Commission strongly disagree. *See, e.g.,* JA1360-61. More importantly, both the plain language of Section 600.042.4(4) and its legislative history refute Defendants' argument.

Defendants cannot point to any language in Section 600.042.4(4) where the legislature granted the Commission the "exclusive authority" to provide or appoint attorneys for indigent parolees. Indeed, the phrase "exclusive authority" is absent in the statute. This omission is significant because the legislature clearly knows how to include this phrase when it so desires. *See*, *e.g.*, RSMo. § 56.640 ("The county counselor shall commence, prosecute or defend, as the case may require,

47

and exercise *exclusive authority* in all civil suits or actions in which the county or any county officer, commission, governing body, or agency is a party…"); § 67.2679 ("The public service commission shall have the *exclusive authority* to authorize any person to construct or operate a video service network or offer video service in any area of this state.") § 82.340 ("The license collector shall have *exclusive authority* in all such cities to issue all licenses and receipts for license taxes, except water, dramshop and boat or wharf licenses"); § 87.260 ("The board of trustees of the firefighters' retirement system shall have the *exclusive authority* and discretion to invest and reinvest the funds in property of any kind, real or personal."); § 340.250 ("The board's *exclusive authority* shall be clearly stated on the temporary or provisional license and the application and is a condition for the issuance of a temporary or provisional license.") (emphasis added).

Simply put, the fact that the legislature did not include the phrase "exclusive authority" in Section 600.042.4(5) supports the conclusion that the legislature did not intend for the Commission to have exclusive authority to provide or appoint attorneys for indigent parolees. *See*, *e.g.*, *JPMorgan Chase Bank, N.A. v. Johnson*, 719 F.3d 1010, 1015 (8th Cir. 2013) (where the legislature has the ability to include qualifying language but chooses not to do so in a statute, courts should "infer the omission was deliberate and evidences a different legislative intent").

48

Furthermore, it is hornbook law that this Court cannot add the words "exclusive authority" to the statute under the "auspice of statutory construction." *See Li Lin. v. Ellis*, 594 S.W.3d 238, 242 (Mo. banc 2020).

The legislative history of Section 600.042.4(5) further bolsters the foregoing conclusion. Section 600.042—the provision of Missouri law specifying the powers and duties of the Commission's Director—formerly required the Office of the Public Defender to provide legal services to indigent individuals "detained or charged with a violation of probation or parole." RSMo. § 600.042.4(3) (2008). However, the Missouri General Assembly deleted that express reference to parole violations from § 600.042 with the passage of H.B. 215 in 2013. *See* H.B. 215, 97th Gen. Assemb., 1st Reg. Sess. (Mo. 2013); *see also* JA1360 at n1. The current § 600.042 is now completely silent about whether the Office of the Public Defender must or may represent alleged parole violators. *See* RSMo. § 600.042.4. The Court should interpret the Missouri legislature's amendment to Section 600.042 as a deliberate decision by the legislature to remove parole revocations from the Commission's purview.

Thus, the Commission is not statutorily obligated to provide legal services to people alleged to have violated their conditions of parole. *See* JA1360-61. Nor could the Commission do so, given their current and well-documented workload issues. *Id*. Indeed, Defendants are better equipped to provide counsel to qualifying

49

parolees given their system already in place for supervising class members and the

fact that their budget far surpasses that of the Commission, to wit:

|  | FY 2018 Appropriations | FY 2019 Appropriations |
|---|---|---|
| Corrections | $724,569,448 | $775,618,158 |
| Public Defender | $45,608,524 | $49,126,083 |

JA1532.

In truth, Defendants not only have the authority to provide counsel to

eligible parolees, they have the obligation to do so:

> [T]he decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system. Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees.

*Gagnon*, 411 U.S. at 790. The State can and must remedy the constitutional

violations here. Defendants are agents of the State of Missouri. They are named in

their official capacities. Therefore, this lawsuit is no different from a suit against

the State itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)

("[A] suit against a state official in his or her official capacity is not a suit against

the official but rather is a suit against the official's office. As such, it is no different

from a suit against the State itself.") (internal citations omitted); *see also Brandon*

50

*v. Holt,* 469 U.S. 464, 471 (1985); *Hafer v. Melo*, 502 U.S. 21, 25 (1991). There is no need to join another state agency in order to accord full relief here—especially where Defendants can enter into a contract or contracts for the provision of necessary legal services, at the State's expense.

Finally, even if one were to assume, *arguendo*, that the Commission was the exclusive means of providing legal services to indigent alleged parole violators, the Commission would still not be a necessary party because the district court could still "accord complete relief" in this case. For example, Defendants could release (and not revoke) class members who are eligible for state-funded counsel under *Gagnon*. *See, e.g.*, *Plata*, 563 U.S. at 511, 545 (affirming injunctive relief giving California choice of spending money on more prisons or releasing prisoners).

Moreover, as the district court observed, Defendants could cease conducting revocations hearings in those cases where parolees or probationers are not represented with counsel consistent with their due process rights:

> *Gagnon* entrusts Defendants, as 'the state authority charged with responsibility for administering the probation and parole system,' with ensuring alleged parole violators obtain state-appointed counsel when due process so requires. Should Defendants fail to fulfill their constitutional obligation of ensuring alleged probation or parole violators are represented by counsel when deemed constitutionally necessary according to the framework set forth in *Gagnon*, the Court envisions various legal alternatives to illegally permitting alleged parole violators to proceed unrepresented. *The Court can 'accord complete relief among existing parties,' Rule 19(a)(1)(A), by, for example, enjoining Defendants from proceeding with revocation hearings and incarcerating indigent alleged parole or probation*

51

*violators if such parolees or probationers are not represented by state-funded counsel when due process so requires.* Accordingly, the Commission is not a [necessary][16] party to this lawsuit.

JA1420 (internal citations omitted) (emphasis added).

Notably, that is precisely the remedy that the district court ultimately entered in this case. Specifically, the district court ordered that Defendants "[r]efrain from proceeding with revocation hearings and reincarcerating parolees who are not represented by state-funded counsel when minimum due process so requires." JA1849 (Doc. 323 at 53, ¶ 18).[17]

### C.   The district court did not abuse its discretion by not considering Rule 19(b).

Defendants' argument that the district court was "required under Rule 19(b) to analyze the four factors" misses the mark because it ignores the two-step process

---

[16] A review of the district court's order on Defendants' motion to dismiss makes it clear that the court only addressed Rule 19(a). The district court specifically cites to Rule 19(a) on two occasions, and never mentions Rule 19(b). JA1416-20. Furthermore, the district court expressly held that the Commission is not a "necessary party" to this lawsuit. JA1420. As a result, it appears that the district court inadvertently used the phrase "indispensable party" rather than "necessary party" at the conclusion of its order. *Id.*

[17] Incredibly, Defendants argue that the "Commission's failure to discharge its statutory and constitutional obligations to provide counsel when the Constitution requires it should not *prejudice* the Department's statutory directive to hold revocation hearings." Br. at 55 (emphasis added). It is long overdue for MDOC to focus not on its alleged prejudice, but rather, on the *prejudice* to parolees when they are forced to appear at revocation hearings without a state-funded counsel when minimum due process so requires (consistent with the Supreme Court's ruling in *Gagnon* over forty-five years ago).

required under Rule 19. Br. at 57-65. Abuse of discretion review applies to this argument. *See*, *e.g.*, *CRST Expedited, Inc. v. TransAm Trucking, Inc.*, 960 F.3d 499, 509 (8th Cir. 2020).

> The framework for evaluating a Rule 19 motion is well established:

> A court must first determine whether a [person] should be joined if 'feasible' under Rule 19(a), i.e., whether a person is "necessary." *If the person is not necessary, then the case must go forward without him and there is no need to make a Rule 19(b) inquiry.*

*Gwartz, M.D. v. Jefferson Memorial Hospital Assoc.*, 23 F.3d 1426, 1428 (8th Cir. 1994) (internal citations omitted) (emphasis added). *See also Bailey v. Bayer Cropscience L.P.*, 563 F.3d 302, 308 ("The plaintiff must first satisfy Fed.R.Civ.P. 19(a) by showing the new parties are necessary to a full resolution of the case.").

Consistent with the foregoing framework, the district court first determined that the Commission is not a necessary party under Rule 19(a). JA1420 ("Based on the foregoing, the Court finds under *Gagnon* that the Commission is not a necessary party to this lawsuit."). Having reached this conclusion, the district court did not abuse its discretion by not conducting any additional inquiry under Rule 19(b). *See Gwartz*, 23 F.3d at 1430 ("Because we find that JAA is not a necessary party under Rule 19(a), we need not address whether it is an indispensable party under Rule 19(b)."). Indeed, the district court would have erred had it done so. *See*, *e.g.*, *Scenic Holding, LLC v. New Bd. of Trustees of Tabernacle Missionary Baptist Church, Inc.*, 506 F.3d 656, 669 (8th Cir. 2007) ("The court erred when it engaged

Appellate Case: 20-3447     Page: 60     Date Filed: 04/02/2021 Entry ID: 5021520

in a Rule 19(b) indispensable party analysis after first finding Arvest Bank was not a necessary party under Rule 19(a).").

For these reasons, this Court should affirm the district court's denial of Defendants' Rule 19 motion, because the motion was untimely and the Commission is not a necessary party to this litigation.

## Conclusion

For these reasons, the class respectfully submits that the Court should affirm the district court's Remedy Order addressing undisputed and ongoing constitutional violations that infect Missouri's parole revocation system.

Respectfully submitted:

By: /s/ Amy E. Breihan
Amy E. Breihan, #65499
W. Patrick Mobley, #63636
Omri Praiss, #41850
Roderick & Solange MacArthur Justice Center
3115 South Grand Boulevard, Suite 300
St. Louis, MO 63118
Phone: (314) 254-8540
Fax: (314) 254-8547
amy.breihan@macarthurjustice.org
pat.mobley@macarthurjustice.org
praissfamily@sbcglobal.net

*Counsel for Plaintiffs-Appellees*

54

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B)(i) because this brief contains 12,457 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

This brief has been scanned for viruses pursuant to Eighth Circuit Local Rule 28A(h)(2) and is virus-free.

/s/ Amy E. Breihan
*Counsel for Plaintiffs-Appellees*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on April 1, 2021.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Amy E. Breihan
*Counsel for Plaintiffs-Appellees*