No. 20-3447

# United States Court of Appeals
## For the Eighth Circuit

STEPHANIE GASCA, MILDRED CURREN, KENNETH HEMPHILL, JESSE NEELY, AMBER WYSE, TIMOTHY GALLAGHER, and SOLOMON WARREN,

*Plaintiffs-Appellees,*

v.

ANNE L. PRECYTHE, in her official capacity as Director of the Missouri Department of Corrections; KENNETH JONES, in his official capacity as Chairman of the Missouri Division of Probation and Parole; JENNIFER ZAMKUS, in her official capacity as Vice Chair of the Missouri Board of Probation and Parole; JIM WELLS, in his official capacity as Member of the Missouri Board of Probation and Parole; MARTIN RUCKER, in his official capacity as Member of the Missouri Board of Probation and Parole; ELLIS MCSWAIN, in his official capacity as Member of the Missouri Board of Probation and Parole; GARY DUSENBERG, in his official capacity as Member of the Missouri Board of Probation and Parole; and PAUL FITZWATER, in his official capacity as Member of the Missouri Board of Probation and Parole,

*Defendants-Appellants.*

Appeal from the United States District Court,
Western District of Missouri - Jefferson City
The Honorable Stephen R. Bough, United States District Judge

## REPLY BRIEF OF APPELLANTS

Office of the Attorney General
Supreme Court Building
207 W. High St.
P.O. Box 899
Jefferson City, MO 65102
Tel. (573) 751-1800
Fax (573) 751-0774
Jesus.Osete@ago.mo.gov

**ERIC S. SCHMITT**
MISSOURI ATTORNEY GENERAL
Jeremiah J. Morgan, #50387
  *Deputy Attorney General - Civil*
Jesus A. Osete, #69267
  *Deputy Solicitor General*
Counsel for Appellants

# TABLE OF CONTENTS

ARGUMENT ........................................................ 1

I.    This Court Owes No Deference to the District Court's Erroneous Legal Conclusions............................................... 1

II.   Failure to Consistently Comply with Internal Policies That Satisfy Due Process Does Not Establish a Constitutional Violation or Justify Imposing a Court-Mandated Remedy. ................................ 2

III.  The District Court Exceeded its Limited Remedial Powers by Imposing Remedies that Went Far Beyond the Minimal Due Process Requirements Established in *Morrissey v. Brewer*, 408 U.S. 471 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778 (1973)...... 4

    A.   The Missouri Department of Corrections provides a written statement but the need for one diminishes when the right to a revocation hearing is waived. ......................................... 4

    B.   The Department discloses adverse evidence to parolees. ...... 8

    C.   The Department may succinctly state the denial of counsel on the Counsel Eligibility Screening Instrument. ............ 9

    D.   The Department did not concede that it has authority to appoint counsel pursuant to *Gagnon*......................................... 13

    E.   *Morrissey* prohibited the district court from writing a code of procedure for Missouri. ....................................... 15

IV.   Nonjoinder of a Necessary and Indispensable Party Was Timely Raised and the Department Has No Authority to Appoint Counsel When the Constitution Requires It............................... 21

    A.   The Department did not waive the issue of nonjoinder. ...... 22

    B.   The Missouri Public Defender Commission has the exclusive authority to appoint counsel when the Constitution requires it. ....................................................... 25

CONCLUSION ..................................................................... 30

CERTIFICATE OF COMPLIANCE ....................................... 31

CERTIFICATE OF SERVICE ................................................. 32

ii

# TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Manzo,*
    380 U.S. 545 (1965) .................................................................. 7

*Black v. Romano,*
    471 U.S. 606 (1985) .................................................................. 6

*Boddie v. Connecticut,*
    401 U.S. 371 (1971) .................................................................. 5

*Bordenkircher v. Hayes,*
    434 U.S. 357 (1978) .................................................................. 7

*Brown v. Texas A & M Univ.,*
    804 F.2d 327 (5th Cir. 1986) ................................................ 3, 17, 18

*Fetzer v. Cities Serv. Oil Co.,*
    572 F.2d 1250 (8th Cir. 1978) ................................................... 22

*Gagnon v. Scarpelli,*
    411 U.S. 778 (1973) ........................................ i, 4, 10, 11, 19, 20, 21

*Gautt v. Lewis,*
    489 F.3d 993 (9th Cir. 2007) ..................................................... 18

*Gibson v. Washington State Dep't of Corr.,*
    773 F. App'x 952 (9th Cir. 2019) .................................................. 3

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.,*
    572 U.S. 559 (2014) .................................................................. 1

*Hovater v. Robinson,*
    1 F.3d 1063 (10th Cir. 1993) ...................................................... 3

*Koon v. United States,*
    518 U.S. 81 (1996) .................................................................. 2, 3

*Maher v. Gagne,*
    448 U.S. 122 (1980) .................................................................. 4

Appellate Case: 20-3447    Page: 4    Date Filed: 04/23/2021 Entry ID: 5028737

*Maksym v. Loesch*,
  937 F.2d 1237 (7th Cir. 1991)............................................................14

*Massey v. Normandy Sch. Collaborative*,
  492 S.W.3d 189 (Mo. Ct. App. 2016)...............................................29

*Morrissey v. Brewer*,
  408 U.S. 471 (1972)....................................... i, 4, 5, 6, 7, 9, 10, 16, 17, 25

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
  390 U.S. 102 (1968)..............................................................................23, 24

*Qwest Commc'ns Corp. v. Free Conferencing Corp.*,
  920 F.3d 1203 (8th Cir. 2019).................................................................2

*Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Engineers*,
  826 F.3d 1030 (8th Cir. 2016)..................................................................2

*Salve Regina Coll. v. Russell*,
  499 U.S. 225 (1991).................................................................................1

*Spaulding v. Conopco, Inc.*,
  740 F.3d 1187 (8th Cir. 2014)................................................................14

*State ex rel. MoGas Pipeline, LLC v. Missouri Pub. Serv. Comm'n*,
  366 S.W.3d 493 (Mo. 2012) ...........................................................26, 28

*United States v. $579,475.00 in U.S. Currency*,
  917 F.3d 1047 (8th Cir. 2019) (en banc .............................................28

*United States v. John Doe, Inc. I*,
  481 U.S. 102 (1987)...............................................................................28

*VF Jeanswear LP v. Equal Employment Opportunity Comm'n*,
  140 S. Ct. 1202 (2020)...........................................................................26

*Walton v. Dawson*,
  752 F.3d 1109 (8th Cir. 2014).................................................................3

iv

**Statutes**

Section 217.035(4), RSMo ........................................................... 21

Section 600.042, RSMo ....................................................... 25, 26

Section 600.042.1(10), RSMo ..................................................... 29

Section 600.042.4(5), RSMo ....................................................... 25

**Rules**

Fed. R. App. P. 32 ..................................................................... 31

Fed. R. Civ. P. 12 ..................................................................... 22

Fed. R. Civ. P. 12(b)(7) ............................................................. 22

Fed. R. Civ. P. 12(h)(1) ............................................................. 22

Fed. R. Civ. P. 12(h)(2)(C) ........................................................ 22

Fed. R. Civ. P. 19(a)(1)(A) ................................................... 24, 28

Fed. R. Civ. P. 19(a)(1)(B)(ii) ............................................. 23, 24

Fed. R. Civ. P. 19(b) ................................................................. 30

Appellate Case: 20-3447     Page: 6     Date Filed: 04/23/2021 Entry ID: 5028737

## <u>ARGUMENT</u>

## I. This Court Owes No Deference to the District Court's Erroneous Legal Conclusions.

Plaintiffs contend that the deferential abuse-of-discretion standard applies to this Court's review of the district court's remedial order. Appellees' Br. 14 n.1. Their contention is misplaced. "Traditionally, decisions on questions of law are reviewable de novo, decisions on questions of fact are reviewable for clear error, and decisions on matters of discretion are reviewable for abuse of discretion." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 (2014) (cleaned up).

Here, de novo review is proper because the Missouri Department of Corrections challenges the district court's legal conclusions underlying its decisions. *See* Appellants' Br. 22. And where, as here, de novo review "is compelled, no form of appellate deference is acceptable." *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991). Accordingly, this Court owes no deference to the district court's erroneous legal conclusions underlying its remedial order.

But even if the abuse-of-discretion standard applies, the Department can easily satisfy that standard here because a "district court would necessarily abuse its discretion if it based its ruling on an

1

erroneous view of the law." *Qwest Commc'ns Corp. v. Free Conferencing Corp.*, 920 F.3d 1203, 1205 (8th Cir. 2019) (cleaned up). *Accord Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law."); *Qwest Commc'ns Corp.*, 920 F.3d at 1206 (district court's decision constitutes abuse of discretion if it was "influenced by any mistake of law") (quotation marks omitted); *Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Engineers*, 826 F.3d 1030, 1035–36 (8th Cir. 2016) ("Abuse of discretion occurs if the district court['s] … decision relies on erroneous legal conclusions.") (citation omitted).

In other words, the abuse-of-discretion standard "does not preclude" this Court from correcting the district court's "legal error." *Qwest Commc'ns Corp.*, 920 F.3d at 1205 (cleaned up). And even under that standard, this Court "need not defer" to the district court's resolution of questions of law. *Koon*, 518 U.S. at 100.

## II. Failure to Consistently Comply with Internal Policies That Satisfy Due Process Does Not Establish a Constitutional Violation or Justify Imposing a Court-Mandated Remedy.

The district court acknowledged (and Plaintiffs concede) that the Department's policies, as written, "satisfy due process[.]" Appellees' Br.

2

20.    The problem—and purported constitutional violation—Plaintiffs argue, is that the Department "fail[s] to consistently comply with the policies." *Id.*  Even if that were true, that alleged failure would not constitute a constitutional violation. *Accord Gibson v. Washington State Dep't of Corr.*, 773 F. App'x 952, 953 (9th Cir. 2019) (failure to comply with internal procedures does not establish a constitutional violation); *Walton v. Dawson*, 752 F.3d 1109, 1122 (8th Cir. 2014) (violation of internal policy "does not *ipso facto* violate the Constitution"); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (failure to adhere to administrative regulations does not equate to a constitutional violation); *Brown v. Texas A & M Univ.*, 804 F.2d 327, 335 (5th Cir. 1986) (failure of a state agency to comply with internal regulations is insufficient as a matter of law to establish a due process violation, "because constitutional minima nevertheless may have been met").

Notably, the district court did not provide any authority for the proposition that the Department's purported failure to consistently comply with its constitutionally sufficient policies amounted to a constitutional violation.  Plaintiffs do not provide such authority either.

And it would be untenable to allow a federal court to issue a remedy ordering compliance with an internal policy when there is no constitutional violation for failing to comply with such a policy. *Cf. Maher v. Gagne*, 448 U.S. 122, 129 n.11 (1980) (section 1983 "merely provides a remedy for the violation of rights conferred by the Constitution").

## III. The District Court Exceeded its Limited Remedial Powers by Imposing Remedies that Went Far Beyond the Minimal Due Process Requirements Established in *Morrissey v. Brewer*, 408 U.S. 471 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778 (1973).

Plaintiffs make several arguments that the district court properly mandated certain remedies. None has merit.

### A. The Missouri Department of Corrections provides a written statement but the need for one diminishes when the right to a revocation hearing is waived.

Plaintiffs argue that the district court properly mandated the Department to adopt a policy that parolees be given a written statement as to the evidence relied on and the reasons for revoking parole. Appellees' Br. 28. To be sure, one minimum due process requirement under *Morrissey* is that a parolee be given "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole."

4

*Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). But the Department satisfies that requirement. The Department argued—and Plaintiffs do not dispute—that "the Department's policy specifically requires that the decision detail what was considered for revocation, including aggravating and mitigating circumstances." Appellants' Br. 42 (citing Evidentiary Hr'g Tr. 377-79).

Certainly, a parolee who has waived a revocation hearing "will simply receive the order of revocation with the violations and a notice of the decision[.]" Evidentiary Hr'g Tr. 379. But this is not constitutionally suspect under *Morrissey*. Due process rights, including the right to a revocation hearing, may be waived. *See, e.g.*, *Morrissey*, 408 U.S. at 487–88 ("There must also be an opportunity for a hearing, *if it is desired by the parolee*, prior to the final decision on revocation by the parole authority.") (emphasis added); *Boddie v. Connecticut*, 401 U.S. 371, 378–79 (1971).

When the opportunity to be heard is waived, the need for a written statement under *Morrissey* diminishes. Indeed, the written statement "helps to insure accurate factfinding with respect to any alleged violation and provides an adequate basis for review to determine if the decision

5

rests on permissible grounds supported by the evidence." *Black v. Romano*, 471 U.S. 606, 613–14 (1985).  But in the case of a waiver, the parolee has chosen to forgo robust factual findings that must later withstand appellate scrutiny.

Further, the procedural safeguards established in *Morrissey* exist to "protect" the parolee against revocation "in a constitutionally unfair manner" and thus "minimize" the "risk of unfairness[.]"  *Id.* at 613 (citation omitted).  But it cannot be that a parolee who waives the opportunity to be heard must *still* be afforded a written statement under *Morrissey*—that decision to forfeit protection results in a "diminished justification for requiring" the Department to "explain [its] rulings." *Id.*; *see also id.* at 614 ("[T]he procedures required by *Gagnon* and *Morrissey* assure" the parolee "an *opportunity* to present mitigating evidence and to argue that alternatives to imprisonment are appropriate.  *That opportunity, combined with the requirement that the factfinder state the reason for its decision and the evidence relied upon*, accommodates the interests involved in a manner that satisfies procedural due process") (emphasis added).

Appellate Case: 20-3447     Page: 12     Date Filed: 04/23/2021 Entry ID: 5028737

That parolees are *encouraged* to waive their right to be heard does not make the waiver unknowing and involuntary. *Cf. Bordenkircher v. Hayes*, 434 U.S. 357, 363–65 (1978) (no due process violation when prosecutor persuades defendant to forgo constitutional right to trial).[1] And a waiver of the *preliminary* hearing does not mean that the parolee has waived the revocation hearing—where it is ultimately determined, after giving him an opportunity to be heard, whether he should be deprived of a conditional liberty. *See Morrissey*, 408 U.S. at 480, 488–89.

Indeed, the Department properly bifurcates the two hearings. *Compare* Add. 63 (request for or waiver of preliminary hearing), *with* Add. 64 (request for or waiver of revocation hearing). Yet, the district court conflated the two at least three times. *First*, the court, citing Plaintiffs' expert, noted that there is "'significant pressure' placed on parolees to waive their *hearings*[,]" Add. 29 (emphasis added), but the expert was actually referring to preliminary hearings, not revocation

---

[1] Notably, the district court did not invalidate any waivers and provide the parolees with new opportunities to be heard. *Cf. Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (because "a fundamental requirement of due process is the opportunity to be heard," the trial court should have set aside the decree and considered the case "anew"). The court merely ordered that the Department "ensure" that parole officers cease from "encouraging" parolees to waive their right to be heard. Add. 31.

7

hearings. *See* Evidentiary Hr'g Tr. 64-65. *Second*, the court noted that a parolee testified that "he waived his preliminary *and* revocation hearings" because the hearings " 'would just slow the process[,]' " Add. 29 (emphasis added), but the parolee was actually referring only to his preliminary hearing, not his revocation hearing. *See* Evidentiary Hr'g Tr. 146. This is confirmed by the fact that he only received and executed a form to waive his right to a preliminary hearing and stated that the parole officer did not say anything "about [his] rights in the revocation process" at that time. *Id.* *Third*, the district court noted that another parolee testified that she "waived her *hearings*" because it was her " 'word against' " the arresting officer's, Add. 30 (emphasis added), but she was actually referring to waiving her right to a preliminary hearing, not her revocation hearing. *See* Evidentiary Hr'g Tr. 227.

Accordingly, although the Department provides a written statement under *Morrissey*, the need for one diminishes when a parolee waives his right to a revocation hearing.

## B. The Department discloses adverse evidence to parolees.

Plaintiffs further argue that the district court properly ordered the Department to disclose to parolees all evidence against them no later

8

than five days before the revocation hearing. Appellees' Br. 29. To be sure, one minimum due process requirement under *Morrissey* is that a parolee be given the evidence against him. 408 U.S. at 489. But the Department does in fact disclose adverse evidence against the parolee, including advance notice of adverse witnesses and facts. *See* Appellants' Br. 38.

Indeed, Plaintiffs concede (as they must) that the Department has "a policy requiring preparation of a Revocation Report[.]" Appellees' Br. 29. That Report, the district court noted, is provided to a parolee before the revocation hearing and contains the conditions violated, mitigating and aggravating circumstances, and a recommendation. *See* Add. 32. Disclosing such adverse evidence *five days* before the revocation hearing, as the district court mandated, finds no support in *Morrissey* and is merely another impermissible attempt to write a code of procedure for Missouri. *See Morrissey*, 408 U.S. at 488–89.

## C. The Department may succinctly state the denial of counsel on the Counsel Eligibility Screening Instrument.

Plaintiffs further argue that the district court properly mandated the Department to adopt a policy requiring that, when a parolee is

9

deemed ineligible for appointed counsel, that denial be recorded and given to parolees in writing within a reasonable amount of time. Appellees' Br. 30-31. In other words, Plaintiffs (and the district court) read *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), as requiring written notice to the parolee that counsel has been denied. This reading is misplaced. Nothing in *Gagnon* requires that parolees be provided with such notice. As such, this is merely another impermissible attempt to write a code of procedure for Missouri. *See Morrissey*, 408 U.S. at 488–89.

There is no requirement to appoint counsel simply because the parolee requests it. *See Gagnon*, 411 U.S. at 787, 790–91 ("State is under [no] constitutional duty to provide counsel for indigents in all probation or parole revocation cases."). The entity screening for counsel may consider whether the parolee "appears to be capable of speaking effectively for himself." *Id.* at 790–91. And whenever counsel is requested but refused, "the grounds for refusal should be stated *succinctly* in the record." *Id.* (emphasis added).

The Department—as the entity responsible for *screening* for counsel, even if not responsible for *appointing* counsel—has crafted a comprehensive Counsel Eligibility Screening Instrument that is provided

10

to parolees when counsel is requested, and parole officers may assist parolees in completing it. JA1276, 1283-84. This document asks, among other things: (1) whether the parolee can understand the English language; (2) whether the parolee has a history of suffering from mental illness or is now suffering from such illness; (3) whether the parolee has consumed any alcohol, drugs, or medication within the past 48 hours; (4) whether the parolee appears to be oriented to the time, place, and nature of the interview; and (5) whether the parolee is "incompetent to proceed[.]" Add. 65-66.

The Instrument provides sufficient space to include any succinct explanation to each of these questions. *See id.* If the parolee is *not* incompetent to proceed, the parole officer must "list the reasons" supporting that conclusion in a provided space on the Instrument. Add. 66. If the parolee *is* incompetent to proceed, the parolee is instructed to "complete a public defender application." *Id.* The application (along with the Screening Instrument) are then faxed to the public defender's office— the entity responsible for appointing counsel. JA1276, 1283-84; Add. 49-50, 53, 66; Evidentiary Hr'g Tr. 487.

Thus, in the former scenario—where the parolee *is* capable of speaking effectively for himself—counsel may not be necessary and a succinct explanation may be provided on the Screening Instrument, whereas in the latter scenario—where the parolee is *in*capable of speaking effectively for himself—his request for counsel is forwarded to the entity responsible for making the appointment. This structure satisfies *Gagnon*.

But even if *Gagnon* required some kind of written notice of the denial of counsel to parolees beyond what the Department has in place, the Department provides such notice. A parole supervisor testified—and the district court acknowledged—that "parole officers provide parolees who have been deemed ineligible for counsel with a written decision that includes reasons why they have been denied [counsel] immediately after the determination is made." Add. 51 (citing Evidentiary Hr'g Tr. 455). Indeed, the court noted that "[t]he Assistant Division Director testified that parole officers send a memo to parolee[s] explaining the ineligibility determination." *Id.*

Appellate Case: 20-3447    Page: 18    Date Filed: 04/23/2021 Entry ID: 5028737

Accordingly, consistent with *Gagnon*, the Department provides space to indicate in succinct fashion the grounds for denying counsel when requested.

### D. The Department did not concede that it has authority to appoint counsel pursuant to *Gagnon*.

Contrary to Plaintiffs' contention, the Department did not "concede[]" that it was "not providing counsel to eligible parolees as required by *Gagnon*." Appellees' Br. 31. The Department stated that it had "no objection" to the district court granting Plaintiffs summary judgment "because the policies that existed at the time Plaintiffs filed their Amended Class Action complaint did not satisfy the requirements of *Gagnon* …, and *Morrissey*[.]" JA1203. This should not (and cannot) be construed as the Department acknowledging that it has the authority to appoint counsel when the Constitution requires it, including under *Gagnon*. That authority rests exclusively with the Missouri Public Defender Commission. At most, the Department's statement demonstrates that it was willing to take corrective measures over the matters that did fall within its authority, such as providing the minimum due process requirements established in *Morrissey* and screening for—as opposed to appointing—counsel under *Gagnon*.

13

To be sure, in their statement of uncontroverted material facts, Plaintiffs asserted—and the Department did not attempt to controvert—that the Department does "not provid[e] state-funded counsel to alleged parole violators" pursuant to *Gagnon*. JA297. But there was no reason to controvert this assertion for at least two reasons. *First*, it wasn't a "fact" but rather a legal conclusion purporting to state a fact. *Cf. Spaulding v. Conopco, Inc.*, 740 F.3d 1187, 1196 (8th Cir. 2014) (disregarding evidence purporting to state legal conclusions as fact for purposes of summary judgment); *Maksym v. Loesch*, 937 F.2d 1237, 1242–43 (7th Cir. 1991) (Posner, J.) ("fact" that was actually legal conclusion not deemed admitted for summary judgment purposes). Indeed, this assertion by Plaintiffs rested on a faulty premise that the Department had an obligation under *Gagnon* to appoint counsel—a premise that, according to Plaintiffs, led to the conclusion that the Department had violated its purported duty under *Gagnon*. *Second*, even if Plaintiffs' assertion were treated as a fact, the consequence of not controverting such a fact merely leads to an admission that the Department does not provide state-funded counsel under *Gagnon*—an

Appellate Case: 20-3447    Page: 20    Date Filed: 04/23/2021 Entry ID: 5028737

unsurprising concession given that the Department does not appoint counsel *because* it has no authority to do so.

### E. *Morrissey* prohibited the district court from writing a code of procedure for Missouri.

Despite Plaintiffs' attempt to parse the district court's mandated remedy for the appointment of counsel under *Gagnon*, *see* Appellees' Br. 33-34, there is simply no ambiguity that calls for such an exercise. The court plainly ordered the Department to "refrain" from holding "revocation hearings and reincarcerating *parolees* who are not represented by state-funded counsel[.]" JA1844 (emphasis added). Nowhere in that sentence does the court limit its remedy to only *eligible* parolees. And there is simply no reason for the Department to refrain from holding a revocation hearing for a parolee who may *not* need counsel merely because another parolee *may* need counsel but the Commission refuses to appoint counsel.

The district court also required the Department to adopt a "new policy for *appointing* state-funded counsel to eligible parolees." JA1845 (emphasis added). But the court's improper attempt to shift the responsibility for appointing counsel from the Commission to the Department not only contradicts Missouri law, it also runs afoul of

15

*Morrissey*'s prohibition against federal courts writing a code of procedure for states—particularly a state where its legislature has already written such a code. *See Morrissey*, 408 U.S. at 488–89.

Plaintiffs further argue that the district court properly ordered the Department to adopt a policy requiring revocation decisions be made and Notifications of Board Action be completed within a reasonable amount of time after a revocation hearing or waiver thereof. Appellees' Br. 29. The district court cited no authority to support this particular remedy. And Plaintiffs do not (and cannot) cite anything in *Morrissey* that suggests such a policy constitutes a minimum due process requirement. If anything, this particular remedy from the district court—like others— is nothing more than an impermissible attempt to write a code of procedure for Missouri. *Morrissey*, 408 U.S. at 488–89.

Plaintiffs further argue that the district court properly mandated changes to the Department's appeal process for revocation decisions. Appellees' Br. 35-37. In the interest of brevity, the Department will not repeat its arguments from its opening brief and instead incorporates them by reference herein. *See* Appellants' Br. 42-44. But notably, Plaintiffs do not (and cannot) point to a single parolee who both (1) had

16

an appealable decision and (2) the Department "arbitrarily" denied that parolee access to an appeal. *See* JA1404-05 (not all parole decisions are appealable).

Plaintiffs finally argue that the district court properly ordered the Department to amend certain forms. Appellees' Br. 37. Here again, the district court concluded that three forms—the Notice of Rights form, the Preliminary Hearing form, and the Revocation Hearing form—"satisfy due process[,]" Add. 21, but nevertheless ordered a remedy. That was because, according to the district court, "certain portions of the forms violate minimum due process requirements or are inconsistent with Defendants' policies[.]" *Id.* While any alleged inconsistency in the Department's policies, alone, is insufficient to constitute a constitutional violation, *see, e.g.*, *Brown*, 804 F.2d at 335, much less a violation of due process, *see id.*, it's unclear what, if anything, in the three forms violates due process. That's because they readily satisfy due process.

*First*, the district court ordered the Department to amend the Revocation Hearing form to "add a space" for alleged parole violations to be listed, akin to the Preliminary Hearing form. Add. 22. To be sure, one minimum due process requirement established in *Morrissey* is that the

17

parolee be given "written notice of the claimed violations of parole[.]" 408 U.S. at 488–89. But that requirement is met when the parolee receives the Preliminary Hearing form, which will expressly list the alleged violations, even if the Revocation Hearing form does not. *Compare* Add. 63 (Preliminary Hearing form), *with* Add. 64 (Revocation Hearing form). Thus, the former serves functionally as the charging document—the means by which written notice is provided to the parolee of any alleged parole violations. *Cf. Gautt v. Lewis*, 489 F.3d 993, 1004 (9th Cir. 2007) (criminal defendant has constitutional right to be informed of any charges against him, and charging document "is the means by which such notice is provided"). Thus, the district court erred in ordering this amendment to the Revocation Hearing form.

*Second*, the district court ordered the Department to amend the Revocation Hearing form to "include an option for parolees to provide their own counsel at revocation hearings," Add. 22, but not only is this not even remotely a constitutional violation, *see, e.g.*, *Brown*, 804 F.2d at 335, the court's remedy is simply unnecessary. The Department's policy does not prohibit the retention of private counsel (in fact, it contemplates it, *see* Add. 22), and if a parolee elects to retain private counsel at the

18

preliminary hearing, *see* Add. 63 ("I will provide my own counsel[.]"), it is not unreasonable to assume that the parolee will retain private counsel for the revocation hearing. To that end, in addition to what's provided in the Preliminary Hearing form, the Revocation Hearing form also makes it clear that the parolee "may be represented at [his] hearing by counsel of [his] choice, selected and paid for by" the parolee, and provides a space for "client private counsel" to sign. Add 64. By signing that box, the parolee has necessarily expressed that he has exercised the option to retain private counsel. Thus, the district court erred in ordering this amendment to the Revocation Hearing form.

Plaintiffs also argue that the district court properly ordered amendments to the Screening Instrument because *Gagnon* "established a right to counsel for certain" parolees. Appellees' Br. 38-40. This argument, once again, is misplaced. The Supreme Court in *Gagnon* rejected an "inflexible constitutional rule with respect to the requirement of counsel." 411 U.S. at 790. Although the Court in *Gagnon* stated that counsel "should be provided" in certain cases, that's a far cry from being mandatory and to read the phrase as such would contradict the Court's willingness to afford state agencies discretion to determine, on a case-by-

19

case basis, whether counsel is necessary. *See id.* Indeed, the Court in *Gagnon* specifically concluded that "the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings." *Id.* In this light, the district court's amendments to the Screening Instrument were unnecessary.

The Screening Instrument asks whether the parolee contests any of the alleged parole violations, *see* Add. 65, but any elaboration on that decision is neither required under *Gagnon* nor necessary, particularly when the parolee will have an opportunity to be heard later in the process. Any elaboration on potential complex mitigating circumstances is similarly not required under *Gagnon* nor necessary for at least two reasons. *First*, because the language Plaintiffs rely on in *Gagnon* is disjunctive—parolee "has not committed the alleged violation ...; *or* ... there are substantial reasons which justified or mitigated the violation[,]" 411 U.S. at 790–91 (emphasis added)—and the Department already asks the parolee whether he contests the alleged violation, the Department need not additionally ask the parolee to explain any mitigating circumstances that justify the violation on the Screening Instrument. *Second*, explaining mitigating factors on the Screening

20

Instrument is unnecessary because the parolee will have an opportunity to be heard later in the process, including whether those factors "make revocation inappropriate[.]" *Id.* Indeed, "mitigating evidence of this kind is often not susceptible of proof or is so simple as not to require either investigation or exposition by counsel." *Id.* at 787.

Accordingly, the district court erred in ordering amendments to the Screening Instrument.

## IV. Nonjoinder of a Necessary and Indispensable Party Was Timely Raised and the Department Has No Authority to Appoint Counsel When the Constitution Requires It.

Plaintiffs argue that this Court should affirm the district court's decision to not join the Missouri Public Defender Commission for three reasons: (1) the Department's assertion of nonjoinder was untimely; (2) the Commission does not have *exclusive* authority to appoint counsel when the Constitution requires it; and (3) Mo. Rev. Stat. § 217.035(4) confers "broad authority" on the Department to "procure 'contractual services,' including contracting with private attorneys to provide legal services to qualifying parolees." Appellees' Br. 35 n.12, 41, 46-47. None of these contentions has merit.

### A.   The Department did not waive the issue of nonjoinder.

*First*, the issue of nonjoinder of a necessary and indispensable party was timely raised and, therefore, not waived.  *See, e.g.*, *Fetzer v. Cities Serv. Oil Co.*, 572 F.2d 1250, 1253, n.6 (8th Cir. 1978) (noting that, while appellant "raised the issue of … indispensability *after* trial and initial entry of judgment[,]" it was nevertheless timely because such an issue "may be raised at *any stage* of the proceedings, and as *late as on appeal*") (emphasis added).

Notably, while Plaintiffs cite to various out-of-circuit cases to support their timeliness argument, they simply do not address *Fetzer*— this Court's most direct authority on the matter.  There, the nonjoinder issue was not raised until *after* trial and *after* the judgment had been entered, but this Court still said the issue was timely raised because it "may be raised at any stage of the proceedings, and as late as on appeal." *Id.*  *Fetzer* is consistent with both Fed. R. Civ. P. 12(h)(1), which exempts from waiver a Rule 12(b)(7) defense of nonjoinder under Rule 19, and Rule 12(h)(2), which *permits*—but does not require—a nonjoinder defense to be raised at trial.  *See* Fed. R. Civ. P. 12(h)(2)(C) (nonjoinder "*may* be

Appellate Case: 20-3447     Page: 28     Date Filed: 04/23/2021 Entry ID: 5028737

raised … at trial") (emphasis added); *see also* Fed. R. Civ. P. 12, advisory committee notes ("[T]he more substantial defense[] of … failure to join a party indispensable under Rule 19 … [is] *expressly preserved against waiver*") (emphasis added); Fed. R. Civ. P. 19, advisory committee notes (dismissal on nonjoinder ground "*may* be made as late as the trial on the merits") (emphasis added).

Plaintiffs' reliance on *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968), for the proposition that raising nonjoinder after entry of judgment forecloses the issue is misplaced. The Supreme Court in *Provident* explained that four interests require examination under Rule 19 to determine whether a court should proceed without an absent party. 390 U.S. at 109. One of those interests—now codified in Rule 19(a)(1)(B)(ii)—is the existing party's "wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another." *Id.* at 110; *compare* Fed. R. Civ. P. 19(a)(1)(B)(ii) (disposing action without absent party may leave existing party "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations"). However, if the existing party fails to assert "this interest" until "[a]fter trial," then "it is quite proper to

23

consider *it* foreclosed." *Provident*, 390 U.S. at 110 (emphasis added); *see also* Fed. R. Civ. P. 19, advisory committee notes (existing party's "undue delay" in "seeking dismissal" simply "to protect himself against a later suit by the absent person" and "not seeking vicariously to protect the absent person against a prejudicial judgment … can properly be counted against [the existing party] as a reason for denying [dismissal]") (quoted in *Provident*, 390 U.S. at 110 n.4).

But the Department has never claimed an interest in avoiding multiple litigation or inconsistent relief as the basis for dismissal for nonjoinder, *see Provident*, 390 U.S. at 110, and, as Plaintiffs concede, *see* Appellees' Br. 45, the Department does not invoke Rule 19(a)(1)(B)(ii) as such a basis either. Thus, the Department's failure to assert before the district court an interest in avoiding multiple litigation or inconsistent relief is simply beside the point. Further, Plaintiffs do not (and cannot) dispute that the purpose behind the Department seeking dismissal for nonjoinder is *not* because it simply wishes to protect itself against a later suit by the Commission. In fact, Plaintiffs acknowledge that the Department's challenge is really over whether, absent the Commission, there can be "complete relief among existing parties" under Rule

24

19(a)(1)(A).  *See* Appellees' Br. 45-46.  Accordingly, the issue of nonjoinder was timely raised.

## B. The Missouri Public Defender Commission has the exclusive authority to appoint counsel when the Constitution requires it.

*Second*, the Commission possesses the exclusive authority to appoint counsel when the Constitution requires it.  *See* Mo. Rev. Stat. § 600.042.4(5).  Plaintiffs do not (and cannot) dispute that Missouri law governs this question.  And no authority is given to the Department to appoint counsel, even when the Constitution requires it.  Plaintiffs also do not (and cannot) dispute that, despite amendments to § 600.042 in 2013, the Missouri legislature never removed the provision that requires the Commission to provide counsel when the Constitution requires it.[2]

---

[2] Notably, § 600.042.4(6), which was also amended in 2013, provides that the Commission "*shall* provide legal services to an eligible person … [w]ho is charged in a case in which he or she faces a loss or deprivation of *liberty*, and in which the federal or the state constitution or any law of this state requires the appointment of counsel[.]" (Emphasis added). This provision may arguably cover counsel at parole revocation hearings as well because "[r]evocation deprives an individual … of [a] conditional liberty[.]" *Morrissey*, 408 U.S. at 480.  But even if it doesn't, it reinforces that the Commission, not the Department, is *the* entity solely responsible for the appointment of counsel when required.

25

Plaintiffs do not appear to dispute that the Commission has the authority to appoint counsel; they contend only that the Commission does not have the "exclusive authority" to appoint counsel because that phrase appears nowhere in § 600.042 and the Missouri legislature could have included it but didn't. *See* Appellees' Br. 47-48 (collecting statutes that use the phrase "exclusive authority"). This argument is misplaced.

Plaintiffs ignore that Missouri state agencies are creatures of statute that possess only those powers conferred on them by statute. *See, e.g.*, *State ex rel. MoGas Pipeline, LLC v. Missouri Pub. Serv. Comm'n*, 366 S.W.3d 493, 496 (Mo. 2012); *cf. VF Jeanswear LP v. Equal Employment Opportunity Comm'n*, 140 S. Ct. 1202, 1204 (2020) (Thomas, J., dissenting from the denial of certiorari) ("[A]ll administrative agencies are creatures of statute, bound to the confines of the statute that created them.") (quotation marks omitted). Thus, admittedly, while the phrase "exclusive authority" is not in § 600.042, that is beyond the point. The salient point is that the Missouri legislature—through the text and structure of the statutes that govern the Commission—conferred the express authority to appoint counsel on the Commission, without

26

conferring any, much less similar, authority on the Department.[3] Therefore, the Commission has the exclusive authority to appoint counsel when the Constitution requires it. And, because no Missouri statute confers that authority on the Department, the Department lacks that authority under state law.

Nor, as Plaintiffs contend, is the Department an "agent[] of the State of Missouri" that would obviate the need to join the Commission as a party. Appellees' Br. 50. In other words, Plaintiffs argue that the Commission need not be joined because the Department, including the Director of Corrections, as an agent of the State, was acting on behalf of the Commission. Not only is their argument facially unsupported by the official-capacity case law they cite, but also, taken to its logical extreme, their argument means that they could sue, for example, the Missouri Department of Labor and Industrial Relations to obtain a judgment against the Missouri Department of Corrections for alleged constitutional violations, even though the former has no power over correctional matters. That conclusion is untenable (and likely raises due process

---

[3] Indeed, other than § 600.042.4(5), no other Missouri statute expressly imposes a requirement on a state agency to appoint counsel when the Constitution requires such an appointment.

Appellate Case: 20-3447     Page: 33     Date Filed: 04/23/2021 Entry ID: 5028737

concerns); if Missouri state agencies are creatures of statute that possess only those powers conferred to them by statute, *see, e.g.*, *MoGas Pipeline*, 366 S.W.3d at 496, then an agency that does not possess a particular power cannot act on behalf of an agency that does possess such power. The Commission, unlike the Department, expressly possesses the power to appoint counsel under the plain language of the statute creating it. *See* § 600.042.4(5). Further, Plaintiffs' argument would also impermissibly render meaningless Fed. R. Civ. P. 19's requirement that litigants join all necessary and indispensable parties in all civil actions for a court to afford complete relief. *See, e.g.*, *United States v. John Doe, Inc. I*, 481 U.S. 102, 109 (1987) (when the "choice … is between recognizing or ignoring what the Rule provides in plain language" courts "accept the Rule as meaning what it says") (quotation marks omitted); *United States v. $579,475.00 in U.S. Currency*, 917 F.3d 1047, 1049 (8th Cir. 2019) (en banc) ("A rule of civil procedure should be interpreted in accordance with its plain meaning."). Where, as here, the absent party—the Commission—possesses a power to the exclusion of the existing parties—the Department and Plaintiffs—the court simply

28

cannot provide "complete relief among existing parties[.]"  Fed. R. Civ. P. 19(a)(1)(A).

*Third*, the Department has no authority, much less "broad" authority, to "enter into contracts with private attorneys to provide legal services to qualifying parolees."  Appellees' Br. 46.  Plaintiffs rely on § 217.035(4), which provides that the Director of Corrections has the authority to "[p]rocure … supplies, material, equipment or *contractual services* for the department and each of its divisions[.]" (Emphasis added).  Tellingly, Plaintiffs cite no case law construing the phrase "contractual services," as used in § 217.035(4), the way they do.  Nor could they.

Had the Missouri General Assembly intended for the phrase "contractual services" in § 217.035(4) to include hiring private counsel for indigent parolees, the legislature would have used the same kind of express language used in Mo. Rev. Stat. § 600.042.1(10), which provides that the Director of Public Defense "shall … *[c]ontract for legal services with private attorneys*[.]" (Emphasis added).  But the Missouri legislature did not use that kind of express language in Chapter 217, much less in § 217.035(4).  *Cf. Massey v. Normandy Sch. Collaborative*, 492 S.W.3d

29

189, 197 (Mo. Ct. App. 2016) (phrase included in one statute but omitted from another presumed intentional).

Accordingly, the Commission was a necessary and indispensable party, and the Plaintiffs' intentional and repeated failure to join it must result in dismissal.[4]

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Appellants' opening brief, this Court should reverse the district court's judgment and remand the case to the district court with instructions to dismiss the case without prejudice.

Respectfully submitted,

**ERIC S. SCHMITT**
MISSOURI ATTORNEY GENERAL

| | |
|---|---|
| Office of the Attorney General | /s/ *Jesus A. Osete* |
| Supreme Court Building | Jeremiah J. Morgan, #50387 |
| 207 W. High St. | *Deputy Attorney General - Civil* |
| P.O. Box 899 | Jesus A. Osete, #69267 |
| Jefferson City, MO 65102 | *Deputy Solicitor General* |
| Tel. (573) 751-1800 | |
| Fax (573) 751-0774 | Counsel for Appellants |
| Jesus.Osete@ago.mo.gov | |

[4] Plaintiffs do not (and cannot) dispute that the Commission, as a necessary party, could have been joined but wasn't. Nor do they dispute that the Commission was also an indispensable party under Rule 19(b). Thus, remanding the case to the district court with instructions to dismiss without prejudice is proper. *See, e.g.*, Appellants' Br. 58 n.10, 65.

30

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this Reply Brief complies with the type-volume, typeface, and type-style requirements of Fed. R. App. P. 32, and contains 5,861 words, as determined by the word-count feature of Microsoft Word.  The Reply Brief has been scanned for viruses and is virus free.

/s/ *Jesus A. Osete*

Deputy Solicitor General

*Counsel for Appellants*

31

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 22, 2021, a copy of the foregoing document was served electronically to counsel of record by operation of the Court's CM/ECF system. Counsel of record for Appellees has waived service of the paper brief required under 8th Cir. R. 28A(d).

/s/ *Jesus A. Osete*
Deputy Solicitor General

*Counsel for Appellants*

Appellate Case: 20-3447   Page: 38   Date Filed: 04/23/2021 Entry ID: 5028737